1  MARC N. BERNSTEIN (SBN 145837)
   mbernstein@blgrp.com
2  THE BUSINESS LITIGATION GROUP, P.C.
   555 Montgomery Street, Suite 1650
3  San Francisco, CA 94111
   Telephone: 415.765.6633
4  Facsimile: 415.283.4804

5  Attorney for Defendant and Counterclaimant
   KEN GANGBAR STUDIO INC.

6

7                 UNITED STATES DISTRICT COURT

8                NORTHERN DISTRICT OF CALIFORNIA

9                   SAN FRANCISCO DIVISION

10

11
   KEVIN BARRY FINE ART ASSOCIATES,          **Case No.  3:18-CV-03358-EMC**
12 a California corporation,

13
          Plaintiff,
14
                                             **ANSWER OF KEN GANGBAR**
15        v.                                  **STUDIO INC. TO COMPLAINT FOR**
                                             **DECLARATORY JUDGMENT OF**
16 KEN GANGBAR STUDIO INC., a                **COPYRIGHT NON-INFRINGEMENT**
17 Canadian corporation,

18        Defendant.                          **COUNTERCLAIMS**

19
                                             **DEMAND FOR JURY TRIAL**
20

21
                                             Complaint Filed: June 6, 2018
22                                           Trial Date: Not Yet Set
                                             Judge: Hon. Edward M. Chen
23

24

25

26

27

28

---

**KGSI's Answer and Counterclaims**                          **No. 3: 18-cv-03358-EMC**

KEN GANGBAR STUDIO INC., a
Canadian corporation,

       Counterclaimant,

       v.

KEVIN BARRY FINE ART
ASSOCIATES, KEVIN A. BARRY,
RICHARD MCCORMACK DESIGN
d/b/a STUDIO MCCORMACK,
RICHARD MCCORMACK, JOHN
JOHNSON, DOES 1-20, and ABC
Corporations 1-20,

       Counterclaim Defendants.

       Defendant Ken Gangbar Studio Inc. (KGSI) answers the Declaratory Judgment Complaint (Complaint) of Plaintiff Kevin Barry Fine Art Associates (KBFAA) as follows:

## JURISDICTION

       1.    KGSI admits that KBFAA has styled its complaint as one for relief under 28 U.S.C. §§ 2201 and 2202, and/or for further necessary and proper relief, including under the Copyright Act of 1976, 17 USC § 101 *et seq*.  KGSI admits that this Court has original subject matter jurisdiction over this action under 28 U.S.C. §1331 and §1338(a).  KGSI otherwise denies the allegations.

       2.    KGSI denies personal jurisdiction based on business it transacts or acts it has committed here, but nonetheless consents to specific personal jurisdiction for this case in California.

3.      Admitted.

4.      Admitted.

## THE PARTIES

5.      On information and belief, KGSI admits the allegation.

6.      Admitted.

## GENERAL ALLEGATIONS

7.      KGSI admits that KBFAA is an art dealership that sources or sells art for display, including, on information and belief, in buildings, hotels, and residences. KGSI lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, and on that basis denies them.

## KGSI'S WORKS

8.      KGSI admits that it holds Registration No. VA 2-090-600 in the U.S. Copyright office in a work entitled "Halcyon."  KGSI admits that Exhibit A to the Complaint appears to be a copy of an online record of this Registration.

9.      KGSI admits that Exhibit B appears to be an image of the work entitled "Halcyon."

10.      KGSI admits that it holds Registration No. VA 2-090-609 in the U.S. Copyright office in a work entitled "Shifting."  KGSI admits that Exhibit C to the Complaint appears to be a copy of an online record of this Registration.

11.      KGSI admits that Exhibit D appears to be an image of the work entitled "Shifting."

12.      KGSI admits that it holds Registration No. VA 2-072-663 in the U.S. Copyright office in a work entitled "Swish."  KGSI admits that Exhibit E to the Complaint appears to be a copy of an online record of this Registration.

13.      KGSI admits that Exhibit F appears to be an image of the work entitled "Swish."

**KGSI's Answer and Counterclaims**                    **Case No. 3:18-cv-03358-EMC**

14.     KGSI admits that it holds Registration No. VA 2-072-662 in the U.S. Copyright office in a work entitled "Star."  KGSI admits that Exhibit G to the Complaint appears to be a copy of an online record of this Registration.

15.     KGSI admits that Exhibit H appears to be an image of the work entitled "Star."

16.     KGSI admits that it holds Registration No. VA 2-090-602 in the U.S. Copyright office in a work entitled "Nobu Restaurant."  KGSI admits that Exhibit I to the Complaint appears to be a copy of an online record of this Registration.

17.     Denied.

18.     KGSI admits that it holds Registration No. VA 2-090-607 in the U.S. Copyright office in a work entitled "Palomar."  KGSI admits that Exhibit K to the Complaint appears to be a copy of an online record of this Registration.

19.     KGSI admits that Exhibit L appears to be an image of the work entitled "Palomar."

20.     KGSI admits that it holds Registration No. VA 2-072-661 in the U.S. Copyright office in a work entitled "Fin Wave."  KGSI admits that Exhibit M to the Complaint appears to be a copy of an online record of this Registration.

21.     KGSI admits that Exhibit N appears to be an image of the work entitled "Fin Wave."

22.     This definition requires no response.

**ACCUSED WORKS**

23.     KGSI admits that, through counsel, it has expressed its belief that the work depicted in Exhibit O infringes KGSI's copyrights.  KGSI does not know what KBFAA means by "style of work" in this allegation, and, without further knowledge or information sufficient to form a belief as to the scope of this qualifier, KGSI denies this part of this allegation.

24.     KGSI admits that, through counsel, it has expressed its belief that the work depicted in Exhibit P infringes KGSI's copyrights.  KGSI does not know what

KBFAA means by "style of work" in this allegation, and, without further knowledge or information sufficient to form a belief as to the scope of this qualifier, KGSI denies this part of this allegation.

25.     KGSI admits that, through counsel, it has expressed its belief that the work depicted in Exhibit Q infringes KGSI's copyrights.  KGSI does not know what KBFAA means by "style of work" in this allegation, and, without further knowledge or information sufficient to form a belief as to the scope of this qualifier, KGSI denies this part of this allegation.

26.     KGSI admits that, through counsel, it has expressed its belief that the work depicted in Exhibit R infringes KGSI's copyrights.  KGSI does not know what KBFAA means by "style of work" in this allegation, and, without further knowledge or information sufficient to form a belief as to the scope of this qualifier, KGSI denies this part of this allegation.

27.     KGSI admits that, through counsel, it has expressed its belief that work similar to that depicted in Exhibit S infringes KGSI's copyrights.  KGSI does not know what KBFAA means by "style of work" in this allegation, and, without further knowledge or information sufficient to form a belief as to the scope of this qualifier, KGSI denies this part of this allegation.

28.     KGSI admits that, through counsel, it has expressed its belief that the work depicted in Exhibit T infringes KGSI's copyrights.  KGSI does not know what KBFAA means by "style of work" in this allegation, and, without further knowledge or information sufficient to form a belief as to the scope of this qualifier, KGSI denies this part of this allegation.

29.     KGSI admits that, through counsel, it has expressed its belief that works similar to that depicted in Exhibit U infringes KGSI's copyrights.  KGSI does not know what KBFAA means by "style of work" in this allegation, and, without further knowledge or information sufficient to form a belief as to the scope of this qualifier, KGSI denies this part of this allegation.

30.     KGSI admits that, through counsel, it has expressed its belief that the work depicted in Exhibit V infringes KGSI's copyrights.  KGSI does not know what KBFAA means by "style of work" in this allegation, and, without further knowledge or information sufficient to form a belief as to the scope of this qualifier, KGSI denies this part of this allegation.

31.     KGSI admits that, through counsel, it has expressed its belief that the work depicted in Exhibit W infringes KGSI's copyrights.  KGSI does not know what KBFAA means by "style of work" in this allegation, and, without further knowledge or information sufficient to form a belief as to the scope of this qualifier, KGSI denies this part of this allegation.

32.     Denied.  As it relates to KBFAA's allegation that KGSI has threatened the "style of work" depicted in Exhibit X, KGSI's denial is based on its lack of knowledge of what KBFAA means by "style of work."

33.     This definition requires no response.

## FIRST COUNT
### (Declaratory Judgment of Non-Infringement of Copyright)

34.     This paragraph contains no new allegations.

35.     KGSI lacks direct knowledge of the allegation, and on that basis denies it.

36.     KGSI admits that KBFAA denies infringement; but KGSI denies that the works in question do not infringe, or that they are not substantially similar to KGSI's copyrighted works.

37.     Admitted.

38.     Admitted.

39.     KGSI admits that KBFAA seeks a declaratory judgment of non-infringement, and specifically seeks a declaration that the Accused Works do not infringe KGSI's copyrights in the KGSI Works.

40.     Denied.

1

**PRAYER FOR RELIEF**

2          KGSI denies KBFAA is entitled to any relief in this action.

3

4

**DEMAND FOR JURY TRIAL**

5          KGSI denies KBFAA is entitled to a jury trial on its declaratory-judgment

6   action, standing alone.  A jury trial right attaches to counterclaimant KGSI's damages

7   claims for copyright infringement.  When and for so long as those claims are in the

8   case, a jury trial is available.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KGSI's Answer and Counterclaims**                              **Case No. 3:18-cv-03358-EMC**

1

## COUNTERCLAIMS

2      For over a decade and likely two, Kevin Barry, his company, and others have

3  run their art brokerage through a pattern of criminal copyright infringement.  They

4  target desired artworks, make counterfeit copies, and sell them, often *en masse*, to

5  hotel chains, restaurants, resorts, and others.  These sales are made for the

6  counterclaim defendants' private financial gain and commercial advantage.

7      Among the many artworks thus targeted have been the organic and

8  emotionally-resonant wall sculptures of international commercial artist Ken

9  Gangbar.  (*See* Exhibits A - D.)  Ken Gangbar Studio Inc. (KGSI) owns the copyrights

10 to these works.

11     Accordingly, KGSI now counterclaims against Mr. Barry, Kevin Barry Fine Art

12 Associates (KBFAA), and the other counterclaim defendants as follows.

13

14

## JURISDICTION

15     1.     This counterclaim arises under the United States Copyright Act, 17

16 U.S.C. §§ 101 *et seq.*, and the Racketeer Influenced and Corrupt Organizations Act, 18

17 U.S.C. §§ 1961 *et seq.*  This Court has subject matter jurisdiction under 28 U.S.C.

18 §§ 1331 and 1338(a).

19     2.     The Court has personal jurisdiction because each counterclaim

20 defendant resides in California, committed the acts described here in California,

21 and/or committed the acts described here purposefully in concert with counterclaim

22 defendants who live here and have committed the acts complained of here.

23

24

25

26

27

28

KGSI's Answer and Counterclaims                    Case No. 3:18-cv-03358-EMC

**VENUE**

3.      Venue is proper in this district under 28 U.S.C. § 1391(b), 1400(a), and 18 U.S.C. § 1965.

**INTRADISTRICT ASSIGNMENT**

4.      This intellectual property action has already been assigned to the San Francisco Division.

**PARTIES**

5.      Ken Gangbar Studio Inc. (KGSI) is an Ontario corporation located in Toronto, Canada.

6.      Kevin Barry Fine Art Associates (KBFAA) is a California Corporation with offices in Santa Monica, California.

7.      Kevin Barry is an individual who lives in Agoura Hills, California.

8.      Richard McCormack Design d/b/a Studio McCormack (Studio McCormack) is a California Corporation with offices in Costa Mesa, California.

9.      Richard McCormack is an individual who, on information and belief, lives in Costa Mesa, California.

10.     John Johnson is an individual who, on information and belief, lives in Glendale, California.

11.     Does 1-20 are individuals whose names and identities KGSI does not presently know, but who, on information and belief, committed or facilitated the copyright infringement and other acts or omissions alleged below.  KGSI will add the names and identities of these Doe defendants when it learns them.

12.     ABC Corporations 1-20 are business entities or unincorporated associations, whose names, states of organization or incorporation, and entity types KGSI does not presently know, but which, on information and belief, committed or facilitated the copyright infringement and other acts or omissions alleged below. KGSI will add the names and identities of these business entities or unincorporated associations when it learns them.

13.     On information and belief, in committing the acts or omissions alleged in this counterclaim, each counterclaim defendant conspired with, aided and abetted, or acted in concert with each other, and each acted as the agent of each other.  Under principles of *respondeat superior*, employer counterclaim defendants are liable for the acts and omissions of their employees.

### GENERAL ALLEGATIONS

**A.     Infringement of KGSI's Copyrights**

14.     Kenneth L. Gangbar is an internationally-known commercial artist who specializes in sculptural and installation artwork that has an affecting, organic feel. Often using ceramics, Mr. Gangbar's work is inspired by the intricate, cyclical patterns of nature.  Galleries of his work can be found at www.kengangbar.com. Color reproductions of copyrighted works whose infringement is alleged here are attached as Exhibits A, B, C, and D.

15.     Mr. Gangbar's works have been commissioned by clients all over the world, from Kuala Lumpur to Doha, from Sydney to Mumbai, and from to Paris to Palo Alto.  They appear in some of the world's most prestigious hotels and restaurants, including the Four Seasons Hotel in Hong Kong, the Nobu Restaurant in Doha, Qatar, and the Fairmont Hotel in Singapore.  Mr. Gangbar's work also appears on the walls of a prominent aviation hangar at the San Diego International Airport, and in one of the world's largest cruise ships, *Norwegian Joy*.

16.     The copyrights to all of Mr. Gangbar's original artworks have been assigned to counterclaimant Ken Gangbar Studio Inc.

17.     On August 13, 2013, KBFAA sales agent Andrew Swarthout emailed Mr. Gangbar, attaching photographs of a pair of Mr. Gangbar's wall sculptures, including one entitled, *Star*.  The image of *Star* that Mr. Swarthout attached to this August 2013 email accompanies this pleading as Exhibit E.

18.     Mr. Swarthout said his "customer is looking to commission something similar to the attached piece," and asked Mr. Gangbar to quote a price to create such a work.  Mr. Gangbar responded with the requested quote.

19.     But Mr. Gangbar did not hear back from Mr. Swarthout.  In the months that followed, Mr. Gangbar sent Mr. Swarthout follow-up e-mails, in November 2013 and again in January 2014, asking about the status of the project.  Mr. Swarthout responded noncommittally, stating he did not know the project's status, and purporting to be seeking information from the customer.

20.     Ultimately the correspondence with Mr. Swarthout ended. Mr.  Gangbar assumed the project never came to fruition.

21.     What Mr. Gangbar did not know then, but has since learned, is that Mr. Swarthout, his colleagues, and his company used an alternative, and unlawful, means of securing and selling Mr. Gangbar's work.  In the months and years following Mr. Swarthout's request for a price quote—and for all KGSI knows also in the months and years before then—Mr. Swarthout, Mr. Barry, Kevin Barry Fine Art Associates, John Johnson, and others by-passed Mr. Gangbar altogether, creating, marketing, and selling their own, unauthorized, copies of Mr. Gangbar's works. These counterfeit copies were sold to purchasers across the United States.

22.     Mr. Gangbar does not currently know the complete list of infringing copies of his works.  But the counterclaim defendants made and sold infringing copies at least to The Ritz Prime Seafood restaurant in Newport Beach, California; separate Marriott hotels located in the states of Tennessee, Minnesota, and California; and Westin hotels located on Maui and in Chattanooga, Tennessee.  All of these infringing copies were then put on public display by the purchasers.  The Ritz Prime Seafood restaurant has since been sold.  But it benefited for years from the public display of the infringing artwork, and as of the date of this pleading, the work remains on the building wall.

23.     The work placed on The Ritz Prime Seafood wall was selected for placement there by counterclaim defendants Rick McCormack and his interior design company, Studio McCormack.  Mr. McCormack had circulated a copy of one of Mr. Gangbar's copyrighted works, with Mr. Gangbar's name visible on the circulated photograph, to several art dealers, seeking bids to commission a copy of the work. Kevin Barry and KBFAA responded with the low bid, and were given the job.

24.     Until late January 2017, Mr. Gangbar had no idea that KBFAA, Mr. Barry, or anyone else was illegally copying, displaying, or selling his artwork. Then, in late January 2017, Mr. Gangbar received a promotional e-mail from KBFAA, spotlighting a number of "art solutions" it had created for its hospitality customers. Included among these were photographs of the copy of Mr. Gangbar's work at The Ritz Prime Seafood Restaurant.

25.     Upon Mr. Gangbar's discovery of this infringing copy, he began searching online for other infringing images.  He turned up three other infringing works on websites owned or maintained by KBFAA.  Mr. Gangbar later learned of a total of at least nine infringing copies of his artwork sold by Kevin Barry, KBFAA, and, on information and belief, other counterclaim defendants, both named and to-be-named.

26.     Exhibit F is an example of an infringing sculptural work created and sold without authorization by, among others, counterclaim defendants Kevin Barry and KBFAA.  On information and belief, this is a photograph of a wall sculpture they sold to the Bayview Marriott in Newport Beach, California, and that they installed in the lobby and reception area of that hotel.  This sculpture infringes at least KGSI's copyright registration for the work, *Star*.  Images of *Star* appear in Exhibit B.

27.     Counterclaim defendant John Johnson hand crafted some or all of the infringing artworks accused in this counterclaim.

28.     In addition to selling infringing physical replicas of Mr. Gangbar's copyrighted sculptural artworks, Kevin Barry, KBFAA, and potentially other

counterclaim defendants created two-dimensional artists' renderings showing infringing copies of Mr. Gangbar's work superimposed into photographs of the customers' proposed installation sites.  These infringing artists' renderings were then used to support sales of infringing sculptures.  In addition, in at least one instance and likely others, the artists' renderings were uploaded to the Internet and used by a KBFAA customer, a hotel, to market itself for guest bookings.  In the screenshot and closeup detail attached as Exhibit G, the Westin Nanea Ocean Villas resort on Maui displays a picture of the hotel's dining area featuring an infringing copy of Mr. Gangbar's registered work, *Swish*.  A button on the web page encourages travelers to "Book Now."  (*Id.*)  Photographs of Mr. Gangbar's work, *Swish*, appear in Exhibit A.

### B.   Pattern of Past Willful Copyright Infringement

29.   The many above instances of willful copyright infringement were not these counterclaim defendants' first.  Their past is filled with strikingly similar incidents, stretching back close to two decades, if not further.  Mr. Barry or his agents approach artists or their representatives, seeking to buy the right to mass-produce and sell their work.  The artists or representatives either decline, or else quote a price Mr. Barry or his agent find too steep.  Mr. Barry or the agent then simply copy and sell the work anyway.

30.   Below is a partial list of such episodes of willful copyright infringement for commercial advantage and private financial gain.

#### 1.   Brennie Brackett

31.   Brennie Brackett is an accomplished Northern California pastel artist. Sometime before 2008, Mr. Barry purchased a high-quality, limited-edition print, called a "giclée," of each of three of Ms. Brackett's still lifes: *Falling Into Place*, *Winter's Velvet*, and *Great Expectations*.  Mr. Barry asked Ms. Brackett's art broker whether he could mass-produce inexpensive, lower-quality copies of these works.  Unbeknownst to the broker, Mr. Barry had by then already promised the prints to Hilton Hotels

Corporation, which wanted large quantities of them for its Homewood Suites chain of extended-stay hotels. Ms. Brackett's original giclées sold for $475 - $500 each. Barry offered $5 per print. Ms. Brackett's broker told Mr. Barry in no uncertain terms that Ms. Brackett would not be interested in selling Mr. Barry the rights to mass-produce and sell her artwork.

32.     Mr. Barry then copied and sold the prints anyway. In 2006, he hired a printing company to create images of the prints. At Mr. Barry's direction, the printer hired an artist to photoshop very minor changes to each work. Mr. Barry then ordered 1,144 infringing copies. He sold 934 of them to Hilton, filling out the sales paperwork with fictitious artists' names, including "Smith" and "Johnson." When Ms. Brackett discovered the infringement and, through counsel, confronted Mr. Barry about what he had done, he ordered the remaining 210 infringing copies destroyed. By then, nearly 1,000 inferior-quality prints of Ms. Brackett's paintings hung on the walls of Homewood Suites hotel rooms across the United States. Attached to this counterclaim as Exhibit H are images of two of Ms. Brackett's original works, *Falling Into Place* and *Great Expectations*, placed side-by-side with the photoshopped copies KBFAA and Mr. Barry mass-produced and sold to Hilton.

### 2.     Woodward Payne

33.     Around the same time KBFAA and Mr. Barry illegally copied and sold Brennie Brackett's artworks, they and their co-conspirators also altered, copied, and commercialized the work of Northern California artist Woodward Payne. Once again, Mr. Barry, KBFAA, and their agents began by purchasing a still-life of Mr. Payne's. The print was then given or sold to Hilton for placement on the wall of a model hotel room offered for sale to Homewood Suites franchisees. Only after Hilton had selected the print did Mr. Barry and his company seek permission to reproduce and sell copies of it. When that permission was denied, Mr. Barry and KBFAA simply hired an artist to create a substantially similar copy. Exhibit I to this

counterclaim is a comparison of two of Mr. Payne's original artworks to the infringing copy offered for sale in the Homewood Suites model hotel room.

### 3. Victoria Ryan; Kevin Barry's Confession

34. Victoria Ryan is longtime painter. She works in soft pastels, oils, and other media. In 2006 or 2007, Mr. Barry, KBFAA, and others working at their behest purchased giclée prints of Ms. Ryan's work. In the summer of 2007, Mr. Barry called Ms. Ryan and asked whether he could sell offset prints of certain of her artworks, including a work entitled *Early Dawn*. Ms. Ryan said no. She said she was interested only in selling high-quality giclées of her work, not inferior-quality offset prints. Some months later, in January 2008, Mr. Barry again pressed Ms. Ryan for permission to resell her artwork as offset prints. He offered her $5 a print. Ms. Ryan again declined. Mr. Barry continued to press her, saying he was working with Hilton Hotels' Homewood Suites division, and that Hilton had already chosen the three pieces he had shown them. Mr. Barry said the Hilton buyers had already made up their minds.

35. With Mr. Barry speaking as though Hilton had already purchased Ms. Ryan's artworks, Ms. Ryan began to search on the Internet. There she found Homewood Suites web pages featuring *Early Dawn*. She also saw model hotel rooms offered to Homewood Suites franchisees featuring artworks she recognized as altered versions of the work of Brennie Brackett and Woodward Payne. When in February 2008 Mr. Barry again called Ms. Ryan to press her to sell him her work, she confronted him about her discovery. Mr. Barry readily admitted his unauthorized use of Ms. Brackett's, Mr. Payne's, and Ms. Ryan's prints. He also admitted his subtle alteration of Ms. Brackett's and Mr. Payne's prints before selling them to Hilton. But he denied altering Ms. Ryan's works before offering them to Hilton: "I did it [altering the works] to Brennie and I did it to Woody [Woodward Payne], but I didn't do it to you." When Ms. Ryan told Mr. Barry his actions were wrong, he readily agreed: "I know, I know it was wrong." Mr. Barry said he "had no choice,"

that his "back was against the wall."  He said the hotel approval process was a lengthy one and it was already underway.  He said the artists whose works he had used in the process had all refused him permission to sell their work.  Mr. Barry suggested his use of unauthorized copies of artists' works was vindicated by his success closing sales.  "It's business," he said.

36.     Ms. Ryan's work, *Early Dawn*, was, as noted, among those on public display, without permission, on the Homewood Suites web pages.  In addition, because it was being offered for sale as part of a model hotel room being marketed nationwide to Hilton franchisees, KGSI is informed and believes and on that basis alleges that infringing sales of the work were made.

### 4.     Carol Bergman

37.     In or around 2006, Mr. Barry and KBFAA were unable to conclude negotiations to buy the works of an artist named Carol Bergman.  Mr. Barry commissioned another artist to create altered copies of the works.  He then sold over 500 of the infringing copies to Hilton for its Doubletree Hotel in Bethesda, Maryland.

### 5.     Kaoru Mansour

38.     Around that same time, Mr. Barry, KBFAA, and their agents sold the work of prominent Los-Angeles-area artist Kaoru Mansour for use in Hollywood television productions.  Mr. Barry had previously been specifically warned, in person, by Ms. Mansour's exclusive agent for television and movie work, not to sell Ms. Mansour's art for this purpose.  Stunned to see the work appear on television, Ms. Mansour and her agent investigated and learned that Mr. Barry had sold the work for resale to a television production company.  Invoices for the work bore a false name: "Koury," the name of a prominent Bay-Area artist.  Ms. Mansour was paid a cash settlement.

### 6.     Antonio Dojer

39.     In 2002, Mr. Barry commissioned an artist to paint a virtually-identical copy of a work by artist Antonio Dojer, then made and sold 188 copies.  Mr. Dojer's

1  exclusive agent happened upon one of the paintings on a chance visit to the

2  Huntington Beach Hyatt Hotel, where the work was prominently displayed.  When

3  confronted with a demand letter from the agent, Mr. Barry paid a cash settlement.

4

5  **FIRST COUNTERCLAIM**

6  **(Copyright Infringement — Against All Defendants)**

7       40.   KGSI incorporates the prior paragraphs of this counterclaim as though

8  fully set forth here.

9       41.   KGSI is the sole registered owner of all right, title, and interest in the

10  copyrighted works whose infringement is asserted here (the Copyrighted Works).

11  Those works include *Swish*, U.S. Copyright Registration No. VA 2-072-663, *Star*, U.S.

12  Copyright Registration No. VA 2-072-662, *Palomar*, U.S. Copyright Registration

13  No. VA 2-090-607, and *Fin Wave*, U.S. Copyright Registration No. VA 2-072-661.

14  Copies of these copyright registrations are attached as Exhibit J.

15       42.   By, among other things, duplicating, distributing, publicly displaying,

16  and/or creating derivative works of the Copyrighted Works, the counterclaim

17  defendants, and each of them, directly infringed KGSI's copyrights, in violation of

18  the copyright laws of the United States, including 17 U.S.C. section 101 *et seq.*

19       43.   The counterclaim defendants have also contributorily and/or

20  vicariously infringed KGSI's copyrights in the Copyrighted Works.

21       44.   For example, by selling sculptural installations they knew to be

22  infringing to hotels and other public spaces, Kevin Barry and KBFAA committed

23  contributory infringement for the resulting public displays of these works.

24       45.   As another example, Richard McCormack and his company, Studio

25  McCormack, vicariously infringed KGSI copyrights.  They had the right and the

26  ability to supervise and control the selection of artwork to be purchased and placed

27  at The Ritz Prime Seafood.  They selected an infringing copy of Mr. Gangbar's work.

28  And they financially benefitted from the sale.

46.     The counterclaim defendants' acts of direct, vicarious, and contributory infringement were intentional, willful, and malicious, and performed with knowledge that the works they or others were copying, selling, publicly displaying, or creating derivative works of were copyrighted works whose copyright they did not own and for which they lacked authorization to act as they acted, all in reckless disregard of KGSI's rights.

47.     The natural, probable, proximate, and foreseeable result of counterclaim defendants' wrongful conduct was to damage KGSI, and to secure profits for themselves.

48.     KGSI is entitled to disgorge these profits, and to recover its actual damages, all in an amount to be determined at trial.  KGSI is also entitled to a permanent injunction prohibiting continuing or future infringement of his rights, and/or ordering the destruction of infringing works.

## SECOND COUNTERCLAIM

### (Civil RICO — Against All Defendants)

49.     KGSI incorporates the prior paragraphs of this counterclaim as though fully set forth here.

50.     On information and belief, Kevin Barry Fine Art Associates operates in close association with affiliated entities owned or controlled by Kevin Barry (the KBFAA Entities).  The KBFAA Entities include, on information and belief, Kevin Barry Fine Art Associates of Nevada, Inc. and Kevin Barry Fine Art – San Francisco.

51.     Each KBFAA Entity is an "enterprise" engaged in "interstate commerce," and affecting interstate commerce, as those terms are defined and used in 18 U.S.C. sections 1961(4) and 1962(c).  For example, infringing artwork has been marketed and sold by these entities to hotels and restaurants across the U.S.

52.     Alternatively, there is a broader enterprise (the Broader Enterprise) that consists of an association-in-fact of members who have functioned for years as a continuing unit for the common purpose of achieving the activities described in this

18

1  counterclaim, including obtaining commercial advantage and private financial gain

2  via willful copyright infringement.  The Broader Enterprise includes at least Kevin

3  Barry, KBFAA, and other entities and individuals working with them.

4       53.    The Broader Enterprise is an "enterprise" engaged in "interstate

5  commerce," and its activities affect interstate commerce, as those terms are defined

6  and used in 18 U.S.C. sections 1961(4) and 1962(c).  For example, infringing artwork

7  has been marketed and sold by the Broader Enterprise to hotels and restaurants

8  across the U.S.

9       54.    Through the conduct described above, including willful copyright

10  infringement of KGSI's works for purposes of commercial advantage and private

11  financial gain, and reproduction and distribution during a 180-day period of multiple

12  copyrighted works with a total retail value of over $1,000, individual and entity

13  counterclaim defendants who are employed by or associated with one or more of the

14  KBFAA Entities conspired to, and did, conduct or participate in the conduct of the

15  affairs of the KBFAA Entities with which they are associated, or by whom they are

16  employed, through a pattern of racketeering activity, all in violation of 18 U.S.C.

17  sections 1962(c) and (d).

18       55.    In addition or in the alternative, through the conduct described above,

19  including willful copyright infringement of KGSI's works for purposes of

20  commercial advantage and private financial gain, and reproduction and distribution

21  during a 180-day period of multiple copyrighted works with a total retail value of

22  over $1,000, individual or entity counterclaim defendants who are employed by or

23  associated with the Broader Enterprise conspired to, and did, conduct or participate

24  in the conduct of the affairs of the Broader Enterprise through a pattern of

25  racketeering activity, all in violation of 18 U.S.C. sections 1962(c) and (d).

26       56.    KGSI has suffered injury directly and foreseeably by reason of the

27  counterclaimants' violations of 18 U.S.C. § 1962, in an amount to be determined at

28

1 trial.  KGSI is entitled to compensation for these damages, and for treble damages

2 and costs of suit, including reasonable attorneys' fees, all under 18 U.S.C. § 1964(c).

3

4 **PRAYER FOR RELIEF**

5 KGSI prays for judgment against the counterclaim defendants, and each of

6 them, jointly and severally, as follows:

7          a.   for copyright damages, including KGSI's actual damages and the

8               counterclaim defendants' profits;

9          b.   for treble damages under 18 U.S.C. § 1964(c)

10          c.   for KGSI's costs and attorneys' fees, including under 18 U.S.C.

11               § 1964(c);

12          d.   for pre- and post-judgment interest on all awards for which they are

13               available;

14          e.   for permanent injunctive relief prohibiting all counterclaim

15               defendants, their officers, agents, successors, and assigns, and all

16               persons acting in concert with them, from further acts of direct or

17               indirect copyright infringement;

18          f.   for an order under 18 U.S.C. § 1964(a) requiring Kevin Barry, and

19               any other counterclaim defendant found to have conducted or

20               participated in the conduct of an enterprise's affairs through a

21               pattern of racketeering activity, to divest him- or herself of any

22               interest, direct or indirect, in such enterprise; and ordering that any

23               such person further be prohibited from engaging in art brokerage or

24               dealership, permanently or for a period of years; and ordering the

25               dissolution or reorganization of any such enterprise, making due

26               provision for the rights of innocent persons;

27          g.   for an order requiring the destruction of the infringing works;

28

1        h.  for punitive damages; and

2        i.  for such other relief as the Court deems just and proper.

4                              **DEMAND FOR JURY TRIAL**

5         KGSI demands a jury trial on all issues qualifying for one.

7 RESPECTFULLY SUBMITTED,

9 DATED:  August 8, 2018             THE BUSINESS LITIGATION GROUP, P.C.

11                      By:       */s/Marc N. Bernstein*

12                              Marc N. Bernstein

13                      Attorneys for Defendant & Counterclaimant

14                      KEN GANGBAR STUDIO INC.

Exh. A

Swish











Exh. B

Star






Exh. C









Exh. D

Fin Wave







Exh. E



Exh. F





Exh. G

## The Westin Nanea Ocean Villas, Ka'anapali

**PHOTO GALLERY**      **GUEST GALLERY**



Hotel

Rooms

Location

Services &
Amenities

**Dining**



BOOK NOW

DINING PHOTO 5 OF 7 | RESTAURANT



Exh. H

Brennie Brackett Originals and KBFAA Version of *Falling Into Place*:

 

Brennie Brackett Originals and KBFAA Version of *Great Expectations*:

 



Exh. I

Woodward Payne Originals and KBFAA Versions of Aerial



Spring Aerial I

Homewood Suites rendition



Spring Aerial II



Exh. J

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Kay Tayle Clayett*

Acting United States Register of Copyrights and Director

**Registration Number**

## VA 2-072-663

**Effective Date of Registration:**
October 24, 2017

## Title

| | |
|---|---|
| **Title of Work:** | Swish |

## Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 2012 |
| **Date of 1st Publication:** | August 01, 2012 |
| **Nation of 1st Publication:** | Canada |

## Author

| | |
|---|---|
| • **Author:** | Kenneth Louis Gangbar |
| **Author Created:** | sculpture |
| **Work made for hire:** | No |
| **Citizen of:** | Canada |
| **Domiciled in:** | Canada |
| **Year Born:** | 1966 |

## Copyright Claimant

| | |
|---|---|
| **Copyright Claimant:** | Ken Gangbar Studio, Inc. |
| | 142 Cawthra Avenue #201, Toronto, ON, M6N 3C2, Canada |
| **Transfer statement:** | By written agreement |

## Rights and Permissions

| | |
|---|---|
| **Organization Name:** | Ken Gangbar Studio Inc. |
| **Email:** | ken@kengangbar.com |
| **Telephone:** | 4165324284 |
| **Alt. Telephone:** | 4167041284 |
| **Address:** | 142 Cawthra Avenue #201 |
| | Toronto, ON M6N 3C2 Canada |

## Certification

| | |
|---|---|
| **Name:** | Lizbeth Hasse |

Page 1 of 2

**Date**:   October 24, 2017

## Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Kayn Leyle Clayeth*

Acting United States Register of Copyrights and Director

**Registration Number**

## VA 2-072-662

**Effective Date of Registration:**
October 24, 2017

---

## Title

**Title of Work:**  Star

## Completion/Publication

**Year of Completion:**  2012
**Date of 1st Publication:**  May 01, 2012
**Nation of 1st Publication:**  Canada

## Author

- **Author:**  Kenneth Louis Gangbar
  **Author Created:**  sculpture
  **Work made for hire:**  No
  **Citizen of:**  Canada
  **Domiciled in:**  Canada
  **Year Born:**  1966

## Copyright Claimant

**Copyright Claimant:**  Ken Gangbar Studio, Inc.
142 Cawthra Avenue #201, Toronto, ON, M6N 3C2, Canada
**Transfer statement:**  By written agreement

## Rights and Permissions

**Organization Name:**  Ken Gangbar Studio, Inc.
**Email:**  ken@kengangbar.com
**Telephone:**  4165324284
**Alt. Telephone:**  4167041284
**Address:**  142 Cawthra Avenue #201
Toronto, ON M6N 3C2 Canada

## Certification

**Name:**  Lizbeth Hasse

**Date**:   October 24, 2017

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

**Registration Number**

## VA 2-090-607

**Effective Date of Registration:**
December 13, 2017

Acting United States Register of Copyrights and Director

## Title

**Title of Work:** Palomar

## Completion/Publication

**Year of Completion:** 2008
**Date of 1st Publication:** November 15, 2008
**Nation of 1st Publication:** Canada

## Author

- **Author:** Kenneth Louis Gangbar
  **Author Created:** sculpture
  **Work made for hire:** No
  **Citizen of:** Canada
  **Domiciled in:** Canada
  **Year Born:** 1966

## Copyright Claimant

**Copyright Claimant:** Ken Gangbar Studio, Inc.
142 Cawthra Avenue #201, Toronto, ON, M6N 3C2, Canada
**Transfer statement:** By written agreement

## Rights and Permissions

**Organization Name:** Ken Gangbar Studio, Inc.
**Email:** ken@kengangbar.com
**Telephone:** 4165324284
**Alt. Telephone:** 4167041284
**Address:** 142 Cawthra Avenue #201
Toronto, ON M6N 3C2 Canada

## Certification

**Name:** Lizbeth Hasse
**Date:** December 13, 2017

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Kayn Teyle Clapeth*

Acting United States Register of Copyrights and Director

**Registration Number**

## VA 2-072-661

**Effective Date of Registration:**
October 24, 2017

---

## Title

**Title of Work:** Fin Wave

## Completion/Publication

**Year of Completion:** 2007
**Date of 1st Publication:** February 01, 2007
**Nation of 1st Publication:** Canada

## Author

- **Author:** Kenneth Louis Gangbar
  **Author Created:** sculpture
  **Work made for hire:** No
  **Citizen of:** Canada
  **Domiciled in:** Canada
  **Year Born:** 1966

## Copyright Claimant

**Copyright Claimant:** Ken Gangbar Studio, Inc.
142 Cawthra Avenue #201, Toronto, ON, M6N 3C2, Canada
**Transfer statement:** By written agreement

## Rights and Permissions

**Organization Name:** Ken Gangbar Studio, Inc.
**Email:** ken@kengangbar.com
**Telephone:** 4165324284
**Alt. Telephone:** 4167041284
**Address:** 142 Cawthra Avenue #201
Toronto, ON M6N 3C2 Canada

## Certification

**Name:** Lizbeth Hasse

Page 1 of 2

**Date**:   October 24, 2017