NED M. GELHAAR (SBN 163185)
Email: ngelhaar@enensteinlaw.com
JOY D. LLAGUNO (SBN 311867)
Email: jllaguno@enensteinlaw.com
**ENENSTEIN PHAM & GLASS**
12121 Wilshire Boulevard, Suite 600
Los Angeles, California 90025
(310) 899-2070 Phone
(310) 496-1930 Fax

*Attorney for Plaintiff and Counterclaim-Defendant*
*Kevin Barry Fine Art Associates and Counterclaim-Defendants*
*Kevin A. Barry and John Johnson*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN BARRY FINE ART ASSOCIATES, a California corporation, <br><br> Plaintiff, <br> vs. <br><br> KEN GANGBAR STUDIO INC., a Canadian Corporation, <br><br> Defendant. <br>───────────────────────── <br> KEN GANGBAR STUDIO INC., a Canadian Corporation, <br><br> Counterclaimant, <br> vs. <br><br> KEVIN BARRY FINE ART ASSOCIATES, KEVIN A. BARRY, RICHARD MCCORMACK DESIGN d/b/a STUDIO MCCORMACK, RICHARD MCCORMACK, JOHN JOHNSON, DOES 1-20, and ABC Corporations 1-20, <br><br> Counterclaim Defendants. | Case No. 3:18-cv-03358-HSG <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTERCLAIM DEFENDANTS KEVIN BARRY FINE ART ASSOCIATES, KEVIN A. BARRY, AND JOHN JOHNSON'S MOTION TO DISMISS COUNTERCLAIMANT KEN GANGBAR STUDIO INC.'S COUNTERCLAIMS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** <br><br> Date:      January 17, 2019 <br> Time:     2:00 p.m. <br> Crtm:     2 <br> Judge:    Hon. Haywood S. Gilliam Jr. |

# TABLE OF CONTENTS

I.   INTRODUCTION...................................................................................................1

II.  ALLEGATIONS RELEVANT TO THIS MOTION.........................................1

III. ARGUMENT ........................................................................................................3

   A.   LEGAL STANDARD UNDER RULE 12(b)(6) ..........................................3

   B.   KGSI FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT .............4

     1.   Dismissal of KGSI's Copyright Infringement Claims is Dictated by the Ninth Circuit's Objective Filtering and Comparison Analysis ........................................ 4

       a.   Filtering ............................................................................................ 6

         i. Unprotectable Ideas ...................................................................... 6

         ii. Scènes à Faire .............................................................................. 7

         iii. Unoriginal Components.............................................................. 8

       b.   Comparison........................................................................................ 8

     2.   Dismissal of KGSI's Copyright Infringement Claims is Supported by the Policies Underlying Copyright Law ....................................................... 10

   C.   KGSI FAILS TO STATE A CLAIM FOR A VIOLATION OF THE RACKETEER INFLUENCED CORRUPT ORGANIZATION ACT............................................................. 12

     1.   Copyright Infringement does Not Support a RICO Claim in the Absence of Counterfeiting or Piracy........................................................................ 12

     2.   Even Under the Willfulness Standard, the Differences Between the Accused Works and the KGSI Works Establish that there is no Criminal Copyright Infringement to Support a RICO Claim .......................................................................................... 14

IV.  CONCLUSION ...................................................................................................17

1

2
## TABLE OF AUTHORITIES

3
**Cases**

4
*Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435 (9th Cir. 1994) ................................... 11

5
*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ............................................................................................ 4

6
*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ...................................................................... 4

7
*Berkic v. Crichton*, 761 F.2d 1289 (9th Cir. 1985) ......................................................................... 6

8
*Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569 (1994) ........................................................... 11

9
*Cano v. A World Of Difference Inst.,* 1996 U.S. Dist. LEXIS 8161 (N.D. Cal. May 31, 1996) ... 5

10
*Cavalier v. Random House, Inc.*, 297 F.3d 815 (9th Cir. 2002) ..................................................... 5

11
*Cheek v. U.S., 498, U.S.* 192 (1991) ......................................................................................... 14, 15

12
*Christianson v. West Pub. Co.,* 149 F.2d 202 (9th Cir. 1945) ........................................................ 4

13
*Costar Realty Info., Inc. v. Field*, 612 F.Supp.2d 660 (D.Md 2009) ........................................... 13

14
*Cousins v. Lockyer,* 658 F.3d 1063 (9th Cir. 2009) ........................................................................ 4

15
*Dowling v. U.S.,* 473 U.S. 207 (1985) ........................................................................................... 12

16
*Dr. Seuss Enter., L.P. v. Penguin Books USA*, 109 F.3d 1394 (9th Cir. 1997) .......................... 10

17
*Eldred v. Ashcroft,* 537 U.S. 186 (2003) ...................................................................................... 10

18
*Emerson v. Davies,* 8 F.Cas. 615 (No. 4,436) (CCD Mass.1845 ) (Story, J.) ............................ 11

19
*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ............................................. 5, 10

20
*Folkins v. Wyland Worldwide, LLC*, 862 F.3d 268 (2018) ............................................................ 8

21
*Funky Films, Inc. v. Time Warner Entertainment Co., L.P.*, 462 F.3d at 1072 (9th Cir. 2006) .... 5

22
*Generally Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197 (9th Cir. 1989)................. 8

23
*Harper & Row Publishers, Inc. v. Nation Enter.*, 471 U.S. 539 (1985) ...................................... 10

24
*Identity Arts v. Best Buy Enter. Servs. Inc.,* 2006 U.S. Dist. LEXIS 9895 (N.D. Cal. Apr. 18,

25
2007) ............................................................................................................................................. 4

26
*In re Cutera Sec. Litig.,* 610 F.3d 1003 (9th Cir. 2010)................................................................. 4

27
*Lake v. Columbia Broad. Sys.,* 140 F. Supp. 707 (S.D. Cal. 1956) ............................................... 5

ii

28
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF     Case No.  3:18-cv-03358-HSG
COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS
COUNTERCLAIMS UNDER FRCP 12(b)(6)**

*Litchfield v. Spielberg*, 736 F.2d 1352 (9th Cir. 1984) ............................................................ 9

*Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904 (2010) ................................................ 5

*Matthew Bender & Co. v. West Publishing Co.*, 158 F.3d 674 (2d. Cir. 1998) .......................... 7

*Newton v. Diamond*, 388 F.3d 1189 (9th Cir. 2004) .................................................................... 9

*Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530 (9th Cir. 1994) ..................................... 4

*Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003) ....................................................................... 7, 8

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ................................................................ 11

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ................................. 10

*Stewart v. Wachowski*, 2005 WL 6184235 (C.D. Cal. June 14, 2005) ...................................... 12

*United States v. Anderson,* 741 F.3d 938 (9th Cir. 2013) ........................................................ 15

*United States v. Beltran,* 503 F.3d 1 (1st Cir. 2007) ........................................................... 14, 15

*United States v. Gottesman* 724 F.2d 1517 (11th Cir. 1984) ............................................... 14, 15

*United States v. Manzer,* 69 F.3d 222 (8th Cir. 1995) ......................................................... 14, 15

*United States v. Rose,*  149 U.S.P.Q. 820 (S.D.N.Y. 1966) ...................................................... 14

*United States. v. Whetzel*, 589 F.2d 707 (D.C.Cir 1978) ..................................................... 14, 15

*Zella v. E.W. Scripps, Co.*, 529 F.Supp.2d 1124 (C.D. Cal 2007) .............................................. 4

**Statutes**

17 U.S.C. § 102(b) ..................................................................................................................... 10

17 U.S.C. § 506 (a)(1)(A) ..................................................................................................... 14, 15

18 U.S.C. § 2319 ....................................................................................................................... 12

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................... 3

## I.   INTRODUCTION

Defendant and Counterclaimant Ken Gangbar Studio Inc. ("KGSI") alleges that Plaintiff and Counterclaim Defendant Kevin Barry Fine Art Associates ("KBFAA") and Counterclaim Defendants Kevin A. Barry and John Johnson (collectively the "KBFAA Parties") infringed KGSI's copyrights in certain three-dimensional wall sculptures.  KGSI admits that its works are inspired by the "intricate, cyclical patterns of nature."  As argued below, a simple comparison of KGSI's copyrighted works (the "KGSI Works") and the accused KBFAA works (the "Accused Works") shows that the only similarities between them arise from unprotectable elements such as those arising from the fact that all are abstract depictions of nature and all are three-dimensional wall sculptures.  This, and the many creative elements in the Accused Works distinguishing them from the KGSI Works, establish as a matter of law that KGSI has failed to state a claim for civil copyright infringement, let alone for **criminal** copyright infringement as would be required to support its RICO claims against the KBFAA Parties.

## II.   ALLEGATIONS RELEVANT TO THIS MOTION

KGSI admits that KBFAA is "an art dealership that sources or sells art for display, including on information and belief, in buildings, hotels, and residences."  KGSI Answer, ¶ 7. (Dkt. 18).

KGSI alleges in Paragraph 14 of its Counterclaims that:

> Kenneth L. Gangbar is an internationally-known commercial artist who specializes in sculptural and installation artwork that has an affecting, organic feel.  Often using ceramics, Mr. Gangbar's work is inspired by the intricate, cyclical patterns of nature. . . . *Id.*

KGSI generally alleges in its Counterclaims that "color reproductions of copyrighted works whose infringement is alleged here are attached as Exhibits A, B, C, and D.  *Id.*, ¶ 14. However, KGSI only specifically identifies two KGSI Works—*Star* and *Swish*—which it alleges are infringed by specific Accused Works.

As to *Star*, KGSI alleges that a KBFAA representative sent an email to Mr. Gangbar with an image of *Star* and said he had a customer who "is looking to commission something similar to the attached piece,' and asked Mr. Gangbar to quote a price to create such a work."

1

*Id* at 18.  KGSI alleges that the image of Star sent to Mr. Gangbar is attached as Exhibit E to its

Counterclaims.  *Id.*, ¶ 17.  It is reproduced below:



In Paragraph 26 of its Counterclaims, KGSI alleges that Exhibit F is an example of an

Accused Work which infringes "at least" KGSI's copyright registration for *Star*.  Exhibit F to

KGSI's Counterclaims is reproduced below:



2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In Paragraph 13 of its Answer to KBFAA's Complaint (Dkt. 1), KGSI admits that the deposit image of *Swish* which was attached as Exhibit F to KGSI's Complaint "appears to be an image of the work entitled 'Swish.'"  Exhibit F to KBFAA's Complaint is reproduced below:



In Paragraph 28 of its Counterclaims, KGSI alleges that Exhibit G is a screenshot and close-up detail of a work that infringes *Swish*.  Exhibit G is reproduced below:

 

Apart from these, the KBFAA Parties see no allegations in the Counterclaims as to which specific Accused Works allegedly infringe which specific KGSI Works.

III.    ARGUMENT

A.    LEGAL STANDARD UNDER RULE 12(b)(6)

A court may dismiss a complaint for failure to state a claim upon which relief can be

3

granted. Fed. R. Civ. P. 12(b)(6). "A complaint may be dismissed as a matter of law for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1994). Well-pled factual allegations "are taken as true and construed in the light most favorable to the nonmoving party." *Cousins v. Lockyer,* 658 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions expressed as factual allegations "are not entitled to the assumption of truth." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). Accordingly, such legal conclusions are "insufficient to defeat a motion to dismiss for failure to state a claim." *In re Cutera Sec. Litig.,* 610 F.3d 1003, 1008 (9th Cir. 2010). Plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

**B.     KGSI FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT**

**1.     <u>Dismissal of KGSI's Copyright Infringement Claims is Dictated by the Ninth Circuit's Objective Filtering and Comparison Analysis</u>**

"A court may . . . dismiss a copyright infringement claim on a 12(b)(6) motion … if it concludes that the similarities between the two works pertain only to unprotected elements of the works." *Zella v. E.W. Scripps, Co.,* 529 F.Supp.2d 1124, 1131 (C.D. Cal 2007). "[T]he Ninth Circuit has noted that '[t]here is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss.'" *Id.* at 1130, *quoting Christianson v. West Pub. Co.,* 149 F.2d 202, 203 (9th Cir. 1945) (specifically approving of the district court's dismissal of copyright complaint by comparing the two works that were part of the record). "For fifty years, courts have followed this rather obvious principle and dismissed copyright claims that fail from the face of the complaint (and in light of all matters properly considered on a motion to dismiss)." *Zella,* 529 F.Supp.2d at 1130. Accordingly, courts frequently dismiss copyright infringement claims at the pleading stage after comparing the

4

works at issue and determining that there is no substantial similarity between them within the meaning of the Copyright Act. *See, e.g., id.* at 1130-31 (dismissing copyright infringement claim with prejudice); *Christianson,* 149 F.2d at 203; *Identity Arts v. Best Buy Enter. Servs. Inc.,* 2006 U.S. Dist. LEXIS 9895, at \*11-15, \*52 (N.D. Cal. Apr. 18, 2007) (slip copy); *Cano v. A World Of Difference Inst.,* 1996 U.S. Dist. LEXIS 8161, at \*41 (N.D. Cal. May 31, 1996); *Lake v. Columbia Broad. Sys.,* 140 F. Supp. 707, 708-09 (S.D. Cal. 1956).

To state a claim for copyright infringement, a plaintiff must allege: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) ("*Feist*"). The second "copying" prong has two distinct elements -- it requires allegations that "the infringer had access to plaintiff's copyrighted work and that the works at issue are ***substantially similar in their protected elements***." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (emphasis added).

To assess substantial similarity in protected elements, the Court must compare the works at issue applying the Ninth Circuit's objective "extrinsic test." *Funky Films, Inc. v. Time Warner Entertainment Co., L.P.*, 462 F.3d at 1072, 1077 (9th Cir. 2006).  Critically, the Court "must take care to inquire only whether the protectable elements, standing alone, are substantially similar." *Id*. This requires the Court to "filter out and disregard the non-protectable elements in making its substantial similarity determination." *Id*. "Protectable expression includes the specific details of an author's rendering of ideas," not the ideas themselves. General ideas and scenes a faire "are not protectable" under copyright law. *Id.* After filtering out unprotectable elements, "[i]f the court determines that no reasonable jury could find that the works are substantially similar, or if it concludes that the similarities pertain only to unprotected elements of the work, it is appropriate for the court to dismiss the action because, as a matter of law, there is no copyright infringement." *Zella*, 529 F.Supp.2d at 1131.

An apt example of the application of these principles is shown in *Mattel, Inc. v. MGA Entertainment, Inc*., 616 F.3d 904, 913 (2010) ("*Mattel*").  Mattel sued a rival toy company for

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF     Case No.  3:18-cv-03358-HSG
COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS
COUNTERCLAIMS UNDER FRCP 12(b)(6)

infringement of Mattel's copyrights in the original models and sketches of what became MGA's "BRATZ" dolls.  As Judge Kozinski explained, Mattel's copyrights:

> would cover only its particular expression of the bratty-doll idea, not the idea itself.  Otherwise, the first person to express any idea would have a monopoly over it. Degas can't prohibit other artists from painting ballerinas, and Charlaine Harris can't stop Stephanie Meyer from publishing Twilight just because Sookie came first. Similarly, MGA was free to look at Bryant's sketches and say, "Good idea! We want to create bratty dolls too."
>
> *Id.*

Judge Kozinski goes on in *Mattel* to lay out the first step of the Ninth Circuit's copyright infringement analysis as follows:

> To distinguish between permissible lifting of ideas and impermissible copying of expression, we have developed a two-part "extrinsic/intrinsic" test.  At the initial "extrinsic" stage, we examine the similarities between the copyrighted and challenged works and then determine whether the similar elements are protectable or unprotectable.   For example, ideas, *scenes a faire* (standard features) and unoriginal components aren't protectable. When the unprotectable elements are "filtered" out, what's left is an author's particular expression of an idea, which most definitely is protectable.

*Id.* at 913-14 (emphasis added, citation and punctuation omitted); *see e.g., Berkic v. Crichton*, 761 F.2d 1289, 1293–94 (9th Cir. 1985) ("*Berkic*") (rejecting consideration of general ideas as well as scenes-a-faire in comparing screenplays).

Applying the Ninth Circuit analysis, KGSI's copyright infringement claims fail as a matter of law.

### a.      Filtering

Filtering out any similarities between the KGSI Works and the Accused Works based on unprotectable ideas, *scènes à faire*, and unoriginal components, there is a distinct lack of similarity between them.

### i. Unprotectable Ideas

There are obviously similarities between the KGSI Works and the Accused Works since they all abstractly express nature in three-dimensional wall sculptures.  Multiple abstract depictions of the "cyclical patterns of nature"—as Gangbar describes his inspiration in his

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF     Case No.  3:18-cv-03358-HSG**
**COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS**
**COUNTERCLAIMS UNDER FRCP 12(b)(6)**

Counterclaims—such as a wave or a feather or a field of wheat will resemble one another, as well as the natural features themselves.   Such similarities are irrelevant to the substantial similarity analysis.

The KBFAA Parties are free to create and display three-dimensional wall sculptures abstractly depicting nature.  Indeed, KGSI's claims do not present a substantial similarity issue nearly as close as that in *Mattel* where bratty dolls were somewhat new to the world.  Three-dimensional wall art abstractly depicting nature has been around for centuries, if not millennia. Thus, this is not a situation where KBFA "discovered" the idea from seeing KGSI's Works.  On the contrary, KBFA—and the rest of the world—has been fully aware of the idea for a long time.

### ii. Scènes à Faire

Under the doctrine of *scènes à faire*, "expressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law."  *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003); *Berkic*, 761 F.2d at 1293–94 (rejecting consideration of general ideas as well as *scènes à faire* in determining substantial similarity).  For example, in *Mattel*, the Court held that typical features of fashion dolls such as large heads and feet were irrelevant to the infringement analysis since they were commonplace aspects of such works. *See Mattel*, 616 F.3d at 915 ("The concept of depicting a young, fashion-forward female with exaggerated features, including an oversized head and feet, is therefore unoriginal as well as an unprotectable idea").

Likewise here, the concept of presenting natural objects and patterns abstractly by altering their size, blurring their outlines, and extending their natural shapes and patterns are all commonplace and unprotectable *scènes à faire*.  As a result, any similarities between the KGSI Works and the Accused Works resulting from such features are irrelevant to the infringement analysis.

7

### iii. Unoriginal Components

The use of rock shaped disks (or rocks themselves) is plainly unoriginal.  Similarities based on the common use of ordinary natural features or facsimiles thereof are irrelevant to the infringement analysis.  *Cf. Feist*, 499 U.S. at 363 (use of commonplace elements that are firmly rooted in tradition are unoriginal and thus unprotectable); *see also Matthew Bender & Co. v. West Publishing Co*., 158 F.3d 674, 677 (2d. Cir. 1998) (application of industry standards not protectable because not creative).

### b.   Comparison

The next step in the Ninth Circuit's substantial similarity analysis as stated in *Mattel* is as follows:

> Given that others may freely copy a work's ideas (and other unprotectable elements), we start by determining the breadth of the possible expression of those ideas. If there's a wide range of expression (for example, there are gazillions of ways to make an aliens-attack movie), then copyright protection is "broad" and a work will infringe if it's "substantially similar" to the copyrighted work. If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is "thin" and a work must be "virtually identical" to infringe.

616 F.3d at 913-14; *see also Apple*, 35 F.3d at 1444 (since there is a limited range of expression of a page-shaped computer desktop icon, the test for infringement is virtual identity); *see Generally Harper House, Inc. v. Thomas Nelson, Inc*., 889 F.2d 197, 205 (9th Cir. 1989) (it is not enough to compare the allegedly infringing compilation with only a portion of the copyrighted work, they must be identical in their entirety).

Recent Ninth Circuit case law has emphasized the "thinness" of protection afforded to depictions of nature, thereby dictating application of the "virtually identical" standard for infringement.  *See Folkins v. Wyland Worldwide, LLC*, 862 F.3d 268 (2018) (similarities in naturally occurring elements do not support finding of infringement); *see also Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) (glass-in-glass jellyfish sculpture only entitled to thin protection against virtually identical copying due to the narrow range of expression).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF     Case No.  3:18-cv-03358-HSG
COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS
COUNTERCLAIMS UNDER FRCP 12(b)(6)

There is only a narrow range of expression of the idea of three-dimensional abstract depictions of works of nature using rock-shaped disks.  As noted above, abstract depictions of natural features such as wheat or waves or feathers must necessarily express the general form of wheat or waves or feathers or, as Gangbar puts it, "intricate, cyclical patterns of nature."  (Dkt 18, Answer and Counterclaims, 10:9-11). Thus, KGSI's Works are entitled to only thin protection such that the Accused Works would need to be virtually identical to the KGSI Works to be infringing.

As the pictures above amply demonstrate, the Accused Works are nothing of the kind and could not support a finding of substantial similarity whether a broad or narrow standard is applied.  On the contrary, any similarities at all are dictated by the idea of a three-dimensional abstract depiction of nature and/or by unoriginal aspects such as the use of standard art supplies. Indeed, even under the "substantial similarity" test, the Accused Works bear no similarities to the KGSI Works in protectable features.

By way of example, with respect to "*Star*" while the Accused Work and the KGSI Work both appear to depict the same idea—patterns of nature — their expressions of that idea are different in critical ways.  (Dkt. 18, Exhibits E-F, reproduced above on p. 2). Notably, the Accused Work makes creative use of space; indeed, space appears just as central to the art as the rock-shaped discs themselves.  It weaves in and out of the physical objects, allowing the art to seamlessly blend into the wall.  The KGSI Work, on the other hand, hardly uses space at all; its expression of nature rests in an overwhelming number of objects placed on a wall in heavy concentration.  Moreover, while the Accused Work includes physical objects of a cream color, the KGSI Work includes various shades, which variety of colors represents yet another key difference in the expression of nature between the two works.

As for *Swish*, again, both the Accused Work and the KGSI Work depict nature in critically different ways. (Dkt. 1, Exhibit F; Dkt. 18, Exhbit G, reproduced above on p. 3). The Accused Work is a blue, rectangular shape with sharp corners and sharp edges.  Meanwhile, the KGSI Work is neither blue nor a rectangular shape, and it does not feature sharp corners or

9

edges at all; instead, its edges are jagged with dispersed objects, seemingly so as to blend the artwork into the wall. The KGSI Work also appears to include two formations of physical objects divided by an hourglass shaped space. It is that very space that quite literally runs through the center of the KGSI Work. There is no such space in the Accused Work—instead, only one rectangular shape of art.

Moreover, to the extent any similarities could be found between the KGSI Works and the Accused Works, they would be discreet and *de minimus*, and as such cannot support a finding of infringement. *See Newton v. Diamond*, 388 F.3d 1189 (9th Cir. 2004) (affirming grant of summary judgment to defendants who used a de minimis portion of the plaintiff's musical composition*); see also Litchfield v. Spielberg*, 736 F.2d 1352 (9th Cir. 1984) (a compilation of "random similarities scattered throughout the works" is "inherently subjective and unreliable" and incapable of supporting an infringement claim); *see e.g., Cavalier*, 297 F.3d at 825 (affirming summary judgment of noninfringement as to overall work despite several similarities). Accordingly, KGSI's copyright infringement claims fail and must be dismissed.

   2.   <u>Dismissal of KGSI's Copyright Infringement Claims is Supported by the Policies Underlying Copyright Law</u>

KGSI's assertion of broad exclusive rights in three-dimensional wall sculptures abstractly depicting nature is entirely unsupported by the Copyright Act and would pervert its purposes by discouraging creativity. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 429 (1984) ("The purpose of copyright law is to ensure a robust public domain of creative works by motivat[ing] authors' creative activity and thereby allow[ing] the public access to the products of their genius." [citation and punctuation omitted]); *see also Feist*, 499 U.S. at 349–50 (1991) (Copyright "encourages others to build freely upon the ideas and information conveyed by a work."); *see also Sony Corp. of Am. v. Universal City Studios*, Inc., 464 U.S. 417, 451 (1984) (discussing the balance of interests reflected in the grant of copyright and the fact that copyright owners' monopoly is not absolute).

The purpose of copyright protection is "to promote the creation and publication of free

10

expression." *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003); *see Feist*, 499 U.S. at 344-45. "The most fundamental axiom of copyright law is that '[n]o author may copyright his ideas.'" *Id.* at 34; *see also* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work.")  Rather, copyright law distinguishes "between ideas and expression and makes only the latter eligible for copyright protection." *Eldred*, 537 U.S. at 219; *see also Harper & Row Publishers, Inc. v. Nation Enter.*, 471 U.S. 539, 547 (1985) ("The copyright is limited to those aspects of the work termed 'expression' -- that display the stamp of the author's originality."). Moreover, copyright protection is available only where the expression in two works is "substantially similar." *Dr. Seuss Enter., L.P. v. Penguin Books USA*, 109 F.3d 1394, 1398 (9th Cir. 1997) ("substantial similarity' refers to similarity of expression, not merely similarity of ideas or concepts").

KGSI's Works are three-dimensional wall sculptures that abstractly depict particular works of nature.  KGSI's Works themselves as well as KGSI's own pleadings make this abundantly clear. KGSI states that KGSI's Works are "sculptural and installation artwork … inspired by the intricate, cyclical patterns of nature." (Dkt. 18, Answer and Counterclaim at10:9-11). The *idea* of depicting nature abstractly in three-dimensional wall art—using disks or tiles or rocks or any number of other objects—is far from new or unique or proprietary to Mr. Gangbar.  On the contrary, it is an *idea* that goes back centuries, if not millennia.

Plainly, the Accused Works are expressive works of their own that share some unprotectable features with the KGSI Works, but contain unique creative aspects as well.  As shown in the images above, there are significant differences including, but not limited to, color, shape, and the stylistic use of blank space in the works.  Barring the KBFAA Parties from making such works would amount to granting KGSI a monopoly over a wide range of expression, giving KGSI far more bargaining power than appropriate and removing from the creative pallet of sculptors an entire area of potential creation—the very opposite of the purposes of the Copyright Act.  Such a result is anathema not only to the Copyright Act, but to

11

the First Amendment as well, and should not be allowed.  *See Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) ("*Apple*") ("Similarities derived from the use of common ideas cannot be protected; otherwise, the first to come up with an idea will corner the market." [citation and punctuation omitted]).  "Every book in literature, science and art, borrows, and must necessarily borrow, and use much which was well known and used before."  *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 575 (1994) ("*Campbell*"), *citing Emerson v. Davies*, 8 F.Cas. 615, 619 (No. 4,436) (CCD Mass.1845 ) (Story, J.).

### C.   KGSI FAILS TO STATE A CLAIM FOR A VIOLATION OF THE RACKETEER INFLUENCED CORRUPT ORGANIZATION ACT

#### 1.   Copyright Infringement does Not Support a RICO Claim in the Absence of Counterfeiting or Piracy

In order to survive a motion to dismiss a RICO claim, a plaintiff must allege facts showing "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  Under the civil RICO statute, 18 U.S.C. § 1961(1)(B), "racketeering activity" includes acts which are indictable under 18 U.S.C. § 2319 (relating to criminal infringement of a copyright).  In determining whether conduct amounts to criminal copyright infringement under 18 U.S.C. § 2319 for purposes of the RICO Act, courts look to the legislative history of the Anticounterfeiting Consumer Protection Act of 1996, by which criminal copyright infringement was added as a potential predicate act under RICO, and have found that there is no "legislative history consistent with a Congressional intent to expand RICO liability to all knowing copyright infringement, including acts that cannot be characterized as counterfeiting or piracy." *See Stewart v. Wachowski*, 2005 WL 6184235, at *4-7 (C.D. Cal. June 14, 2005).

In *Stewart,* the Court dismissed the plaintiff's RICO claim which was premised on allegations that the defendants infringed her copyright in literary works by making motion pictures. *Id.*  In finding that this type of copyright claim could not serve as a predicate act to establish a RICO violation, the Court analyzed the applicable legislative history:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> Further evidence that the Anticounterfeiting Act was directed at counterfeiting and piracy (rather than other types of copyright infringement) is found in the legislative history of §2319, the criminal copyright statute referenced in §1961. Despite the apparent broad reach of §2319, to include all acts of willful copyright infringement for commercial advantage or private financial gain, the Supreme Court has recognized that §2319 was enacted by Congress because it "belie[ved] that the existing misdemeanor penalties for copyright infringement were simply inadequate to deter the enormously lucrative activities of large-scale bootleggers and pirates." *Dowling v. U.S.*, 473 U.S. 207, 224, 105 S.Ct. 3127 (1985). Congress enacted §2319 "to 'strengthen the laws against record, tape, and film piracy' by '[increasing] the penalties ... for copyright infringements involving such products,' thereby '[bringing] the penalties for record and film piracy... into line with the enormous profits which are being reaped from such activities.' "

*Id.* at *5.

> The court can find no legislative history consistent with a Congressional intent to expand RICO liability to all knowing copyright infringement, including acts that cannot be characterized as counterfeiting or piracy . . . . Additionally, the court can find no published case in which §2319 has been used to prosecute infringing activity other than piracy or counterfeiting. The legislative history of the Anticounterfeiting Act and of §2319 reveals that these provisions were aimed at curtailing piracy and counterfeiting. Accordingly, the court finds that the acts of copyright infringement alleged in this action cannot serve as predicate acts to establish a RICO violation.

*Id.* at *6 (citations omitted; emphasis added); *see also Costar Realty Info., Inc. v. Field*, 612 F.Supp.2d 660 (D.Md 2009) (following *Stewart*).

In *Stewart*, the plaintiff screenwriter had submitted a screen treatment and manuscript to movie studios for their consideration for production. *Id.* at *1. Plaintiff brought a civil RICO action predicated in part on acts of copyright infringement of her manuscript in the production of the file "The Matrix." *Id.* at *2. The Court examined the legislative history and language of section 2319 and the RICO statute and concluded that section 2319 was "aimed at curtailing piracy and counterfeiting." *Id.* at *6. Thus, the court found that where an alleged copyright infringement does not involve piracy or counterfeiting, the alleged act of supposed "criminal" copyright infringement does not suffice as a predicate act under RICO. *Id.* (observing "the court can find no published case in which § 2319 has been used to prosecute infringing activity other than piracy or counterfeiting").

Although KGSI repeatedly labels the KBFAA Parties' conduct "counterfeiting," the facts alleged—and a comparison of the KGSI Works and the Accused Works—demonstrate clearly that the KBFAA Parties' conduct does not even approach this level.  To begin with, the Accused Works plainly are not copies of the Accused Works—or anything close to it.  The conduct alleged against the KBFAA Parties certainly does not amount to "large-scale" bootlegging and piracy, the target of the Antipiracy Act.  *See Dowling v. U.S.*, *supra*, 473 U.S. at 224; *see also Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000) (Civil RICO liability is "reserved . . . for 'ongoing unlawful activities whose scope and persistence pose a special threat to social well-being.'").

Further, KGSI's own factual allegations (as opposed to conclusory labels) show that the KBFAA Parties did not seek to duplicate any KGSI Works, but instead, at most, sought something "similar."  Specifically, KGSI alleges that a KBFAA representative sent an email to Mr. Gangbar with an image of *Star* and said he had a customer who "is looking to **commission** something **similar** to the attached piece,' and asked Mr. Gangbar to quote a price to **create** such a work."  Dkt. 18 at ¶ 18 (emphasis added).  Seeking to "commission" (meaning pay for something new) something "similar" (meaning not the same) to be "created" (meaning not currently existing) is definitively not "counterfeiting" or "piracy."  As a result, as a matter of law, KGSI does not state a claim for a RICO violation based on criminal copyright infringement.

**2.    Even Under the Willfulness Standard, the Differences Between the Accused Works and the KGSI Works Establish that there is no Criminal Copyright Infringement to Support a RICO Claim**

Even without the bright line *Stewart* rule whereby any conduct short of counterfeiting or piracy is insufficient to support a RICO claim, KGSI's claim fails as a matter of law because KGSI's factual allegations and the differences between the Accused Works and the KGSI Works establish that the KBFAA Parties did not have the required *mens rea* to support a finding of "willful" infringement for a criminal copyright claim.

1    It is a fundamental legal principle that there can be no criminal liability without the

2    requisite *mens rea* for the offense. Accordingly, criminal liability for copyright infringement

3    under the statute can only be imposed on a defendant who infringes a copyright "willfully" and

4    for financial gain. 17 U.S.C. § 506 (a)(1)(A); *see Cheek v. United States,* 498 U.S. 192, 200

5    (1991). Through the 1997 No Electronic Theft ("NET") Act amendment, Congress clarified this

6    heightened standard for willfulness in criminal copyright cases by adding language that states

7    explicitly that mere "evidence of reproduction or distribution of a copyrighted work, by itself,

8    shall not be sufficient to establish willful infringement." 17 U.S.C. § 506 (a)(2).

9    Following this amendment, the Ninth Circuit and numerous other circuits required

10   "proof of the defendant's ***specific intent*** to violate someone's copyright" in order to prove

11   criminal copyright infringement.  *See United States v. Liu,* 731 F.3d 982, 989-90 (9th Cir. 2013)

12   (emphasis added) (requiring that the "defendant knew he was committing copyright

13   infringement"); *see also United States v. Beltran,* 503 F.3d 1, 2 (1st Cir. 2007); *United States v.*

14   *Manzer,* 69 F.3d 222, 227 (8th Cir. 1995); *United States v. Gottesman* 724 F.2d 1517, 1522

15   (11th Cir. 1984); *United States. v. Whetzel,* 589 F.2d 707, 712 (D.C. Cir 1978); *United States v.*

16   *Rose,*  149 U.S.P.Q. 820, 824 (S.D.N.Y. 1966) (instructing that the government must prove the

17   defendant acted "voluntarily and purposely and with specific intent to do that which the law

18

19    forbids – that is to say, with bad purpose either to disobey or disregard the law").

20   In *United States v. Liu,* the Ninth Circuit emphatically stated, "[w]e now explicitly hold

21   that 'willfully' as used in 17 U.S.C. § 506(a) connotes a '***voluntary intentional violation of a***

22   ***known legal duty***.'" *Liu,* 731 F.3d at 990 (quoting *Cheek v. U.S.*, 498 U.S. 192, 201 (1991)

23   (emphasis added))[1]. The *Liu* Court stressed the absurd result that would arise if the court "were

24   to read 17 U.S.C. § 506 (a)'s willfulness requirement to mean only an intent to copy [because]

25

26

27   _____

     [1] The *Liu* Court noted that "[t]he Copyright Act's legislative history supports our
28   interpretation." *Liu, supra,* 731 F.3d at 990.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF     Case No.  3:18-cv-03358-HSG**
**COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS**
**COUNTERCLAIMS UNDER FRCP 12(b)(6)**

1   there would be no meaningful distinction between civil and criminal liability in the vast

2   majority of cases." *Id.* at 991.

3       In criminal copyright cases where willful infringement was found, the infringers

4   duplicated or reproduced copyrighted works without the copyright owner's authorization—

5   violating the copyright intentionally. *See e.g., United States v. Anderson,* 741 F.3d 938 (9th Cir.

6   2013) (defendant sold pirated CDs of Adobe software with inauthentic product keys with

7   knowledge of illegality); *United States v. Beltran,* 503 F.3d 1, 2 (1st Cir. 2007) (mass

8   production of pirated, unreleased, motion pictures where FBI copyright warnings were both on

9   the cases and in the film, and defendant already had a permanent injunction against him barring

10  him from reproducing copyrighted movies); *United States v. Manzer,* 69 F.3d 222, 227 (8th Cir.

11  1995) (pirated software where copyrighted software bore a legible copyright notice); *United*

12  *States v. Minor*, 756 F.2d 731, 734 (9th Cir.) (manufacture and distribution of bootleg records);

13  *United States v. Gottesman* 724 F.2d 1517, 1522 (11th Cir. 1984) (evidence defendant had

14  knowledge movies were pirated copies); *United States. v. Whetzel*, 589 F.2d 707, 712 (D.C. Cir

15  1978) (duplicated tapes of sound recordings with labels listing a manufacturer with a non-

16  existent address).

17      Again, KGSI's own factual allegations and the undeniable differences between the

18  KGSI Works and the Accused works establish that the KBFAA Parties lacked the requisite

19  *mens rea* to support criminal copyright infringement to support a RICO claim.  The KBFAA

20  Parties sought at most to create works that were similar to one of the KGSI Works, and plainly

21  did not intend to copy any KGSI Works since they did not even approach doing so.  As KGSI

22  alleges, KBFAA is "an art dealership that sources or sells art for display, including on

23  information and belief, in buildings, hotels, and residences."  KGSI Answer, ¶ 7.  (Dkt. 18).

24  Again, this allegation contradicts any assertion that the KBFAA Parties intended to violate the

25  Copyright Act as would be required to establish criminal copyright infringement.

26  / / /

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF     Case No.  3:18-cv-03358-HSG**
**COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS**
**COUNTERCLAIMS UNDER FRCP 12(b)(6)**

1

## IV.    CONCLUSION

For the foregoing reasons, the KBFAA Parties respectfully request that the Court

dismiss KGSI's counterclaims with prejudice because they are deficient as a matter of law and

cannot be cured by amendment.

DATED:  October 1, 2018          **ENENSTEIN PHAM & GLASS**

By:    /s/ Ned M. Gelhaar                      .
                                    Ned M. Gelhaar
                                    *Attorneys for Plaintiff and Counter-Defendant*
                                    *Kevin Barry Fine Art Associates and*
                                    *Counterclaim- Defendants Kevin A. Barry and*
                                    *John Johnson*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF     Case No.  3:18-cv-03358-HSG**
**COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS**
**COUNTERCLAIMS UNDER FRCP 12(b)(6)**