NED M. GELHAAR (SBN 163185)
Email: ngelhaar@enensteinlaw.com
JOY D. LLAGUNO (SBN 311867)
Email: jllaguno@enensteinlaw.com
**ENENSTEIN PHAM & GLASS**
12121 Wilshire Boulevard, Suite 600
Los Angeles, California 90025
(310) 899-2070 Phone
(310) 496-1930 Fax

*Attorney for Plaintiff and Counterclaim-Defendant*
*Kevin Barry Fine Art Associates and Counterclaim-Defendants*
*Kevin A. Barry and John Johnson*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN BARRY FINE ART ASSOCIATES, a California corporation, | Case No. 3:18-cv-03358-HSG |
| Plaintiff, | **REPLY BRIEF IN SUPPORT OF KEVIN BARRY FINE ART ASSOCIATES, KEVIN A. BARRY, AND JOHN JOHNSON'S MOTION TO DISMISS COUNTERCLAIMS** |
| vs. | |
| KEN GANGBAR STUDIO INC., a Canadian Corporation, | |
| Defendant. | Date: January 17, 2019 |
| | Time: 2:00 p.m. |
| | Crtm: 2 |
| KEN GANGBAR STUDIO INC., a Canadian Corporation, | Judge: Hon. Haywood S. Gilliam Jr. |
| Counterclaimant, | |
| vs. | |
| KEVIN BARRY FINE ART ASSOCIATES, KEVIN A. BARRY, RICHARD MCCORMACK DESIGN d/b/a STUDIO MCCORMACK, RICHARD MCCORMACK, JOHN JOHNSON, DOES 1-20, and ABC Corporations 1-20, | |
| Counterclaim Defendants. | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................1

II.   ARGUMENT ......................................................................................................3

   A.     LEGAL CONCLUSIONS AND ALLEGATIONS THAT ARE CONTRADICTED BY JUDICIALLY NOTICEABLE EVIDENCE ARE NOT ENTITLED TO THE ASSUMPTION OF TRUTH...............................................................................3

   B.    KGSI FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT .............3

   C.    KGSI FAILS TO STATE A CLAIM FOR A VIOLATION OF THE RICO ACT........7

      1.    KGSI did not Plausibly Plead that the KBFAA Parties Committed Acts that Could Constitute Counterfeiting or Piracy ..........................................................................7

         a)  Congressional Intent Dictates that there can be no Finding of Criminal Copyright Infringement under §2319 without Counterfeiting or Piracy .............................................7

         b)  Interpreting §2319 to Require Evidence of Direct Copying is Necessary to Avoid Conflict with the First Amendment ................................................................................11

         c)  Interpreting §2319 to Require Evidence of Direct Copying is Necessary to Avoid Absurdity....................................................................................................................12

         d)  KGSI has not Plead Facts that Could Plausibly Support a Finding of Counterfeiting or Piracy .................................................................................................................13

      2.    KGSI Does Not Plead Facts that Would Allow a Plausible Inference that the KBFAA Parties had a Specific Intent to Violate a Copyright ...........................................14

III.   CONCLUSION................................................................................................15

**Cases**

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ...................................................................... 3

*Bill Graham Archives LLC v. Zeidan*, 2012 WL 13041536 (N.D. Cal., May 18, 2012) ............. 13

*California Department of Social Services v. Thompson*, 321 F.3d 835 (9th Cir.2003) ................. 9

*Carson Harbor Village Ltd. v. Unocal Corp.*, 270 F.3d 863 (9th Cir.2001) ............................... 9

*Cavalier v. Random House, Inc.*, 297 F.3d 815 (9th Cir. 2002) ....................................... 5

*Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904 (2010) ........................................... 7

*Cheek v. U.S.*, 498 U.S. 192 (1991) ........................................................................ 14

*Coach, Inc. v. Bags & Accessories*, No. CIV.A. 10-2555 JBS-J, 2011 WL 1882403 1 (D.N.J.,
    May 17, 2011) ................................................................................... 13

*Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600 (1st Cir. 1988) ... 5

*CoStar Realty Information, Inc. v. Field*, 612 F.Supp.2d 660 (D. Md. 2009) ............................. 8

*Crooks v. Harrelson*, 282 U.S. 55 (1930) ................................................................. 12

*Dowling v. United States*, 473 U.S. 207 (1985) .......................................................... 9

*Folsom v. Marsh*, 9 F.Cas. 342, 344–45 (No. 4901) (CC Mass. 1841) ............................... 13

*Franklin Mint Corp. v. National Wildlife Art Exchange, Inc.*, 575 F.2d 62 (3d Cir. 1978) ......... 5

*Gordon v. Drape Creative*, 2018 WL 6055652 (9th Cir. 2018) ...................................... 2, 11

*Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 550 (1985) ................... 13

*Helios Intern. S.A.R.L. v. Cantamessa USA, Inc.*, No. 12 CIV 8205, 2013 WL 3943267 (S.D.
    N.Y., July 31, 2013) ............................................................................. 8

*Hunter v. Tarantino*, 2010 WL 11579019 (C.D. Cal., July 15, 2010) ............................... 8

*ICONICS, Inc. v. Massaro*, 192 F.Supp.3d 254 (D. Mass. 2016) .................................... 7

*In re Gilead Sciences Securities Litigation*, 536 F.3d 1049 (9th Cir. 2008) ........................ 3

*L.A. Printex Industries, Inc. v. Aeropostale, Inc.*, 676 F.3d 841 (9th Cir. 2012) .................. 4

*Microsoft Corp. v. Big Boy Distribution LLC*, 589 F.Supp.2d 1308 (S.D. Fla. 2008) ............... 13

*Perlman v. Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir.1999) ............................... 9

*Peter Rosenbaum Photography Corp. v. Otto Doosan Mail Order Ltd.*, 2005 WL 2387687 (N.D. Ill. 2005)..................................................................................................... 14

*Rentmeester v. Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018) ...........................................7

*Robert Kubicek Architects & Associates Inc. v. Bosley*, No. CV 11-2112 PHX DGC, 2012 WL 3149348 (D. Ariz., Aug. 1, 2012) .................................................................. 8

*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989)......................................................12

*Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003)...........................................................4

*Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977) ........................................................................................................5

*Star Fabrics, Inc. v. DKJY, Inc.*, 2014 WL 102809 (C.D. Cal., Jan. 9, 2014)..............................4

*Stewart v. Wachowski*, 2005 WL 6184235 (C.D. Cal. 2005) ........................................1

*Stewart*: *Steward v. West*, No. CV1302449BROJCX, 2013 WL 12120232 (C.D. Cal., Sept. 6, 2013) .............................................................................................................8

*Ty, Inc. v. GMA Accessories, Inc.*, 959 F.Supp. 936 (N.D. Ill. 1997).........................5

*U.S. v. Shi Chang Huang*, 491 Fed.Appx. 382 (4th Cir. 2012) ..................................13

*United States v. Liu*, 731 F.3d 982 (9th Cir. 2013).....................................................2

*Watt v. Alaska*, 451 U.S. 259 (1981).........................................................................9

*Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502 (7th Cir. 1994)...............................4

*Zella v. E.W. Scripps, Co.*, 529 F.Supp.2d 1124 (C.D. Cal. 2007)...............................7

**Other Authorities**

U.S.C. § 15.01 .........................................................................................................12

U.S.C. §2019 ..............................................................................................................2

17 U.S.C. § 506(a) ...................................................................................................14

18 U.S.C. §2319 ............................................................................................1, 2, 11, 12

U.S.C. § 506(c) .........................................................................................................10

1

## I.        INTRODUCTION

2          The KBFAA Parties' motion to dismiss does not, as KGSI contends in its Opposition

3   Brief, "rise[] or fall[] on the premise that there is just one way to fashion 'abstract depictions of

4   nature' in wall art."  *See* Opposition Brief ("Opp'n") at 1:5-6 (Dkt. 67).  The KBFAA Parties

5   don't even say that.  The KBFAA Parties' motion should rise or fall on the manifest

6   dissimilarity of the KGSI Works and the Accused Works, and in particular on the original

7   expressive elements of the Accused Works that distinguish them from the KGSI Works.

8          Because of those differences, KGSI has failed to state a copyright infringement claim

9   because no reasonable jury could find that there is substantial similarity in the protectable

10  aspects of the works.  Whether the KGSI Works are characterized as "abstract" or otherwise,

11  their protection is limited by Section 102 of the Copyright Act which states in pertinent part that

12  "[i]n no case does copyright protection for an original work of authorship extend to any idea, . .

13  . concept, principle, or discovery, regardless of the form in which it is described, explained,

14  illustrated, or embodied in such work."  There is therefore no protection under the Copyright

15  Act for the idea and concept of depicting "intricate, cyclical patterns of nature" using stone-

16  shaped discs. *Cf.* KGSI Answer and Counterclaims ("Counterclaims") at 10:9-11 (Dkt. 18).

17  Simply put, the similarities between the KGSI Works and the Accused Works start and end with

18  these unprotectable ideas and concepts.

19         The differences between the KGSI Works and the Accused Works also establish that

20  KGSI has failed to state a RICO claim for two reasons.  First, under *Stewart v. Wachowski*,

21  2005 WL 6184235 (C.D. Cal. 2005) ("*Stewart*") and the many decisions following it, criminal

22  copyright infringement only qualifies as a predicate act under RICO if it can be characterized as

23  counterfeiting or piracy.  As explained in Judge Morrow's Opinion in *Stewart*, this

24  interpretation of 18 U.S.C. §2319 is dictated by the "legislative history of the enactment [which]

25  reveals that it was intended merely to expand the types of counterfeiting activities punishable as

26  felonies and not to work any other substantive change to the section." *Stewart* at *6.  Under the

27  Ninth Circuit's standards for statutory interpretation, this clear legislative history controls

28  construction of §2319. *Id.*

This interpretation of §2319 is further compelled where, as here, the allegedly infringing works contain original expressive elements.  As the Ninth Circuit recently confirmed in the Lanham Act context in *Gordon v. Drape Creative*, 2018 WL 6055652 (9th Cir. 2018) ("*Gordon*"), where expressive conduct is at issue courts must "employ[] the First Amendment as a rule of construction" to avoid conflict between the Constitution and a statute.  Interpreting 18 U.S.C. § 2319 to criminalize expressive conduct would render the statue violative of the First Amendment and lead to the absurd result that artists and art dealers could face years of incarceration in federal prison for creating art that was deemed insufficiently dissimilar to other works.  By interpreting §2019 as only applying to conduct that can be characterized as counterfeiting or piracy, the Court would avoid this unacceptable result as well as potential conflict with the Constitution because counterfeiting and piracy involve *duplication* of copyrighted works, and therefore do not involve expressive conduct.

Properly construing §2019, KGSI does not plausibly state a RICO violation because it does not allege conduct by the KBFAA Parties that can be characterized as counterfeiting or piracy. KGSI does not, and cannot, allege that the KBFAA Parties duplicated any KGSI Works. On the contrary, in every instance, KGSI's judicially-noticeable exhibits and its allegations establish that the Accused Works contain expressive aspects that are not present in the KGSI Works.  These differences in the works preclude a finding of criminal copyright infringement as a predicate act under RICO.

The differences between the KGSI Works and the Accused Works establish that KGSI has failed to state a RICO claim for a second reason.  Under *United States v. Liu*, 731 F.3d 982, 989-90 (9th Cir. 2013) ("*Liu*"), criminal copyright infringement requires proof of a specific intent to violate a copyright.  Again, unlike cases where criminal copyright infringement has been found and affirmed, the Accused Works are not duplicates of the KGSI Works.  On the contrary, they are similar renderings of the same concept—consistent with the request of at least one KBFAA customer who, according to KGSI's allegations, was "looking to commission something similar" to a KGSI Work and KBFA sought a quote to "create such a work."  *See* Counterclaim at 18:1-3 (Dkt. 18).  Had the KBFAA Parties *intended* to violate KGSI's (then

unregistered) copyrights, they would have simply duplicated the KGSI Works.  They did not.
They created new and different—albeit conceptually similar—works that contain significant
expressive aspects, thereby showing an intent ***not*** to violate any copyrights.   The many
differences in the works therefore preclude a finding that the KBFAA Parties had the specific
intent to commit criminal copyright infringement, defeating a claim under RICO.

## II.    ARGUMENT

### A.    LEGAL CONCLUSIONS AND ALLEGATIONS THAT ARE CONTRADICTED BY JUDICIALLY NOTICEABLE EVIDENCE ARE NOT ENTITLED TO THE ASSUMPTION OF TRUTH

Although courts must credit proper factual allegations as true in ruling on a motion to
dismiss, legal conclusions expressed as factual allegations "are not entitled to the assumption of
truth." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).  Further, where an exhibit incorporated into
the pleadings establishes that factual allegations are false, such allegations are also not accepted
as true.  *In re Gilead Sciences Securities Litigation*, 536 F.3d 1049, 1055 (9th Cir. 2008) ("The
court need not . . . accept as true allegations that contradict matters properly subject to judicial
notice or by exhibit.").

KGSI's Counterclaims are replete with allegations that the KBFAA Works are
duplicates or copies of the KGSI Works.  *See, e.g.*, Counterclaims at 11:17 (alleging that the
KBFAA Parties made "unauthorized copies"), 11:18 ("counterfeit copies"), 11:24 ("infringing
copies").  But the images themselves incorporated into the pleadings undeniably show that they
are not.  Thus, KGSI's allegations of duplication or copying should be disregarded, and no
inferences as to the KBFAA Parties' intent should arise from such allegations.

### B.    KGSI FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT

KGSI contends that its works are "abstract" and that, as such, the ordinary analysis
whereby courts filter out ideas and other unprotectable matter is inapplicable.  As noted above,
however, Section 102 of the Copyright Act provides that "[i]n ***no case*** does copyright
protection for an original work of authorship extend to any idea, . . . concept, principle, or
discovery, regardless of the form in which it is described, explained, illustrated, or embodied in

such work." (Emphasis added.) The "filtering" test employed by the Ninth Circuit is simply an expression of this principle. Labeling the KGSI Works "abstract" does not immunize them from Section 102 or Ninth Circuit precedent applying that section.

The case law KGSI cites says nothing to the contrary. Rather, it merely reasserts the general principle—which KBFAA acknowledged in its Motion—that some works are entitled to broad protection while works that are representational are only entitled to "thin" protection. For example, *L.A. Printex Industries, Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 850-51 (9th Cir. 2012) ("*L.A. Printex*"), cited extensively throughout KGSI's Opposition, addressed the question of whether a fabric print with bouquets and branches was protectable. In doing so, the court confirmed the principle that "[t]he idea of a floral pattern depicting bouquets and branches is not protectible." *Id.* The court went on to find that the plaintiff's particular "original composition and arrangement" of these elements was protectable and that the accused fabric pattern infringed. *Id.* at 851.

But what the Ninth Circuit in *L.A. Printex* **did not** hold was that the more abstract or stylized a work, the more protection it receives. Indeed, such a result is absurd on its face—the most abstract way to depict a wave is a simple sine wave, and a sine wave is obviously not eligible for copyright protection. Further, *L.A. Printex* confirms the basic principle of the KBFAA Parties' motion: ideas and patterns found in nature, such as "the combination of open flowers and closed buds in a single bouquet or the green color of stems and leaves," are not protectible. *L.A. Printex* at 850; *see also Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) (Copyright holders "may not prevent others from copying elements of expression that nature displays for all observers, or that the glass-in-glass medium suggests to all sculptors."); *Star Fabrics, Inc. v. DKJY, Inc.*, 2014 WL 102809 at *4 (C.D. Cal., Jan. 9, 2014) ("Star Fabrics does not own a copyright in all peacock-eye patterns, as a peacock pattern is a naturally occurring element that is unprotectable under copyright law.").

The other cases cited by KGSI have similar holdings. *Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 507 (7th Cir. 1994), holds that "protection is claimed for the animal heads and tails themselves, and for the way they are placed on the duffle bags, but not

4

for the general idea of animal heads on duffle bags." The "art" in question was not abstract – it was stuffed animal heads on duffle bags. The *Wildlife Exp. Corp.* court looked at whether "'those few aspects of the work that are expression not *required* by the idea" of the reproduction of a lifelike object were substantially similar to the claimed infringement. *Id.* at 508 (emphasis in original). In other words, only the elements of the bags beyond the idea – the artist's representations in soft heads and tails – were entitled to broad protection. *Id.* at 510-11. However, *Wildlife Exp. Corp.* does not stand for the principle that abstract art is entitled to greater protection under the law.

The remainder of the cases cited by KGSI make a similar distinction between the thematic concept, or idea, which is not protected, and the execution, which is protected. *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1168 (9th Cir. 1977) ("The idea and the expression will coincide when the expression provides nothing new or additional over the idea."); *Cavalier v. Random House, Inc.*, 297 F.3d 815, 825–26 (9th Cir. 2002) (unprotectable elements in artwork must be filtered out before applying an extrinsic text to works); *Franklin Mint Corp. v. National Wildlife Art Exchange, Inc.*, 575 F.2d 62, 65 (3d Cir. 1978) ("Since copyrights do not protect thematic concepts, the fact that the same subject matter may be present in two paintings does not prove copying or infringement. Indeed, an artist is free to consult the same source for another original painting."); *Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 606 (1st Cir. 1988) ("Some ideas admit of only a limited number of expressions. When there is essentially only one way to express an idea, the idea and its expression are inseparable and copyright is no bar to copying that expression."); *Ty, Inc. v. GMA Accessories, Inc.*, 959 F.Supp. 936, 941 (N.D. Ill. 1997), aff'd (7th Cir. 1997) 132 F.3d 1167 (where there is reproduction of a live creature the court must look only to those aspects of the work not required by the idea).

These cases do not hold that abstract art is entitled to a higher level of protection as it is a higher level of expression, but rather draw the line between expression and the idea itself. *See, e.g., Sid & Marty Krofft Television*, 562 F.2d at 1168 (distinguishing between an inexpensive plaster statue of a nude, which will likely have no separately distinguishable features, and

Michelangelo's David); *Cavalier*, 297 F.3d at 826 (adding night light to a book is not protected, but the depiction of a smiling moon or star with pinkish cheeks surrounded by stars in a specific configuration and situated above an encircled star "on" button was protected); *Concrete Machinery*, 843 F.2d at 607 (to prove copying of a life size concrete deer, plaintiff must show substantial similarity in the aspects it added, including "pose, posture, and facial expression"); *Ty, Inc.*, 959 F.Supp. at 943 (bean bag pigs did not look "real" and those aspects not required in the depiction of a live pig were protected, including "unique overall size and shape, knotted tail, feature placement, feature size, feature shape, stitched nostrils, seaming and pattern pieces"); *Cf. Franklin Mint Corp.*, 575 F.2d at 65 (an artist's style which renders an object in photographic clarity will have a more difficult time proving infringement than a painter like Monet who utilizes impressions of light on its subjects). Thus, it is not the style of artwork that controls, but rather what the artist added to the idea. There are many abstract ideas which can be expressed in only limited ways and would not be protected. In this case, the idea of a cycle represented by a sinusoidal arrangement of rocks is abstract, but it is not protected – the depiction of a cycle as a sine pattern is not unique.

Further, by KGSI's own definition, an "abstract" work is one that "does not attempt to represent an accurate depiction of a visual reality but instead uses shapes, colours, forms and gestural marks to achieve its effect. . . .," and "strays far from the notion of representing real-world objects in art form [using] colors, shapes, gestural marks and forms in a bizarre and quirky way to achieve its effects." *See* Opp'n at p. 1. The KGSI Works demonstrably, and admittedly, depict the patterns of nature. However defined, KGSI does not have a monopoly over depictions of the patterns of nature. These are and have always been available to all. [1]

_____

[1] KGSI contends that the KBFAA Parties rely on extrinsic evidence by arguing that "[t]here is only a narrow range of expression of the idea of three-dimensional abstract depictions of works of nature using rock-shaped disks." Opp'n at 13. The KBFAA Parties contend that this is a fact that is generally known and/or can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" and is therefore judicially noticeable. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)(1)-(2)). Further, although the KBFAA Parties referred to the rock-shaped disks used in the works as standard art supplies, they did not intend to suggest that they are commercially-available (they are not), but rather simply that stones and stone-shaped objects are ubiquitous in art, architecture, landscaping, and nature itself.

Under circumstances such as these, where the substantial similarity issue may be resolved by a comparison of the works at issue and discovery would not elucidate the matters dictating that determination, courts in the Ninth Circuit and elsewhere regularly dismiss copyright infringement claims on 12(b)(6) motions. *See, e.g.*, *Zella v. E.W. Scripps, Co.*, 529 F.Supp.2d 1124, 1131 (C.D. Cal. 2007) (determination of substantial similarity at the pleadings stage appropriate where "the similarities between the two works pertain only to unprotected elements of the works"); *see also Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1123–24 (9th Cir. 2018).

Despite KGSI's argument to the contrary, allowing this case to go forward would pervert the purposes of the Copyright Act because it would deter creative conduct by granting KGSI a broad monopoly over art depicting natural features using rock-shaped disks. *Cf. Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 913 (2010) ("*Mattel*") (warning that affording copyright protection to works expressing broad ideas and concepts would allow "the first person to express any idea [to] have a monopoly over it"). The Accused Works are original expressive creations that include significant differences from the KGSI Works, such as in uses of color, shape, blank space, and overall mood. Barring the KBFAA Parties from making such works would amount to granting KGSI a monopoly over a wide range of expression. Such a result is anathema to the purposes of the Copyright Act of encouraging creation, as well as to the public's constitutionally protected interest in free expression. As argued below, the threat to free expression would be exponentially increased if KGSI were allowed to go forward with its RICO claim.

**C.      KGSI FAILS TO STATE A CLAIM FOR A VIOLATION OF THE RICO ACT**

**1.      KGSI did not Plausibly Plead that the KBFAA Parties Committed Acts that Could Constitute Counterfeiting or Piracy**

**a)      Congressional Intent Dictates that there can be no Finding of Criminal Copyright Infringement under §2319 without Counterfeiting or Piracy**

KGSI cites *ICONICS, Inc. v. Massaro*, 192 F.Supp.3d 254 (D. Mass. 2016), for the proposition that *Stewart* was wrongly decided and a RICO claim can be based upon conduct

that does not amount to counterfeiting or piracy.  *See* Opp'n at p. 17 *et seq.*  However, as

*ICONICS* itself acknowledges, many other district courts have followed *Stewart*.  *Id.* at 268; *see*

*Helios Intern. S.A.R.L. v. Cantamessa USA, Inc.*, No. 12 CIV. 8205, 2013 WL 3943267, at *8

(S.D. N.Y., July 31, 2013) (retail value of merely "$270,000" and "'run-of-the-mill commercial

dispute' tenor of the case" made it inappropriate for the infringement in the case to constitute a

predicate act for RICO purposes); *Robert Kubicek Architects & Associates Inc. v. Bosley*, No.

CV 11-2112 PHX DGC, 2012 WL 3149348, at *2 (D. Ariz., Aug. 1, 2012) (finding that as there

was no evidence of piracy or counterfeiting in defendant's use of plaintiff's architectural

drawings, there was no predicate act for a RICO claim).

   In addition, the following courts not noted in the *ICONICS* opinion also followed

*Stewart*: *Steward v. West*, No. CV1302449BROJCX, 2013 WL 12120232, at *6 (C.D. Cal.,

Sept. 6, 2013) (alleged acts of copyright infringement were neither counterfeiting nor piracy as

"[t]he FAC does not allege the wholesale reproduction and rerecording of Plaintiff's Song");

*CoStar Realty Information, Inc. v. Field*, 612 F.Supp.2d 660, 676–77 (D. Md. 2009) (citing

*Stewart* for the principle that Congress did not intend to subject all intentional copyright

infringement to RICO liability, but rather was intended to expand existing sanctions on piracy

and counterfeiting);  *Hunter v. Tarantino*, 2010 WL 11579019, at *10 (C.D. Cal., July 15, 2010)

(finding that the alleged copyright infringement of a screenplay does not relate to counterfeiting

or piracy, and thus cannot serve as the predicate offense for a RICO claim).

   The KBFA Parties have found no decisions adopting *ICONICS'* holding.[2]

   Further, the *ICONICS* court stated that its decision was based on a First Circuit principle

of statutory interpretation that is not the law in the Ninth Circuit.  *See ICONICS*, 192 F.Supp.3d

at 269 ("In the First Circuit, legislative history may only be used to interpret a statute where the

plain text is unclear.").  As explained in *Stewart*, the law is different in the Ninth Circuit.  *See*

*Stewart* at *4, *citing California Department of Social Services v. Thompson*, 321 F.3d 835, 853

---

[2] Judge Orrick's decision in *SYNOPSYS, Inc. v. Ubiquiti Networks, Inc.*, 2017 WL 3485881, *14 (N.D. Cal. 2017), notes the disagreement between *Stewart* and *ICONICS* but did not resolve it, apparently reasoning that the allegations of actual copying and use of code by a SYNOPSYS employee was potentially sufficient to plausibly allege a RICO claim.

1   (9th Cir.2003) (*quoting Perlman v. Catapult Entertainment, Inc.*, 165 F.3d 747, 753 (9th

2   Cir.1999) ("Courts look at legislative history where the plain language is unambiguous only if

3   'the legislative history clearly indicates that Congress meant something other than what it

4   said.'"); *Carson Harbor Village Ltd. v. Unocal Corp.*, 270 F.3d 863, 877 (9th Cir.2001) ("We

5   will resort to legislative history, even where the plain language is unambiguous, where the

6   legislative history clearly indicates that Congress meant something other than what it said"

7   [punctuation and citation omitted]); *see also Watt v. Alaska*, 451 U.S. 259, 266 (1981) ("The

8   circumstances of the enactment of particular legislation may persuade a court that Congress did

9   not intend words of common meaning to have their literal effect.").

10      Assessing and applying Congressional intent in interpreting Section 2319 is also

11   consistent with the teaching of the United States Supreme Court in *Dowling v. United States*,

12   473 U.S. 207, 213 ("*Dowling*") (1985) ("[W]hen assessing the reach of a federal criminal

13   statute, we must pay close heed to language, legislative history, and purpose in order strictly to

14   determine the scope of the conduct the enactment forbids.").

15      In its thorough discussion of Congressional intent underlying the criminal copyright

16   laws, the Court emphasized three points relevant to this motion.  First, the Court repeatedly

17   stressed Congress' cautious approach to the imposition of criminal liability for copyright

18   infringement.  *See Dowling* at 221 ("in exercising its power to render criminal certain forms of

19   copyright infringement, [Congress] has acted with exceeding caution"); *see also id.* at 223

20   (noting that Congress again acted "cautiously" in enacting the criminal provisions of the 1976

21   revisions of the Copyright Act).

22      Second, the Court repeatedly noted that Congress' concern in criminalizing copyright

23   infringement was the large-scale bootlegging of records, tapes and films.  There is no mention

24   in *Dowling* of any Congressional concern about artists and art dealers creating new works

25   similar to existing ones.  Indeed, there is no hint of any concern about art at all.  *See, e.g.,*

26   *Dowling* at 224 ("Finally, by the Piracy and Counterfeiting Amendments Act of 1982, . . .

27   Congress chose to address the problem of bootlegging and piracy of records, tapes, and films by

28   imposing felony penalties on such activities.").

Third, as discussed further below, the Court tied Congress' caution and narrow focus with respect to criminalizing copyright infringement to the "special concerns implicated by the copyright laws." *Dowling* at 225.  Indeed, in language cited above, the Court recognized that Congress' power to criminalize copyright infringement was limited.  *See id*. at 221 ("in exercising its power to render criminal **certain forms** of copyright infringement . . . . [emphasis added]).

The Court summarized the history of the criminal copyright infringement statutes up to 1985 as follows:

> Thus, the history of the criminal infringement provisions of the Copyright Act reveals a good deal of care on Congress' part before subjecting copyright infringement to serious criminal penalties. First, Congress hesitated long before imposing felony sanctions on copyright infringers. Second, when it did so, it carefully chose those areas of infringement that required severe response—specifically, sound recordings and motion pictures—and studiously graded penalties even in those areas of heightened concern. This step-by-step, carefully considered approach is consistent with Congress' traditional sensitivity to the special concerns implicated by the copyright laws.

*Dowling* at 225.

After the *Dowling* opinion, Congress continued to legislate with caution to narrowly define the circumstances in which criminal liability could be imposed under the Copyright Act. As explained by the Ninth Circuit in *Liu*, 731 F.3d at 990-9,

> In 1997, Congress updated the statutory provision governing criminal copyright infringement by inserting the language that Liu requested [in a jury instruction]: "evidence of reproduction or distribution of a copyrighted work, by itself, shall not be sufficient to establish willful infringement." No Electronic Theft (NET) Act, Pub.L. 105–147, § 2(b), 111 Stat 2678, 2678 (1997) (codified as amended at 17 U.S.C. § 506(c)). This language was in response to the "on-going debate about what precisely is the 'willfulness' standard in the Copyright Act." 143 Cong. Rec. S12,689 (daily ed. Nov. 13, 1997) (statement of Sen. Orrin Hatch); see also id. at 12,690 (statement of Sen. Patrick Leahy) ("This clarification was included to address the concerns expressed ... because the standard of 'willfulness' for criminal copyright infringement is not statutorily defined and the court's interpretation[s] have varied somewhat among the Federal circuits."); H.R.Rep. No. 105–339, at 9 (1997) (explaining that the Subcommittee on Courts and Intellectual Property amended the bill "to define 'willful' misconduct" in response to "questions concerning the meaning of the word and its application in the electronic environment").  Upon passage of the bill in the Senate, Senator Hatch

10

stated that willful "ought to mean the intent to violate a known legal duty . . .. As Chairman of the Judiciary Committee, that is the interpretation that I give to this term. Otherwise, I would have objected and not allowed this bill to pass by unanimous consent." 143 Cong. Rec. S12, 689.

All three of Congress' expressed concerns relating to the criminalization of copyright infringement militate strongly against imposing potential criminal and/or RICO liability to any copyright infringement that does not amount to counterfeiting or piracy.  For decades, Congress has acted with extreme caution before imposing criminal liability for copyright infringement, and Congress has never expressed any concern about any type of infringement apart from the counterfeiting and piracy of records, tapes and films.

Counterfeiting and piracy of records, tapes, and films do not impact the "special concerns implicated by the copyright laws" because counterfeiting and piracy entail duplication of copyrighted works and as such do not involve creative or expressive conduct.  As a result, criminalization of such conduct does not alter the careful balance established by the Copyright Act between the rights of creators of existing works and creators of future works.  Likewise, the criminalization of counterfeiting and piracy does not impact the public's Constitutionally-protected interest in free expression.  Conversely, criminalization of the creative and expressive conduct at issue in this case would drastically impact these areas.  There is simply no suggestion that Congress intended such a result.

### b)   Interpreting §2319 to Require Evidence of Direct Copying is Necessary to Avoid Conflict with the First Amendment

In *Gordon v. Drape Creative*, the Ninth Circuit recently reaffirmed that courts must construe the Lanham Act narrowly to avoid conflict with the Constitution where expressive works are involved.

> We use the *Rogers* test to balance the competing interests at stake when a trademark owner claims that an expressive work infringes on its trademark rights. The test construes the Lanham Act to apply to expressive works "only where the public interest in avoiding consumer confusion outweighs the public interest in free expression." *Id*. at 999. "[T]hat balance will normally not support application of the Act, unless the [use of the mark] has ***no artistic relevance*** to the underlying work ***whatsoever***, or . . . explicitly misleads [consumers] as to the source or the content of the work."

11

*Gordon*, 2018 WL 6055652 at *1, *citing Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) (emphasis added).

The balance between the *civil* copyright laws and the First Amendment has been set and adjusted by Congress and the courts for decades.  But not so the *criminal* copyright laws or RICO since, as far as the KBFAA Parties have found, such laws have not been applied to expressive conduct.  In *Stewart*, the court avoided reaching a constitutional challenge to application of the RICO Act to the expressive works at issue in that case by interpreting the law to only cover the non-creative and non-expressive acts of counterfeiting and piracy.  Notably, *ICONICS* involved source code, so no constitutional rights were implicated.

As in *Gordon*, the KBFAA Parties contend that the Court should interpret the criminal copyright laws and RICO to avoid potential conflict with Constitutionally-protected expression by only applying them to conduct that has no artistic relevance whatsoever, such as counterfeiting and piracy.  If the copyright laws and RICO were interpreted as KGSI proposes, such that they would potentially punish and deter expressive conduct, the KBFA Parties contend that the laws would be unconstitutional as applied.

### c)   Interpreting §2319 to Require Evidence of Direct Copying is Necessary to Avoid Absurdity

Construing the criminal copyright laws and RICO to only extend to non-creative and non-expressive conduct of counterfeiting and piracy is further supported by the rule that statutes must be interpreted to avoid absurdity.  *See Crooks v. Harrelson*, 282 U.S. 55, 59–60 (1930) (departure from letter of the law proper where following it would lead to absurd results that would "shock the general moral or common sense.").  It is simply unthinkable that Congress intended artists and art-dealers to potentially face ruinous liability under the RICO Act or be incarcerated for years—perhaps decades—for infringing copyrights in creative works.  *See Stewart* at *6, *citing* 5 M. Nimmer & D. Nimmer, NIMMER ON COPYRIGHT, § 15.01 (2004) ("Does this mean that every run-of-the-mill copyright case can serve as the basis of an indictment, if only the United States Attorney's attention can be secured?  Certainly, that result

lies far afield both from Congress' intent, and from any rational ordering of the copyright system').

### d)     KGSI has not Plead Facts that Could Plausibly Support a Finding of Counterfeiting or Piracy

The plain meaning of "counterfeiting" is making a duplicate, such as counterfeit currency.  A counterfeit is a copy meant to imitate and supplant the item in question.  *See, e.g., Bill Graham Archives LLC v. Zeidan*, 2012 WL 13041536, at *3 (N.D. Cal., May 18, 2012), report and recommendation adopted, No. C 11-4916 SBA, 2012 WL 13041414 (N.D. Cal., June 8, 2012); *U.S. v. Shi Chang Huang*, 491 Fed.Appx. 382, 383 (4th Cir. 2012) (counterfeit items were "merchandise made in China but purporting to be expensive handbags, shoes, and other accessories"); *Coach, Inc. v. Bags & Accessories*, No. CIV.A. 10-2555 JBS-J, 2011 WL 1882403, at *1 (D.N.J., May 17, 2011) (counterfeit item was imitation scarf).

Piracy has been "defined as '[t]he unauthorized and illegal ***reproduction*** or distribution of materials protected by copyright, patent or trademark law.'"  *See Microsoft Corp. v. Big Boy Distribution LLC*, 589 F.Supp.2d 1308, 1324 (S.D. Fla. 2008) (*citing* Black's Law Dictionary (8th ed. 2004)) (emphasis added).  "Piracy" exists where the infringement "supersede[s] the use of the original work."  *Folsom v. Marsh*, 9 F.Cas. 342, 344–45 (No. 4901) (CC Mass. 1841); *accord Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 550 (1985)  (citing the quoted text of *Folsom* with approval in the fair use context).

Counterfeiting and piracy are simply not what this case is about.  In both substance and scale, KGSI alleges facts that fall far short of any ordinary meaning of these terms.[3]

///

---

[3] Likewise, as to supposed predicate acts of criminal copyright infringement, KGSI alleges that, for example, the KBFAA Parties "copied and sold" certain works created by Brennie Brackett in 2006.  *See* Counterclaims at 14:32.  But the attached exhibit showing a comparison of Brackett and KBFAA works shows that this is simply not true.  *See id*., Exh. "H".  The same is so for the other alleged predicate acts from 2006 or before: either the exhibits or the allegations confirm that the KBFAA Parties never made duplications of any works.  *See id.,* Exh. "I", 15:20 (alleging the KBFAA Parties created "altered versions"), 16:14 ("altered copies").

### 2.        KGSI Does Not Plead Facts that Would Allow a Plausible Inference that the KBFAA Parties had a Specific Intent to Violate a Copyright

KGSI does not even attempt to distinguish *Liu*, which is controlling Ninth Circuit precedent.  Rather, KGSI merely cites *Peter Rosenbaum Photography Corp. v. Otto Doosan Mail Order Ltd.*, 2005 WL 2387687 (N.D. Ill. 2005), a district court opinion which involved the unauthorized display of unaltered photographs.  *Id.* at *1.  But, as with all the other direct copying cases relied on by KGSI, the holding is inapposite.

The Ninth Circuit confirmed in *Liu* "that 'willfully' as used in 17 U.S.C. § 506(a) connotes a 'voluntary, intentional violation of a known legal duty.'" *Liu*, 731 F.3d. at 990 ; *see also Cheek v. U.S.*, 498 U.S. 192, 200-01 (1991) (conviction of criminal certain federal crimes requires proof that the defendant acted willfully—that is, with "specific intent to violate the law"); *see generally* Larkin, "The Supreme Court on Mens Rea: 2008-2015," The Heritage Foundation Legal Memorandum No. 171 (July 14, 2016 (analyzing Supreme Court decisions and noting trend toward requiring proof of an evil mental state proportional to the severity of the crime and punishment).

Put simply, had the KBFA Parties intended to violate KGSI's copyrights, they would have done so, or they would have at least come far closer to duplication than they did.  As shown on page 10 of KGSI's Opposition, the differences between *Star* and the Accused Work at the Bayview Marriott are extensive, and the Accused Work is certainly far from a duplication.  These differences demonstrate, if anything, an intent to ***avoid*** violation of a copyright.  Although there are more similarities between *Swish* and the Westin Namea screenshot as shown on page 10, the differences are still substantial, and the similarities are dictated by the common idea of a representation of nature.  Again, these differences preclude an inference of "a voluntary, intentional violation of a known legal duty" sufficient to support conviction and incarceration under the criminal copyright laws.

*///*

14

1

## III.    CONCLUSION

2

For the foregoing reasons, the KBFAA Parties respectfully request that the Court

3

dismiss KGSI's counterclaims with prejudice because they are deficient as a matter of law and

4

cannot be cured by amendment.

5

DATED:  November 29, 2018                    **ENENSTEIN PHAM & GLASS**

6

By:      /s/ Ned M. Gelhaar                    .

7

Ned M. Gelhaar
*Attorneys for Plaintiff and Counter-Defendant*

8

*Kevin Barry Fine Art Associates and*
*Counterclaim- Defendants Kevin A. Barry and*

9

*John Johnson*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Reply Brief on 12(b)(6) Motion to Dismiss**                    **Case No.  3:18-cv-03358-HSG**