UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KEVIN BARRY FINE ART ASSOCIATES,

Plaintiff,

v.

KEN GANGBAR STUDIO, INC.,

Defendant.

Case No. 18-cv-03358-HSG

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**

Re: Dkt. Nos. 56, 60

On June 6, 2018, Plaintiff Kevin Barry Fine Art Associates ("KBFAA") brought this suit against Defendant Ken Gangbar Studio Inc. ("KGSI") for a declaratory judgment of non-infringement. Dkt. No. 1 ("Compl.").   On August 7, 2018, KGSI submitted an answer and counterclaims against not only KBFAA but also its owner Kevin A. Barry, as well as John Johnson, Richard McCormack, and Richard McCormack Design d/b/a Studio McCormack ("Studio McCormack"), asserting copyright infringement, as well as conspiracy to commit and substantive violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968.  Dkt. No. 18 ("Answer & Counterclaims").

Pending before the Court are two motions to dismiss KGSI's counterclaims. Counterclaim-Defendants Studio McCormack and Mr. McCormack (collectively, "the McCormack Counter-Defendants") filed one motion, Dkt. No. 56 ("McCormack Mot."); Counterclaim-Defendants KBFAA, Mr. Barry, and Mr. Johnson (collectively, "the KBFAA Counter-Defendants") filed the other, Dkt. No. 60 ("KBFAA Mot.").  Briefing on these motions is complete.  *See* Dkt. Nos. 65 ("McCormack Opp."), 66 ("McCormack Reply"), 67 ("KBFAA Opp."), 69 ("KBFAA Reply").

//

# I.  LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[1]  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031.  Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  And even where facts are accepted as true, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that [s]he cannot prevail on [her] . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation marks and citation omitted).

# II.  DISCUSSION

Collectively, the counter-defendants move to dismiss both KGSI's copyright infringement claim and its civil RICO claims.  The Court addresses these claims separately.

## A.  Copyright Infringement

KGSI argues that all counter-defendants "contributorily and/or vicariously infringed

---

[1] The McCormack Counter-Defendants initially argued that Rule 9(b)'s heightened pleading standard applies to KGSI's counterclaims. *See, e.g.*, McCormick Mot. at 2 ("Because KGSI claims all sound in fraud, their allegations must meet the heightened pleading standards of [Rule] 9(b) . . . ."), 9 ("In the Ninth Circuit, all RICO claims involving fraud must be alleged with particularity.").  All parties since agreed at the hearing on these motions that Rule 8's notice-pleading standard applies. *See* Dkt. No. 76 at 3:20–4:10.

United States District Court
Northern District of California

KGSI's copyrights." Counterclaims ¶ 43. KGSI accuses the KBFAA Counter-Defendants of physically crafting infringing works and selling them without KGSI's authorization. *Id.* ¶¶ 17–27. KGSI also accuses Mr. Barry and KBFAA—but not Mr. Johnson—of creating digital renderings that depict infringing copies of KGSI's copyrighted works, which were used to support sales of infringing sculptures.[2] *Id.* at 28. And in at least one instance, a KBFAA customer allegedly displayed such a rendering on its website, to attract customers. *Id.* The KBFAA Counter-Defendants move to dismiss KGSI's infringement counterclaim for failure to state a claim of infringement. *See* KBFAA Mot. at 4–12.

KGSI separately accuses the McCormack Counter-Defendants of vicarious infringement for soliciting bids to commission an infringing work, which Mr. Barry and his company KBFAA secured. Counterclaims ¶ 23. These counter-defendants move to dismiss KGSI's infringement counterclaim for failure to plead facts demonstrating vicarious liability. McCormack Mot. at 7–8. In other words, the McCormack Counter-Defendants do not dispute at this stage that the underlying commissioned work infringes KGSI's copyright; rather, they dispute whether vicarious liability for the infringement should extend to them.

### 1. KGSI Has Adequately Stated a Claim for Infringement Against the KBFAA Counter-Defendants

To state a claim for copyright infringement, KGSI must plausibly allege that (1) KGSI owns valid copyrights in the relevant works; and (2) the KBFAA Counter-Defendants copied protected aspects of KGSI's valid copyrights. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019).

### a. Valid Copyrights

First, KGSI has plausibly alleged it owns valid copyrights in the relevant sculptures: *Star*, *Swish*, *Palomar*, and *Fin Wave* (collectively, "KGSI Works"). KGSI alleges that Mr. Gangbar

---

[2] Photographs may infringe sculptural works. *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003) (finding photographs depicting Barbie in sexualized positions established a prima facie case of infringement, but were shielded by the fair use doctrine).

created the KGSI Works and assigned all copyrights to Ken Gangbar Studio Inc. Counterclaims ¶¶ 14–16. The KGSI Works are undoubtedly subject to copyright protection, as they are "fixed in [a] tangible medium of expression." 17 U.S.C. § 102(a); *see also id.* § 102(a)(5) (including "sculptural works" as a category of copyright protectable work). The KGSI Works are also "original work[s] of authorship," given the several specific "creative decisions" Mr. Gangbar made in crafting them. *See Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117–18 (9th Cir. 2018); *see also Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003) (explaining that "the amount of creative input by the author required to meet the originality standard is low"). Finally, KGSI alleges it registered the KGSI Works with the Copyright Office, which is generally a prerequisite for a civil copyright infringement action. *See* Counterclaims ¶ 41 (noting copyright registration numbers); 17 U.S.C. § 411(a) (noting that, generally, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title").

### b. Copying Protected Aspects

As the Ninth Circuit recently explained, the second element itself has two components: (1) copying, and (2) unlawful appropriation. *See Rentmeester*, 883 F.3d at 1117. The Court first finds that KGSI has pled facts sufficient to create a presumption that the accused works (collectively, "KBFAA Works") were the result of copying. KGSI alleges that before outright copying the KGSI Works, a KBFAA associate emailed KGSI—attaching photographs of Mr. Gangbar's sculptures, including *Star*—and asked about commissioning a similar piece. Counterclaims ¶¶ 17–18. These alleged facts demonstrate "a reasonable opportunity to view [the KGSI Works]." *Rentmeester*, 883 F.3d at 1118 (quoting *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012)). Such access, "combined with the obvious conceptual similarities between" KGSI's and KBFAA's Works, is enough to "create a presumption . . . of copying rather than independent creation." *Id.*

Turning next to unlawful appropriation, a copyright infringement claim does not lie against a person who copies only "ideas" or "concepts" of another's original work. 17 U.S.C. § 102(b). An infringing party must instead "copy enough of the [other's] expression of those ideas or

concepts to render the two works 'substantially similar.'" *Rentmeester*, 833 F.3d at 1117 (citing *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010)).

The Ninth Circuit employs a two-part test to determine substantial similarity: the "extrinsic test" and the "intrinsic test." *Id.* at 1118. "At the pleading stage, this Court considers only the extrinsic test." *See Malibu Textiles, Inc.*, 922 F.3d at 952. The extrinsic test is an objective, analytical inquiry between only the protectable elements of a copyrighted work and the accused work. *Id.* This is unlike the intrinsic test, which is "a more holistic, subjective comparison of the works" that considers the "total concept and feel." *Rentmeester*, 833 F.3d at 1118 (quoting *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002)). Although a party alleging infringement must ultimately prove substantial similarity under both tests, only the extrinsic test involves a matter of law subject to inquiry on a motion to dismiss. *See Christianson v. West Publ'g Co.*, 149 F.2d 202, 203 (9th Cir. 1945) (holding that a court may assess substantial similarity on a motion to dismiss where "the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison"); *Williams v. Gaye*, 895 F.3d 1106, 1119 (9th Cir. 2018) ("[T]he intrinsic test is reserved exclusively for the trier of fact."). The extrinsic test itself includes a two-step analysis. *See Malibu Textiles, Inc.*, 922 F.3d at 952.

### i. Step One: Protectable Elements

The "extrinsic test" first requires courts to "filter out" unprotectable elements of the copyrighted work and to determine the "breadth" of copyright protection available for the protectable elements. *Id.* The filtering-out process ensures copyright protection does not extend to general ideas—*e.g.* the idea of an animated mouse or an animated animal wearing clothes—but covers the unique expression of those ideas—*e.g.* Mickey Mouse. And even if a work is solely comprised of unprotected elements, copyright protection may extend to a sufficiently original compilation or integration of those elements. *Rentmeester*, 833 F.3d at 1119–20. For example, although an author cannot claim copyright protection over facts, a sufficiently original compilation of those facts is within the subject matter of copyright. *See Feist*, 499 U.S. at 344–45. Similarly, although a photograph's subject matter, camera angle, and lighting are individually unprotected elements, a sufficiently original compilation of those elements is protected by copyright.

5

*Rentmeester*, 883 F.3d at 1119–20.

Apart from filtering out unprotectable elements, courts also evaluate the breadth of protection to which the copyrighted work is entitled. This inquiry turns on "the range of creative choices that can be made in producing the work." *Id.* at 1120. Where there are "only so many ways" to produce a work, such as a painting of a "red bouncy ball on blank canvas," the work's copyright protection is "thin." *Mattel, Inc.*, 616 F.3d at 914. But where there is "a wide range of expression (for example, there are gazillions of ways to make an aliens-attack movie)," the copyright protection is "broad." *Id.* at 913–14. Although the Ninth Circuit sometimes speaks of a spectrum of copyright protection—from thin to broad—it consistently applies a binary test. *Compare Rentmeester*, 883 F.3d at 1120 ("As with any other work, the greater the range of creative choices that may be made, the broader the level of protection that will be afforded to the resulting image."), *with id.* ("Rentmeester's photo is undoubtedly entitled to broad rather than thin protection."). *See also Malibu Textiles, Inc.*, 922 F.3d at 953 (holding a plaintiff's "selection, coordination, and arrangement" of floral elements in a lace pattern were entitled to broad protection); *Ets–Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 765–66 (9th Cir. 2003) (holding a plaintiff's commercial product shots of a vodka bottle were entitled to thin protection); *Satava*, 323 F.3d at 812 (holding a sculpture of a jellyfish was only entitled to thin protection); *Mattel, Inc.*, 616 F.3d at 915 ("Because of the narrow range of expression, the preliminary sculpt [of a doll] is entitled to only thin copyright protection against virtually identical copying."); *L.A. Printex Indus., Inc.*, 676 F.3d at 850–51 (finding broad copyright protection where there is "a wide range of expression for selecting, coordinating, and arranging floral elements in stylized fabric designs") (internal quotation marks omitted).

Here, although copyright law would not protect (1) cyclical patterns of nature, (2) three-dimensional wall sculptures, (3) wave-like patterns, or (4) the use of rocks, or rock-shaped disks, it does protect the original "selection, coordination, and arrangement" of rocks and rock-shaped disks depicting the cyclical patterns of nature within large three-dimensional abstract wall sculptures. *See Malibu Textiles, Inc.*, 922 F.3d at 953. And the breadth of protection is broad, "because there is a wide range of expression for selecting, coordinating, and arranging" the

constituent elements in a stylized three-dimensional wall sculpture. *See id.* (internal quotation marks omitted). After all, there are "gazillions of ways" to depict the cyclical patterns of nature, and the author was creatively unconstrained. *See Mattel, Inc.*, 616 F.3d at 913–14.

### ii. Step Two: Similarity Comparison

Having both filtered out unprotectable elements and determined that the copyrighted work is entitled to broad protection, the Court must next compare the copyrighted and accused works. Where a copyrighted work is entitled to "broad" copyright protection, the accused work infringes if it is "substantially similar." *Mattel, Inc.*, 616 F.3d at 913–14. The "substantial similarity" inquiry is fact-dependent. As the Ninth Circuit recently explained:

> [This] inquiry requires us to assess similarities in the selection and arrangement of the [works'] elements, as reflected in the objective details of the two works. We do not have a well-defined standard for assessing when similarity in selection and arrangement becomes "substantial," and in truth no hard-and-fast rule could be devised to guide determinations that will necessarily turn on the unique facts of each case. *See Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960). The best we can do is borrow from the standard Judge Learned Hand employed in a case involving fabric designs: The two [works'] selection and arrangement of elements must be similar enough that "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them." *Id.*

*Rentmeester*, 883 F.3d at 1121.

Here, the similarities between the KGSI and KBFAA Works extend far beyond just the mutual depiction of patterns of nature. The works contain similar disc-shaped rocks in similar general arrangements, with similar cluster patterns, presented in nearly the same way—as large three-dimensional wall art. And not only does the complaint plead the similarities between the works, but it "provide[s] side-by-side pictures that make the similarities apparent." *Malibu Textiles, Inc.*, 922 F.3d at 953; *see* Appendix, *infra*.

Undoubtedly, the KGSI and KBFAA Works differ in some ways, such as (1) different uses of space, particularly when comparing KGSI's *Star* against KBFAA's *Bayview Work*; (2) using slightly different colored rocks; and (3) curvature disparities. But a rational jury could find that these deviations were "knowing modifications," which would evidence deliberate copying, rather than independent creation. *See Malibu Textiles, Inc.*, 922 F.3d at 953 (citing *Concord Fabrics,*

United States District Court
Northern District of California

*Inc. v. Marcus Bros. Textile Corp.*, 409 F.2d 1315, 1316 (2d Cir. 1969)).

The Court accordingly finds that, at this stage, KGSI has adequately pled substantial similarity to survive dismissal of its copyright infringement claims against the KBFAA Counter-Defendants. *See id.* at 953–54 (finding that similar allegations were enough to plead "striking similarity," an even higher standard than "substantial similarity").

### 2. KGSI Adequately Pled Vicarious Liability as to the McCormack Counter-Defendants

KGSI's copyright infringement counterclaim alleges that the McCormack Counter-Defendants vicariously infringed KGSI's copyrights by circulating a photograph of one of KGSI's copyrighted works and soliciting bids from art dealers to copy the work for placement at The Ritz Prime Seafood. Counterclaims ¶ 24. The McCormack Counter-Defendants then allegedly gave the job to Mr. Barry and KBFAA, who submitted the lowest bid. *Id.* These facts, according to KGSI, show that the McCormack Counter-Defendants "had the right and the ability to supervise and control the selection of artwork to be purchased and placed at The Ritz Prime Seafood." *Id.* ¶ 45. And these counter-defendants allegedly "financially benefitted from the sale" of the accused work to The Ritz Prime Seafood. *Id.* ¶ 45.

Secondary liability for copyright infringement may be based on either "a theory of contributory or vicarious infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). As to vicarious liability, one is liable "[1] by profiting from direct infringement while [2] declining to exercise a right to stop or limit it." *Id.*; *see* Counterclaims ¶ 45 (alleging the McCormack Counter-Defendants "vicariously infringed KGSI copyrights"); McCormack Opp. at 11 (arguing that KGSI adequately pled "all the elements of a vicarious-infringement claim"). The second prong, which the Ninth Circuit refers to as the "control" element, requires that the defendant "ha[d] both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007).

The McCormack Counter-Defendants contend that KGSI failed to plead sufficient facts to support a vicarious liability claim of copyright infringement because they lacked the requisite

"control." McCormack Mot. at 7–8.[3]  And to this end, the McCormack Counter-Defendants primarily argue that there is a difference between supervising the "selection" of infringing work and supervising "the copying of protected work." *Id.* at 2–3.  But it is not clear that Ninth Circuit law demands such a distinction or warrants dismissal in this instance.  For example, in the only case on which the McCormack Counter-Defendants' motion relies for this distinction—*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996)—the Ninth Circuit nowhere demanded that the purportedly vicariously liable party supervised the physical manufacturing of infringing products.  Most important, at this stage the Court must accept all well-pled facts as true and draw all reasonable inferences in KGSI's favor.  Doing so, the Court cannot say that no rational jury could find the McCormack Counter-Defendants' solicitation of infringing work does not demonstrate the requisite "control."

All told, a rational jury could view the facts as pled by KGSI and find that the McCormack Counter-Defendants had the requisite "control" to establish vicarious liability.  The Court thus **DENIES** the McCormack Counter-Defendants' request to dismiss KGSI's infringement claim against them.

### B.  Civil RICO

KGSI alleges that all counter-defendants violated two RICO provisions by committing criminal copyright infringement.  First KGSI alleges violations of 18 U.S.C. § 1962(d), which provides:  "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  Counterclaims ¶¶ 49–56.  Second, KGSI alleges violations of 18 U.S.C. § 1962(c), which provides:  "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or

---

[3] The McCormack Counter-Defendants' motion does not dispute that the work placed at The Ritz Prime Seafood infringes KGSI Works.  Separately, the McCormack Counter-Defendants assert for the first time in their reply brief that KGSI failed to allege facts satisfying the "financial benefit" prong.  *See* McCormack Reply at 3.  The Court finds this argument waived.  *See Dytch v. Yoon*, No. C-10-02915-MEJ, 2011 WL 839421, at *3 (N.D. Cal. Mar. 7, 2011) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers."); *see also Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived.").

9

United States District Court
Northern District of California

foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." *Id.* KGSI's Section 1962(d) claim requires a sufficiently-pled Section 1962(c) claim. *See Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("[F]ailure to adequately plead a substantive violation of RICO precludes a claim for conspiracy.")

To state a claim under Section 1962(c), a party must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Racketeering activity is commonly referred to as "predicate acts." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005). "With the enactment of the Anticounterfeiting Consumer Protection Act of 1996, Pub. L. No. 104-153, § 3, 110 Stat. 1386 [("ACPA")], Congress added criminal copyright infringement (18 U.S.C. § 2319) to the list of RICO predicate acts found in 18 U.S.C. § 1961(1)(B)." *Stewart v. Wachowski*, No. CV 03-2873 MMM (VBKx), 2005 WL 6184235, at *4 (C.D. Cal. June 14, 2005).

### 1. KGSI Has Not Adequately Alleged an Associated-in-Fact Enterprise that Includes the McCormack Counter-Defendants

An associated-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). "To establish the existence of such an enterprise, a plaintiff must provide both 'evidence of an ongoing organization, formal or informal,' and 'evidence that the various associates function as a continuing unit.'" *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (quoting *Turkette*, 452 U.S. at 583).

KGSI alleges that each KBFAA entity constitutes an "enterprise." Counterclaims ¶ 51. KGSI then alleges "a broader enterprise . . . that consists of an association-in-fact of members who have functioned for years as a continuing unit for the common purpose of achieving the activities described in this counterclaim," which "includes at least Kevin Barry, KBFAA, and other entities and individuals working with them." *Id.* ¶ 52. But nowhere does KGSI allege that the McCormack Counter-Defendants joined this enterprise or even knew Mr. Barry or KBFAA otherwise engaged in wrongful conduct.

10

After the McCormack Counter-Defendants moved to dismiss KGSI's RICO counterclaim for failure to state their involvement in an enterprise, *see* McCormack Mot. at 10, KGSI responded that the association-in-fact enterprise "was intentionally designed to allow amendment, based on expected discovery, to name the other members of the broader RICO enterprise, including McCormack, once known," *see* McCormack Opp. at 3. In other words, KGSI opposes dismissal of the RICO claims against the McCormack Counter-Defendants because it hopes to uncover facts implicating these counter-defendants through discovery. The Court finds that KGSI's desired fishing expedition does not preclude dismissal and thus **GRANTS** the McCormack Counter-Defendants request for dismissal of the civil RICO causes of action against them for failure to plead their involvement in an enterprise.

## 2. KBFAA Counter-Defendants

The KBFAA Counter-Defendants contend that KGSI fails to state a civil RICO counterclaim against them because copyright infringement as a civil RICO predicate act is purportedly limited to counterfeiting or piracy, which KBFAA argues is not present here. KBFAA Mot. at 12–14. In the alternative, the KBFAA Counter-Defendants contend that KGSI has failed to allege the requisite willfulness to support criminal copyright infringement. *Id.* at 14–16.[4]

### a. Copyright Infringement Can Support a RICO Claim in the Absence of Counterfeiting or Piracy

KBFAA relies exclusively on a Central District of California case to argue that Congress did not intend to expand RICO liability to cover copyright infringement in the absence of counterfeiting or piracy. *Id.* at 12–13. That case—*Stewart v. Wachowski*—details the legislative history behind the ACPA, which added criminal copyright infringement as a viable RICO predicate act. 2005 WL 6184235, at *4–6. *Stewart* concludes that, although the pertinent RICO

---

[4] In its reply brief, the KBFAA Counter-Defendants argue for the first time that the Court must require evidence of direct copying "to avoid absurdity." KBFAA Reply at 11–12. The KBFAA Counter-Defendants waived this argument, however, by failing to raise it in their opening brief. *See supra* note 3.

provisions unambiguously sweep in all intentional copyright infringement, the legislative history "reveals that Congress's true intent in enacting the statutes was simply to increase the available penalties for counterfeiting and piracy." *Id.* at \*5. *Stewart* looked past the unambiguous text of the statute because the Ninth Circuit purportedly permits doing so where "the legislative history clearly indicates that Congress meant something other than what it said." *Id.* (quoting *Cal. Dep't of Social Servs. v. Thompson*, 321 F.3d 835, 853 (9th Cir. 2003)).

Since *Stewart*, courts have split on whether to limit copyright infringement as a RICO predicate act to counterfeiting and piracy. *See Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No. 17-cv-00561-WHO, 2017 WL 3485881 (N.D. Cal. Aug. 15, 2017) (summarizing the opposing views); *ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254, 269 (D. Mass. 2016) (rejecting *Stewart* because the statue is unambiguous); *Hunter v. Tarantino*, No. CV 10-03387 SJO (PJWx), 2010 WL 11579019 (C.D. Cal. July 15, 2010) (following *Stewart*); *Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, No. 12 Civ. 8205, 2013 WL 3943267, at \*8 (S.D.N.Y. July 31, 2013) (reframing the inquiry as about whether conduct is "sufficiently 'egregious'" to constitute a RICO predicate); *Robert Kubicek Architects & Assocs. Inc. v. Bosley*, No. CV 11–2112 PHX DGC, 2012 WL 3149348, at \*2 (D. Ariz. Aug. 1, 2012) (following *Stewart*); *CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 676 (D. Md. 2009) (same). *ICONICS* represents the clearest disagreement with *Stewart*. There, the District Court of Massachusetts stressed that the Supreme Court has repeatedly rejected lower courts' attempts to use legislative intent as a tool to narrow RICO's broad language. *ICONICS*, 192 F. Supp. 3d at 269 (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 245 (1989), and *Sedima*, 473 U.S. at 499–500).[5]

The Court finds that the *Stewart* court's reliance on legislative history to avoid the plain language of the RICO statutes is no longer tenable after *Odom v. Microsoft Corp.*, which was decided three years later. There, the Ninth Circuit walked through several examples of the Supreme Court correcting "judicial resistance to RICO, manifested in narrow readings of its

---

[5] *Iconics* also noted that, while *Stewart* considered legislative history in reliance on Ninth Circuit authority, the First Circuit does not permit looking past unambiguous text. 192 F. Supp. 3d at 269.

1  provisions by lower federal courts." *Id.* at 545–47. The Ninth Circuit concluded: "We take from

2  these cases the general instruction that we should not read the statutory terms of RICO narrowly.

3  Rather, as the Court wrote in *Sedima*, 'RICO is to be read broadly.' As Congress admonished and

4  as the Court repeated in *Sedima*, RICO should 'be liberally construed to effectuate its remedial

5  purposes.'" *Id.* at 547 (internal citations omitted). In keeping with the Ninth Circuit's mandate in

6  *Odom*, the Court declines to read into RICO's plain statutory terms the KBFAA Counter-

7  Defendants' requested limitation.

8        At the hearing on these motions, the KBFAA Counter-Defendants primarily advanced an

9  argument only first mentioned in their reply brief: that to avoid conflict with the First Amendment,

10  only direct copying may serve as a copyright infringement RICO predicate act. *See* KBFAA

11  Reply at 11–12 (raising argument for the first time); Dkt. No. 76 at 8:1–16:14. Although no court

12  has endorsed this logic, the KBFAA Counter-Defendants contend that this conclusion is required

13  under the Ninth Circuit's recent decision in *Gordon v. Drape Creative, Inc.*, 909 F.3d 257 (9th

14  Cir. 2018).

15        Although the Court need not consider this argument given that the KBFAA Counter-

16  Defendants failed to raise it in their opening brief, the Court nonetheless finds it unavailing. *See*

17  *supra* note 3. In *Gordon*, the plaintiff trademark owner claimed that an expressive work infringed

18  plaintiff's trademark rights under the Lanham Act. And the *Gordon* Court explained that the

19  Ninth Circuit has adopted what is known as the "*Rogers* test" to "balance the competing interests

20  at stake when a trademark owner claims that an expressive work infringes on its trademark rights."

21  909 F.3d at 260–61 (discussing *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989)). This test

22  "construes the Lanham Act to apply to expressive works only where the public interest in avoiding

23  consumer confusion outweighs the public interest in free expression." *Id.* at 261 (internal

24  quotation marks omitted). "More concretely," the Ninth Circuit explained, courts "apply the Act

25  to an expressive work only if the defendant's use of the mark (1) is not artistically relevant to the

26  work or (2) explicitly misleads consumers as to the source or the content of the work." *Id.* at 264.

27  "Effectively, *Rogers* employs the First Amendment as a rule of construction to avoid conflict

28  between the Constitution and the Lanham Act." *Id.*

The KBFAA Counter-Defendants' reliance on *Gordon* proves too much. In relying on *Gordon*, these parties presumably believe that the Court should adopt a *Rogers*-like test in the copyright context. But even if this were warranted, *Gordon*'s articulation of the *Rogers* test nowhere endorsed the KBFAA Counter-Defendants' proposed standard: that only direct copying may constitute a violation of the Lanham Act, or as would be the case here, of criminal copyright law. More important, the KBFAA Counter-Defendants ignore that the Supreme Court and Ninth Circuit have both stated several times that the general test for copyright infringement—principally, the "idea/expression dichotomy"—itself accounts for relevant First Amendment concerns, as it "strike[s] [the necessary] definitional balance between the First Amendment and the Copyright Act." *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 556 (1985); *Bikram's Yoga Coll. of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1037 (9th Cir. 2015).[6]

For all of these reasons, the Court rejects the KBFAA Counter-Defendants' requested limitations on copyright infringement as a civil RICO predicate act.

### b. KGSI Has Adequately Alleged Willfulness as to Mr. Barry and KBFAA

Last, the KBFAA Counter-Defendants contend that KGSI has failed to allege a knowing violation of copyright law to demonstrate the requisite willfulness to support criminal copyright infringement. *Id.* at 14–16. They argue that KGSI's allegations demonstrate that Mr. Barry and KBFAA "sought at most to create works that were similar to one of the KGSI Works, and plainly did not intend to copy any KGSI Works since they did not even approach doing so." KBFAA Mot. at 16.

"Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). As the Ninth Circuit has explained, "state of mind—or

---

[6] At the hearing on these motions, the Court permitted supplemental briefing on whether "there's ever been a criminal copyright prosecution that was not based on . . . duplication-type cases." *See* Dkt. No. 76 at 26:11–20. The parties subsequently identified instances where defendants were prosecuted for criminal copyright infringement although the accused works were not direct copies of the copyrighted works. *See, e.g.*, Dkt. No. 77 (discussing, among other cases, *United States v. Kim*, 307 F. App'x 324, 325–26 (11th Cir. 2009), where the court of appeals explained that "a copyrighted work may be infringed although no exact reproduction is shown"). This further undermines the KBFAA Counter-Defendants' arguments.

United States District Court
Northern District of California

scienter—of the defendants may be alleged generally," including "simply by saying that scienter existed." *See Odom*, 486 F.3d at 553–54 (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994) (en banc)). In addition, even where a plaintiff "nowhere state[s] explicitly" that a defendant "knew" something, knowledge may be adequately alleged "in the interstices of the complaint," where "the only possible inference" is that the defendant had knowledge. *See Fidelity Nat'l Title Ins. Co. v. Castle*, No. C 11-00896 SI, 2011 WL 6141310, at *5 (N.D. Cal. Dec. 8, 2011).

The Court finds KGSI has adequately alleged that Mr. Barry, and in turn his company KBFAA, knew they were violating copyright laws. KGSI at several points alleges that Mr. Barry's actions were "willful." *See, e.g.* Counterclaims ¶ 29. KGSI also alleges that Mr. Barry confessed to another victim that he knew his copying was wrong. *Id.* ¶ 35 ("When Ms. Ryan told Mr. Barry his actions were wrong, he readily agreed: 'I know, I know it was wrong.'"). The counterclaims further allege that, after having been warned not to copy works of a prominent L.A. artist, Mr. Barry did so anyway, but completed invoices under a false name. *Id.* ¶ 32. Thus, although the complaint does not specifically allege that Mr. Barry "knew he was violating copyright laws," viewing the facts alleged in the light most favorable to KGSI, the only possible inference from KGSI's allegations is that Mr. Barry, and thus KBFAA knew (but did not care) that their actions violated copyright law.

### c. KGSI Has Not Adequately Alleged Willfulness as to Mr. Johnson

Although KGSI has adequately alleged willfulness as to Mr. Barry and KBFAA, KGSI nowhere alleges that Mr. Johnson acted willfully, even looking "in the interstices of the complaint." *See Fidelity Nat'l Title Ins. Co.*, 2011 WL 6141310, at *5. The Court thus **DISMISSES** the RICO claims as to Mr. Johnson.

## III. CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** each pending motion to dismiss. Specifically, the Court **DISMISSES** the civil RICO counterclaims against all counter-defendants except Mr. Barry and KBFAA. Dismissal is with leave to amend, and KGSI may file an amended

complaint within thirty (30) days of this order.

The Court **SETS** a case management conference for July 23, 2019 at 2:00 p.m in Courtroom 2, 4th Floor, 1301 Clay Street, Oakland, CA.  A joint case management statement is due by July 16, 2019.

**IT IS SO ORDERED.**

Dated:  6/24/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge

**APPENDIX**

*Star* (Subject Work)

*Bayview Work* (Accused Work)




*Swish* (Subject Work)

*Nanea Work* (Accused Work)


