UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN BARRY FINE ART ASSOCIATES,<br><br>Plaintiff,<br><br>v.<br><br>KEN GANGBAR STUDIO, INC.,<br><br>Defendant. | Case No. 18-cv-03358-HSG (TSH)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 100 |

Defendant and counterclaimant Ken Gangbar Studio, Inc., has challenged the confidentiality designations of 974 documents produced in this action – 972 by third-party Defendant John Johnson and two by non-party Monarch Art & Frame, Inc. The parties were unable to resolve the challenge without court intervention, so Plaintiff and counter-defendant Kevin Barry Fine Art Associates ("KBFAA") and Johnson moved under paragraph 6.3 of the stipulated protective order to retain the confidentiality designations of all 974 documents. The moving parties argued that the documents fell into two broad categories: first, documents that show commercial information concerning their sales, costs, revenues and business methods, which they say contain the moving parties' confidential information; and second, documents related to their projects for designers and end users who conduct business with them with an expectation of confidentiality, which they say contain their clients' confidential information. Rather than putting all 974 documents before the Court, which the Court agrees is infeasible, the moving parties proceeded by way of examples. They initially filed 10 examples of each of the two categories of documents as exhibits I and J to the Bolling Declaration, ECF No. 100-3, but since the filing was in the public record, it waived whatever confidential status the documents previously may have had. The Court explained in its December 13, 2019 Order that it was unwilling to make

confidentiality determinations using as examples documents for which the moving parties had voluntarily waived confidentiality. ECF No. 105.

The Court is here now on the moving parties' second attempt. With the 20 documents whose confidentiality has been waived out of the way, there are now 954 documents at issue, 953 produced by Johnson and one by Monarch Art & Frame. The moving parties have submitted 16 documents for in camera review, 10 of which are in the second category and 6 of which are in the first.

Let's start with the second category. The moving parties say these documents should be treated as confidential because they contain client information, which KBFAA tells clients it will keep confidential and which some of its written contracts require to be kept confidential. KBFAA says that Johnson and Monarch are independent contractors that KBFAA hires for client projects, so KBFAA's confidentiality obligations toward its clients also apply to Johnson and Monarch. As an initial matter, Ken Gangbar asserts that it is inconsistent with paragraph 9 of the protective order for parties to the litigation to designate documents as confidential on the ground that they contain a non-party's confidential information. The Court disagrees.

Paragraph 9 of the protective order says:

> (a) The terms of this Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.
>
> (b) In the event that a Party (the "Responding Party") is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Responding Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Responding Party shall:
>
>> (1) promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;
>>
>> (2) promptly provide the Non-Party with a copy of the Stipulated Protective Order in this litigation, the relevant discovery request(s) (with any materials designated as Confidential by a separate Designating Party redacted), and a reasonably specific description of the information requested; and

2

> (3) make the information requested available for inspection by the Non-Party, making any necessary arrangements for the redaction of materials designated Confidential by a party other than the Non-Party.
>
> (c) If the Non-Party fails to object or seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Responding Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Responding Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

Subsection (a) states that the protections of the protective order are applicable to documents produced and designated as "confidential" by a non-party. However, virtually all of the documents at issue here were produced by Johnson, a party. It is common for a litigant to possess documents that have somebody else's confidential information in them – that happens a lot when a litigant has customers. Paragraph 9(a) does not bar a litigant from designating its own produced documents as confidential on the ground that they contain third-party confidential information.

A literalist might have a problem with KBFAA designating as confidential a document produced by Monarch. It seems like the proper procedure under paragraph 9(a) is for the non-party to designate its documents as confidential if it believes they are, so you could draw a negative inference that if the non-party fails to do so, nobody else can. This negative inference is bolstered by paragraph 5.2 of the protective order, which suggests that confidentiality designations are made by the producing party. However, in this case we are dealing with the situation where the producing party (Monarch) has a document that supposedly contains somebody else's confidential information (the client's), and Monarch's obligation to keep it confidential is derivative of KBFAA's commitment to do so. On these facts, there is nothing procedurally improper about KBFAA's designating a document produced by Monarch as confidential. Stated another way, Monarch's failure to comply with the confidentiality obligations it assumed by working for KBFAA (if it had any) should not bar KBFAA from enforcing those obligations.

Subsections (b) and (c) of paragraph 9 address a different situation. This is the situation

3

where the producing party has promised not to produce a non-party's confidential information. These subsections create a mechanism by which the non-party receives notice of the discovery request and then can move for a protective order to try to stop the document production. Here, Johnson and Monarch simply produced the documents in question and did not claim a contract barred them from doing so.

So, with paragraph 9 of the protective order out of the way, and still focusing on the category of documents that contain allegedly client-confidential information, the moving parties were free to designate these documents confidential if they do in fact contain client-confidential information. But do they? That is the key question. Paragraph 2.2 of the protective order defines confidential information to mean information or tangible things "that qualify for protection under Federal Rule of Civil Procedure 26(c)." Both sides agree, and they are correct, that protection under Rule 26(c) requires a showing of good cause. Fed. R. Civ. Proc. 26(c)(1) ("The Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, undue burden or expense . . .").

With respect to client information, the moving parties say there is good cause because KBFAA sometimes has written contracts with its clients that have confidentiality provisions. At other times, it makes oral promises to its clients about confidentiality. The moving parties put before the Court one example of KBFAA's written confidentiality provisions, but at oral argument they agreed that its oral promises of confidentiality are not more restrictive than this written example. Based on that representation, the Court will use this one written example as a proxy for KBFAA's confidentiality obligations toward its clients more generally.

So, let's turn to the contractual language in the exemplar client agreement. Paragraph 27 states in part that:

> As used herein the term "Proprietary Information" shall mean all information (including the Contract, Project drawings, if any, and any documents created pursuant to this Contract) which the Contractor acquires (whether directly from the Owner or through the performance of the Work on the Project) concerning the present and future plans of the Owner, the operations of the Owner's business, or the use of the Project or the Project's design, construction, features, appearance, marketing, layout or décor (including the Project drawings, if any), and any information concerning the Project Site or

4

> the Owner's business, activities or property at the Project Site. . . . [T]he Contractor agrees that Contractor will not disclose any Proprietary Information to any person, either internally or externally, (except as directly necessary for the performance of the Work) without the prior and written consent of the Owner, and will not use, copy or distribute any Proprietary Information (or any document containing Proprietary Information) except to the extent directly necessary for the performance of the Work and/or as necessary to comply with the Contractor's obligations under applicable law (including but not limited to reporting requirements to OSHA and other governmental agencies with jurisdiction over the Work or the Contractor). The Contractor agrees, upon completion of the Work, to return to the Owner or destroy all documents containing Proprietary Information (except for the Contractor's record set of the Project drawings, if any). . . . Contractor shall not permit any of its employees or Subcontractors or their employees to publicize, email, distribute, or otherwise post photographs of the Work or the Site, or any other Proprietary Information, on the Internet, on social media sites (including but not limited to Facebook, Twitter, Pinterest, etc.), or in any other public or private forum.

Paragraph 23 states in part that:

> Vendor shall not disclose, advertise nor publish the fact that Vendor has contracted to furnish Purchaser with the Goods or Services described herein, nor disclose any details connected with this Purchase Order, to any third party without the prior written approval of Purchaser. All Work Product, and any information, ideas, concepts, designs, discussions, work papers, memoranda, photographic materials, draft and final reports, employer or customer information, and other documents and materials provided to Vendor by or on behalf of Purchaser are the exclusive property of Purchaser and strictly confidential and shall not be used or discussed by Vendor in any manner, except as required to provide the Goods, complete the Services or as required to comply with applicable law.

The definition of "Proprietary Information" in paragraph 27 superficially seems very broad, until you read it closely and realize that it is limited to (1) information "which the Contractor acquires" either directly from the Owner or through the performance of the Project, and (2) "information concerning the Project Site or the Owner's business, activities or property at the Project Site." This makes clear that "Proprietary Information" is *somebody else's information*; it can't be the Contractor's own information. Further, the acquired information has to concern (to briefly summarize) the Owner's plans or business operations or the use of the Project or the Project Site or the Owner's business at the Site.

In camera documents 1-10 don't seem to have any of that. There are lots of design samples in those documents, but the designs seem to come from KBFAA, Johnson and Ken

5

Gangbar – not the clients. At oral argument, the moving parties argued that the designs in document 4 might have come from an independent contractor that was hired by a client, but they couldn't say for sure. The burden of showing that a document is confidential rests with the moving parties, *see* Protective Order ¶ 6.3, and this kind of speculation isn't good enough. Also, even if the drawings came from the client, there is no showing or explanation of how they are Proprietary Information. The Court reads the first sentence of paragraph 27 as follows: "As used herein the term 'Proprietary Information' shall mean [1] all information (including the Contract, Project drawings, if any, and any documents created pursuant to this Contract) which the Contractor acquires (whether directly from the Owner or through the performance of the Work on the Project) concerning [a] the present and future plans of the Owner, [b] the operations of the Owner's business, or [c] the use of the Project or the Project's design, construction, features, appearance, marketing, layout or décor (including the Project drawings, if any), and [2] any information concerning the Project Site or the Owner's business, activities or property at the Project Site." Project drawings received from a client or the client's intermediary have to satisfy the "concerning" clause, and here there is no explanation of how they do so.

There is also some discussion of client preferences and budgeting in some of the emails, but it's not enough to constitute Proprietary Information. Again, it matters to the Court how paragraph 27 is written. Emails about design preferences and budgets are certainly about "the Project's design, construction, features, appearance," but they are not about "the use of the Project or the Project's design, construction, features, appearance." Conceivably, "information concerning the Project Site" could be read to include absolutely every communication about the project, since at a high level the purpose of the project is to install something at the site, but that phrase is paired with "or the Owner's business, activities or property at the Project Site," making clear that the focus of that provision is the owner's business and property.

The Court notes that some of these documents are almost seven years old and relate to projects that were long since completed, yet KBFAA did not return or destroy them, which paragraph 27 requires for Proprietary Information. This seems to confirm that the emails do not contain Proprietary Information. Further, as to the last sentence of paragraph 27, the in camera

6

documents do not contain any photographs of the Work or the Site.

Now let's turn to paragraph 23. The fourth sentence states: "All Work Product, and any information, ideas, concepts, designs, discussions, work papers, memoranda, photographic materials, draft and final reports, employer or customer information, and other documents and materials *provided to Vendor by or on behalf of Purchaser* are the exclusive property of Purchaser and strictly confidential and shall not be used or discussed by Vendor in any manner, except as required to provide the Goods, complete the Services or as required to comply with applicable law." (emphasis added). The Court reads the italicized words to modify everything that precedes them. That is the only interpretation that makes it sensible that all of those items should be deemed "the exclusive property of Purchaser." It is clear from the documents submitted that KBFAA's designs for new clients are sometimes based on designs for prior projects, so it can't be the case that this contract makes the ideas, concepts and designs that originate with KBFAA or its contractors the client's exclusive property. The intent of the provision is to safeguard client information. Further, the term "information" in that sentence is vague and could potentially be stretched to include discussions of design preferences and budgets – or anything, really – but the Court is inclined to interpret the word in light of the company it keeps and give it a narrower meaning. So construed, the fourth sentence of paragraph 23 does not reach anything in documents 1-10.

The third sentence of paragraph 23 is a bit of a conundrum. It states: "Vendor shall not disclose, advertise nor publish the fact that Vendor has contracted to furnish Purchaser with the Goods or Services described herein, nor disclose any details connected with this Purchase Order, to any third party without the prior written approval of Purchaser." That's pretty sweeping. Emails about bids and negotiations don't necessarily reveal that a final contract was entered into, but they suggest it, and the reference to "any details connected with the Purchase Order" is sufficiently broad that it could conceivably reach emails about bids and negotiations. Further, this sentence doesn't have an escape clause for disclosures required by law, like paragraph 27 does and like the fourth sentence of paragraph 23 does. At oral argument, KBFAA stated that its production of documents in this litigation somehow did not violate this sentence in paragraph 23.

7

1   KBFAA correctly noted that a contract must be read as a whole and that it did not put the whole
2   contract before the Court. The implication of KBFAA's argument is that if the Court were to read
3   the contract as a whole, it would see that the third sentence of paragraph 23 is less stringent than it
4   appears. Since KBFAA has the burden to establish that the documents at issue are worthy of a
5   confidentiality designation, the Court will accept KBFAA's assertion that something about the
6   contract as a whole vitiates the confidentiality seemingly required by this sentence. But in that
7   case, the Court will not rely on this sentence as a basis for finding that KBFAA contractually
8   promised to keep such information confidential, since this sentence apparently is not the whole
9   story.

So here is where we are: the moving parties say that KBFAA makes oral and sometimes written assurances of confidentiality to its clients, the moving parties agree that the oral promises are no more stringent than the written example provided to the Court, and the moving parties have not demonstrated that documents 1-10 come within the scope of those confidentiality promises in the written example. Indeed, at oral argument counsel for the moving parties stated that he was not prepared to discuss the specific provisions of the written contract excerpted in his filings and how they did or did not apply to the documents in question. The protective order states that "[t]he burden of persuasion in [a confidentiality] challenge proceeding shall be on the Designating Party." Protective Order ¶ 6.3. The moving parties have failed to persuade.

Now let's turn to the first category of documents, the six financial documents that the moving parties state contain their financial information. For these documents, the moving parties state that the confidential information is their own, so they are not relying on promises to keep somebody else's information confidential. These documents are bids, purchase orders and invoices that describe products (such as how big they are and what they are made out of) and the price for them. These documents are between five and six years old. At oral argument, the moving parties stated that all of the projects at issue have been completed.

It's hard to see how these documents are confidential. They don't relate to ongoing or upcoming projects, where the disclosure of bids could unfairly harm the moving parties. At oral argument, the moving parties argued that profit margin could be inferred from these documents.

8

There is nothing in the documents themselves that discusses profit margin, but maybe someone with background in this specific industry could look at the product specifications and estimate a production cost and from that infer a profit margin. That doesn't change the fact that this information is stale.

The Court also considers the moving parties' conduct in making these confidentiality designations. The protective order requires the "Exercise of Restraint and Care in Designating Material for Protection." Protective Order ¶ 5.1. It states that "[m]ass, indiscriminate, or routinized designations are prohibited." *Id*. Here, Johnson made a blanket confidentiality designation of every single document he produced. If Johnson had made some attempt to distinguish some financial documents that were truly confidential from others that were not, the Court would at least have the benefit of Johnson's own distinctions, which would have some evidentiary utility. But the indiscriminate designation of everything, no matter what or how stale, combined with a very high-level explanation of competitive harm – someone could figure out profit – suggests that no real thought went into these confidentiality designations. Thus, as to the six financial documents at issue, the moving parties have similarly failed to persuade.

KBFAA and Johnson's administrative motion to retain confidentiality designations, ECF No. 100, is **DENIED**.

**IT IS SO ORDERED.**

Dated: January 9, 2020

THOMAS S. HIXSON
United States Magistrate Judge