1   MARC N. BERNSTEIN (SBN 145837)
    mbernstein@blgrp.com
2   RICHARD A. DE LIBERTY (SBN 203754)
    rdeliberty@blgrp.com
3   THE BUSINESS LITIGATION GROUP, P.C.
    150 Spear Street, Suite 800
4   San Francisco, CA 94105
    Telephone: 415.765.6633
5   Facsimile: 415.283.4804

6   Attorney for Defendant and Counterclaimant
    KEN GANGBAR STUDIO INC.
7

8                UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                    OAKLAND DIVISION

11

12
    KEVIN BARRY FINE ART ASSOCIATES,        Case No.  4:18-CV-03358-HSG (TSH)
13  a California corporation,

14
            Plaintiff,
15                                          FIRST AMENDED
16          v.                              COUNTERCLAIMS OF KEN
                                            GANGBAR STUDIO INC.
17  KEN GANGBAR STUDIO INC., a
18  Canadian corporation,                   DEMAND FOR JURY TRIAL

19          Defendant.                      Complaint Filed: June 6, 2018

20

21

22

23

24

25

26

27

28

---

KGSI's 1st Amended Counterclaims                    No. 4:18-cv-03358-HSG

1    KEN GANGBAR STUDIO INC., a
2    Canadian corporation,

3          Counterclaimant,

4          v.

5

6    KEVIN BARRY FINE ART ASSOCIATES,
     KEVIN A. BARRY, RICHARD
7    MCCORMACK DESIGN D/B/A STUDIO
     MCCORMACK, RICHARD
8    MCCORMACK, JOHN JOHNSON,
9    CHC BAYVIEW OWNER, LLC, HOST
     HOTELS & RESORTS, INC., GRILL
10   CONCEPTS, INC., DAVIDSON HOTELS
     & RESORTS, INC., DAVIDSON HOTEL
11   COMPANY LLC, THE SHAKOPEE
12   MDEWAKANTON SIOUX
     COMMUNITY, THE IRVINE COMPANY
13   LLC, REMINGTON HOTELS, LLC,
14   MUFG UNION BANK, N.A., VSE
     PACIFIC, INC., DEFOOR BROTHERS
15   LLC, DOES 1-20, and ABC
16   CORPORATIONS 1-20,
17
          Counterclaim Defendants.
18

19

20

21

22

23

24

25

26

27

28

**KGSI's 1st Amended Counterclaims**                    **No. 4:18-cv-03358-HSG**

Defendant Ken Gangbar Studio Inc. (KGSI) amends its counterclaims against Plaintiff Kevin Barry Fine Art Associates (KBFAA) and the other counterclaim defendants, and adds new counterclaim defendants, as follows:

## AMENDED COUNTERCLAIMS

For over a decade and likely two, Kevin Barry, his companies, and others have run their art brokerage through a pattern of criminal copyright infringement. They target desired artworks, make counterfeit copies, and sell them, often *en masse*, to hotel chains, restaurants, resorts, and others. These sales are made for the counterclaim defendants' private financial gain and commercial advantage.

Among the many artworks thus targeted have been the organic and emotionally-resonant wall sculptures of international commercial artist Ken Gangbar. (*See* Exhibits A - D.) Ken Gangbar Studio Inc. (KGSI) owns the copyrights to these works.

The infringing works created by Mr. Barry, his companies, and their agents were commissioned and purchased by hospitality and other venues across the country, where they have been placed on public display.

Accordingly, KGSI now counterclaims against Mr. Barry, Kevin Barry Fine Art Associates (KBFAA), and the other counterclaim defendants as follows:

## JURISDICTION

1.      This counterclaim arises under the United States Copyright Act, 17 U.S.C. §§ 101 *et seq.*, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

2.      The Court has personal jurisdiction over each counterclaim defendant because each of them either resides in California, committed the acts described here in California, or committed the acts described here purposefully in concert with

1    counterclaim defendants who live here and who have here committed the acts

2    complained of in these counterclaims.

3                                    **VENUE**

4        3.      Venue is proper in this district for plaintiff and counterclaim defendant

5    Kevin Barry Fine Art Associates under 28 U.S.C. § 1391(b), 1400(a), and 18 U.S.C.

6    § 1965 because, among other grounds, a substantial part of the events or omissions

7    giving rise to the counterclaims against it occurred here, because both it and its

8    agents may be found here, because it transacts its affairs here, and because it chose

9    this district in which to file its declaratory judgment complaint.

10       4.      Venue is proper in this district for counterclaim defendant Kevin Barry

11   under 28 U.S.C. § 1391(b), 1400(a), and 18 U.S.C. § 1965 because, among other

12   grounds, a substantial part of the events or omissions giving rise to the counterclaims

13   against him occurred here, because both he and his agents may be found here,

14   because he transacts his affairs here, and because he did not timely object to venue in

15   response to the original counterclaim in this action, and has thus waived a venue

16   challenge.

17       5.      Venue is proper in this district for counterclaim defendants John

18   Johnston, Richard McCormack Design d/b/a Studio McCormack (Studio

19   McCormack), and Richard McCormack, an individual, because on information and

20   belief they transact their affairs here, because they may be found here, and because

21   they did not timely object to venue in response to the original counterclaim in this

22   action, and have thus waived a venue challenge.

23       6.      Venue is proper in the district for the remaining counterclaim

24   defendants under 28 U.S.C. 1400(a), because they or their agents may be found here

25   by virtue of their contacts within this district, in furtherance of the infringements

26   alleged here, with KBFAA, Kevin Barry, and the agents of each of them here,

27   including KBFAA's San Francisco division, Kevin Barry Fine Art of San Francisco,

28   and its San Francisco-based personnel.

1

**INTRADISTRICT ASSIGNMENT**

2

7.      This action has been assigned to the Oakland Division.

3

**PARTIES**

4

**A.      The Counterclaimant**

5

8.      Ken Gangbar Studio Inc. (KGSI) is an Ontario corporation located in

6

Toronto, Canada.

7

**B.      The Barry and McCormack Counterclaim Defendants**

8

9.      Kevin Barry Fine Art Associates (KBFAA) is a California Corporation

9

with offices in Santa Monica, California.

10

10.      Kevin Barry is an individual who lives in Agoura Hills, California.

11

11.      Richard McCormack Design d/b/a Studio McCormack (Studio

12

McCormack) is a California Corporation with offices in Costa Mesa, California.

13

12.      Richard McCormack is an individual who, on information and belief,

14

lives in Costa Mesa, California.

15

13.      John Johnson is an individual who lives in Indianapolis, Indiana.

16

14.      This counterclaim will refer to these counterclaim defendants as the

17

Barry and McCormack Counterclaim Defendants.

18

**C.      The Commissioning Counterclaim Defendants**

19

15.      Host Hotels & Resorts, Inc. (Host Hotels), formerly named in this action

20

as ABC Corporation 1, is a Maryland Corporation.

21

16.      CHC Bayview Owner, LLC (CHC Bayview), formerly named in this

22

action as ABC Corporation 2, is a Delaware limited liability company with

23

headquarters in Newport Beach, California.

24

17.      Grill Concepts, Inc., formerly named in this action as ABC

25

Corporation 3,  is a California Corporation.

26

18.      Davidson Hotels & Resorts, Inc. (Davidson Inc.), formerly named in

27

this action as ABC Corporation 4, is a corporation headquartered in Atlanta, Georgia

28

whose chartering state is currently unknown to KGSI.

4

19.     Davidson Hotel Company, LLC (Davidson LLC), formerly named in this action as ABC Corporation 5, is a Delaware limited liability company headquartered in Atlanta, Georgia.

20.     The Shakopee Mdewakanton Sioux Community (SMSC), formerly named in this action as ABC Corporation 6, is a federally-recognized Native American tribe located in Minnesota, including southwest of Minneapolis and Saint Paul, Minnesota.

21.     The Irvine Company LLC (Irvine), formerly named in this action as ABC Corporation 7, is a Delaware Limited Liability Company headquartered in Newport Beach, California.

22.     Remington Hotels, LLC (Remington), formerly named in this action as ABC Corporation 8, is a Delaware Limited Liability Company with headquarters in Dallas, Texas.

23.     MUFG Union Bank, N.A. (Union Bank), formerly named in this action as ABC Corporation 9, and previously known as Union Bank of California, N.A., is a nationally-chartered U.S. bank once headquartered in San Francisco and with major banking and administrative operations in San Francisco and Northern California.

24.     VSE Pacific, Inc. (VSE), formerly named in this action as ABC Corporation 10, is a Florida corporation registered with the California Secretary of State to do business in California, and with headquarters in Orlando, Florida.

25.     DeFoor Brothers LLC (DeFoor), formerly named in this action as ABC Corporation 11, is a Tennessee Limited Liability Company with headquarters in Chattanooga, Tennessee.

26.     This counterclaim will refer to these newly-added counterclaim defendants, those formerly named as ABC Corporations 1-11, as the Commissioning Counterclaim Defendants.

**D.      Doe and ABC Counterclaim Defendants**

27.      Does 1-20 are individuals whose names and identities KGSI does not presently know, but who, on information and belief, committed or facilitated the copyright infringement and other acts or omissions alleged below.  KGSI will add the names and identities of these Doe defendants when it learns them.

28.      ABC Corporations 12-20 are business entities or unincorporated associations, whose names, states of organization or incorporation, and entity types KGSI does not presently know, but which, on information and belief, committed or facilitated the copyright infringement and other acts or omissions alleged below. KGSI will add the names and identities of these business entities or unincorporated associations when it learns them.

## GENERAL ALLEGATIONS

**E.      Infringement by the Barry and McCormack
Counterclaim Defendants**

29.      Kenneth L. Gangbar is an internationally-known commercial artist who specializes in sculptural and installation artwork that has an affecting, organic feel. Often using ceramics, Mr. Gangbar's work is inspired by the intricate, cyclical patterns of nature.  Galleries of his work can be found at www.kengangbar.com. Color reproductions of copyrighted works whose infringement is alleged here (the Copyrighted Works) are attached as Exhibits A, B, C, and D.

30.      Mr. Gangbar's works have been commissioned by clients all over the world, from Kuala Lumpur to Doha, from Sydney to Mumbai, and from to Paris to Palo Alto.  They appear in some of the world's most prestigious hotels and restaurants, including the Four Seasons Hotel in Hong Kong, the Nobu Restaurant in Doha, Qatar, and the Fairmont Hotel in Singapore.  Mr. Gangbar's work also appears on the walls of a prominent aviation hangar at the San Diego International Airport, and in one of the world's largest cruise ships, *Norwegian Joy*.

1      31.     The copyrights to all of Mr. Gangbar's original artworks have been

2  assigned to counterclaimant Ken Gangbar Studio Inc.

3      32.     On August 13, 2013, KBFAA sales agent Andrew Swarthout emailed

4  Mr. Gangbar, attaching photographs of a pair of Mr. Gangbar's wall sculptures,

5  including one entitled, *Star*.  The image of *Star* that Mr. Swarthout attached to this

6  August 2013 email accompanies this pleading as Exhibit E.

7      33.     Mr. Swarthout said his "customer is looking to commission something

8  similar to the attached piece," and asked Mr. Gangbar to quote a price to create such

9  a work.  Mr. Gangbar responded with the requested quote.

10      34.     But Mr. Gangbar did not hear back from Mr. Swarthout.  In the months

11  that followed, Mr. Gangbar sent Mr. Swarthout follow-up e-mails, in November 2013

12  and again in January 2014, asking about the status of the project.  Mr. Swarthout

13  responded noncommittally, stating he did not know the project's status, and

14  purporting to be seeking information from the customer.

15      35.     Ultimately the correspondence with Mr. Swarthout ended.

16  Mr.  Gangbar assumed the project never came to fruition.

17      36.     What Mr. Gangbar did not know then, but has since learned, is that

18  Mr. Swarthout, his colleagues, and his company used an alternative, and unlawful,

19  means of securing and selling Mr. Gangbar's work.  In the months and years

20  following Mr. Swarthout's request for a price quote—and for all KGSI knows also in

21  the months and years before then—Mr. Swarthout, Mr. Barry, Kevin Barry Fine Art

22  Associates, John Johnson, and others by-passed Mr. Gangbar altogether, creating,

23  marketing, and selling their own, unauthorized, copies of Mr. Gangbar's works.

24  These counterfeit copies were sold to purchasers across the United States.

25      37.     Mr. Gangbar does not currently know the complete list of infringing

26  copies of his works.  But the Barry and McCormack Counterclaim Defendants made

27  and sold infringing copies at least to The Ritz Prime Seafood restaurant in Newport

28  Beach, California; The Bayview Marriott in Newport Beach, California; The Franklin

**KGSI's 1st Amended Counterclaims**                    **No. 4:18-cv-03358-HSG**

Marriott in Franklin, Tennessee; the JW Marriott at the Mall of America in Minneapolis, Minnesota; the Villas at Playa Vista – Sausalito apartments in Playa Vista, California; the Crowne Plaza Annapolis hotel in Annapolis, Maryland; a Union Bank branch in Tempe, Arizona; the Westin Nanea Ocean Villas Resort on Maui in Hawaii; and the Westin Chattanooga hotel in Chattanooga, Tennessee. All of these infringing copies were then put on public display by the purchasers. The Ritz Prime Seafood restaurant has since been sold. But it benefited for at least a year from the public display of its infringing artwork.

38.     The work placed on The Ritz Prime Seafood wall was selected for placement there by counterclaim defendants Rick McCormack and his interior design company, Studio McCormack. Mr. McCormack had circulated a copy of one of Mr. Gangbar's copyrighted works, with Mr. Gangbar's name visible on the circulated photograph, to several art dealers, seeking bids to commission a copy of the work. Kevin Barry and KBFAA responded with the low bid, and were given the job.

39.     Until late January 2017, Mr. Gangbar had no idea that KBFAA, Mr. Barry, or anyone else was illegally copying, displaying, or selling his artwork. Then, in late January 2017, Mr. Gangbar received a promotional e-mail from KBFAA, spotlighting a number of "art solutions" it had created for its hospitality customers. Included among these were photographs of the copy of Mr. Gangbar's work at The Ritz Prime Seafood Restaurant.

40.     Upon Mr. Gangbar's discovery of this infringing copy, he began searching online for other infringing images. He turned up three other infringing works on websites owned or maintained by KBFAA. Mr. Gangbar later learned of a total of at least nine infringing copies of his artwork sold by Kevin Barry, KBFAA, and, on information and belief, other counterclaim defendants, both named and to-be-named.

41.     Exhibit F is an example of an infringing sculptural work created and sold without authorization by, among others, counterclaim defendants Kevin Barry

1   and KBFAA.  On information and belief, this is a photograph of a wall sculpture they

2   sold to the Bayview Marriott in Newport Beach, California, and that they installed in

3   the lobby and reception area of that hotel.  This sculpture infringes at least KGSI's

4   copyright registration for the work, *Star*.  Images of *Star* appear in Exhibit B.

5       42.     Counterclaim defendant John Johnson designed all of the infringing

6   artworks identified in this counterclaim, and hand crafted and installed most of

7   them.

8       43.     In addition to selling infringing physical replicas of Mr. Gangbar's

9   copyrighted sculptural artworks, counterclaim defendants Kevin Barry, KBFAA, and

10  potentially others created two-dimensional artists' renderings showing infringing

11  copies of Mr. Gangbar's work superimposed into photographs of the customers'

12  proposed installation sites.  These infringing artists' renderings were then used to

13  support sales of infringing sculptures.  In addition, in at least one instance and likely

14  others, the artists' renderings were uploaded to the Internet and used by a KBFAA

15  customer, a hotel, to market itself for guest bookings.  In the screenshot and closeup

16  detail attached as Exhibit G, the Westin Nanea Ocean Villas resort on Maui displays a

17  picture of the hotel's dining area featuring an infringing copy of at least

18  Mr. Gangbar's registered work, *Swish*.  A button on the web page encourages

19  travelers to "Book Now."  (*Id.*)  Photographs of Mr. Gangbar's work, *Swish*, appear

20  in Exhibit A.

21  **F.     Infringement by The Commissioning Counterclaim
        Defendants**

22

23      44.     Commissioning Counterclaim defendants (1) Host Hotels, (2) CHC

24  Bayview, (3) Grill Concepts, (4) Davidson Inc. and Davidson LLC, (5) SMSC,

25  (6) Irvine, (7) Remington, (8) Union Bank, (9) VSE, and (10) DeFoor infringed one or

26  more of the  Copyrighted Works by doing at least the following: selecting,

27  commissioning, purchasing, and installing for public display the infringing artworks

28  found, respectively, at (1) the Bayview Marriott in Newport Beach, California; (2) the

9

Ritz Prime Seafood restaurant in Newport Beach, California; (3) the Franklin Marriott in Franklin, Tennessee; (4) the JW Marriott at the Mall of America in Minneapolis, Minnesota; (5) the Villas at Playa Vista – Sausalito apartments in Playa Vista, California; (6) the Crowne Plaza Annapolis hotel in Annapolis, Maryland; (7) a Union Bank branch in Tempe, Arizona; (8) the Westin Nanea Ocean Villas Resort on Maui in Hawaii, and, in the case of the artist's rendering of *Swish* described above, on a webpage marketing the resort; and (9) the Westin Chattanooga hotel in Chattanooga, Tennessee.

### G.    Pattern of Past Willful Copyright Infringement

45.    The many above instances of willful copyright infringement were not KBFAA's or Mr. Barry's first.  Their past is filled with strikingly similar incidents, stretching back close to two decades, if not further.  Mr. Barry or his agents approach artists or their representatives, seeking to buy the right to mass-produce and sell their work.  The artists or representatives either decline, or else quote a price Mr. Barry or his agent find too steep.  Mr. Barry or the agent then simply copy and sell the work anyway.

46.    Below is a partial list of such episodes of willful copyright infringement for commercial advantage and private financial gain.

### 1.    Brennie Brackett

47.    Brennie Brackett is an accomplished Northern California pastel artist. Sometime before 2008, Mr. Barry purchased a high-quality, limited-edition print, called a "giclée," of each of three of Ms. Brackett's still lifes: *Falling Into Place*, *Winter's Velvet*, and *Great Expectations*.  Mr. Barry asked Ms. Brackett's art broker whether he could mass-produce inexpensive, lower-quality copies of these works.  Unbeknownst to the broker, Mr. Barry had by then already promised the prints to Hilton Hotels Corporation, which wanted large quantities of them for its Homewood Suites chain of extended-stay hotels.  Ms. Brackett's original giclées sold for $475 - $500 each. Barry offered $5 per print.  Ms. Brackett's broker told Mr. Barry in no uncertain terms

1  that Ms. Brackett would not be interested in selling Mr. Barry the rights to mass-

2  produce and sell her artwork.

3        48.     Mr. Barry then copied and sold the prints anyway.  In 2006, he hired a

4  printing company to create images of the prints.  At Mr. Barry's direction, the printer

5  hired an artist to photoshop very minor changes to each work.  Mr. Barry then

6  ordered 1,144 infringing copies.  He sold 934 of them to Hilton, filling out the sales

7  paperwork with fictitious artists' names, including "Smith" and "Johnson."  When

8  Ms. Brackett discovered the infringement and, through counsel, confronted

9  Mr. Barry about what he had done, he ordered the remaining 210 infringing copies

10  destroyed.  By then, nearly 1,000 inferior-quality prints of Ms. Brackett's paintings

11  hung on the walls of Homewood Suites hotel rooms across the United States.

12  Attached to this counterclaim as Exhibit H are images of two of Ms. Brackett's

13  original works, *Falling Into Place* and *Great Expectations*, placed side-by-side with the

14  photoshopped copies KBFAA and Mr. Barry mass-produced and sold to Hilton.

15             **2.**      **Woodward Payne**

16        49.     Around the same time KBFAA and Mr. Barry illegally copied and sold

17  Brennie Brackett's artworks, they and their co-conspirators also altered, copied, and

18  commercialized the work of Northern California artist Woodward Payne.  Once

19  again, Mr. Barry, KBFAA, and their agents began by purchasing a still-life of

20  Mr. Payne's.  The print was then given or sold to Hilton for placement on the wall of

21  a model hotel room offered for sale to Homewood Suites franchisees.  Only after

22  Hilton had selected the print did Mr. Barry and his company seek permission to

23  reproduce and sell copies of it.  When that permission was denied, Mr. Barry and

24  KBFAA simply hired an artist to create a substantially similar copy.  Exhibit I to this

25  counterclaim is a comparison of two of Mr. Payne's original artworks to the

26  infringing copy offered for sale in the Homewood Suites model hotel room.

27

28

1

### 3.   Victoria Ryan; Kevin Barry's Confession

2    50.   Victoria Ryan is longtime painter.  She works in soft pastels, oils, and

3  other media.  In 2006 or 2007, Mr. Barry, KBFAA, and others working at their behest

4  purchased giclée prints of Ms. Ryan's work.  In the summer of 2007, Mr. Barry called

5  Ms. Ryan and asked whether he could sell offset prints of certain of her artworks,

6  including a work entitled *Early Dawn*.  Ms. Ryan said no.  She said she was interested

7  only in selling high-quality giclées of her work, not inferior-quality offset prints.

8  Some months later, in January 2008, Mr. Barry again pressed Ms. Ryan for

9  permission to resell her artwork as offset prints.  He offered her $5 a print.  Ms. Ryan

10  again declined.  Mr. Barry continued to press her, saying he was working with Hilton

11  Hotels' Homewood Suites division, and that Hilton had already chosen the three

12  pieces he had shown them.  Mr. Barry said the Hilton buyers had already made up

13  their minds.

14    51.   With Mr. Barry speaking as though Hilton had already purchased

15  Ms. Ryan's artworks, Ms. Ryan began to search on the Internet.  There she found

16  Homewood Suites web pages featuring *Early Dawn*.  She also saw model hotel rooms

17  offered to Homewood Suites franchisees featuring artworks she recognized as

18  altered versions of the work of Brennie Brackett and Woodward Payne.  When in

19  February 2008 Mr. Barry again called Ms. Ryan to press her to sell him her work, she

20  confronted him about her discovery.  Mr. Barry readily admitted his unauthorized

21  use of Ms. Brackett's, Mr. Payne's, and Ms. Ryan's prints.  He also admitted his

22  subtle alteration of Ms. Brackett's and Mr. Payne's prints before selling them to

23  Hilton.  But he denied altering Ms. Ryan's works before offering them to Hilton: "I

24  did it [altering the works] to Brennie and I did it to Woody [Woodward Payne], but I

25  didn't do it to you."  When Ms. Ryan told Mr. Barry his actions were wrong, he

26  readily agreed: "I know, I know it was wrong."  Mr. Barry said he "had no choice,"

27  that his "back was against the wall."  He said the hotel approval process was a

28  lengthy one and it was already underway.  He said the artists whose works he had

1  used in the process had all refused him permission to sell their work.  Mr. Barry

2  suggested his use of unauthorized copies of artists' works was vindicated by his

3  success closing sales.  "It's business," he said.

4        52.    Ms. Ryan's work, *Early Dawn*, was, as noted, among those on public

5  display, without permission, on the Homewood Suites web pages.  In addition, KGSI

6  is informed and believes and on that basis alleges that Mr. Barry and KBFAA made

7  other infringing copies and sales of Victoria Ryan's copyrighted artwork.

8             **4.     Carol Bergman**

9        53.    In or around 2006, Mr. Barry and KBFAA were unable to conclude

10  negotiations to buy the works of an artist named Carol Bergman.  Mr. Barry

11  commissioned another artist to create altered copies of the works.  He then sold over

12  500 of the infringing copies to Hilton for its Doubletree Hotel in Bethesda, Maryland.

13             **5.     Kaoru Mansour**

14        54.    Around that same time, Mr. Barry, KBFAA, and their agents sold the

15  work of prominent Los-Angeles-area artist Kaoru Mansour for use in Hollywood

16  television productions.  Mr. Barry had previously been specifically warned, in

17  person, by Ms. Mansour's exclusive agent for television and movie work, not to sell

18  Ms. Mansour's art for this purpose.  Stunned to see the work appear on television,

19  Ms. Mansour and her agent investigated and learned that Mr. Barry had sold the

20  work for resale to a television production company.  Invoices for the work bore a

21  false name: "Koury," the name of a prominent Bay-Area artist.  Ms. Mansour was

22  paid a cash settlement.

23             **6.     Antonio Dojer**

24        55.    In 2002, Mr. Barry commissioned an artist to paint a virtually-identical

25  copy of a work by artist Antonio Dojer, then made and sold 188 copies.  Mr. Dojer's

26  exclusive agent happened upon one of the paintings on a chance visit to the

27  Huntington Beach Hyatt Hotel, where the work was prominently displayed.  When

28  confronted with a demand letter from the agent, Mr. Barry paid a cash settlement.

1  **H.**   **Vicarious Liability, Agency, Aiding and Abetting**

2  56.   On information and belief, in committing the acts or omissions alleged

3  in this counterclaim, each counterclaim defendant conspired with, aided and abetted,

4  or acted in concert with each other, and each acted as the agent of each other.  Under

5  principles of *respondeat superior*, employer counterclaim defendants are liable for the

6  acts and omissions of their employees.

7

8  **FIRST COUNTERCLAIM**

9  **(Copyright Infringement — Against All Defendants)**

10  57.   KGSI incorporates the prior paragraphs of this counterclaim as though

11  fully set forth here.

12  58.   KGSI is the sole registered owner of all right, title, and interest in the

13  Copyrighted Works, which comprise *Swish*, U.S. Copyright Registration No. VA 2-

14  072-663, *Star*, U.S. Copyright Registration No. VA 2-072-662, *Palomar*, U.S.

15  Copyright Registration No. VA 2-090-607, and *Fin Wave*, U.S. Copyright Registration

16  No. VA 2-072-661.  Copies of these copyright registrations are attached as Exhibit J.

17  59.   By, among other things, duplicating, distributing, publicly displaying,

18  and/or creating derivative works of the Copyrighted Works, the counterclaim

19  defendants, and each of them, directly infringed KGSI's copyrights, in violation of

20  the copyright laws of the United States, including 17 U.S.C. section 101 *et seq.*

21  60.   The counterclaim defendants have also contributorily and/or

22  vicariously infringed KGSI's copyrights in the Copyrighted Works.

23  61.   For example, by selling sculptural installations they knew to be

24  infringing to hotels and other public spaces, Kevin Barry and KBFAA committed

25  contributory infringement for the resulting public displays of these works.  And by

26  commissioning the reproduction and distribution of copies of some all of the

27  Copyrighted Works, the Commissioning Counterclaim Defendants committed

28  contributory and/or vicarious infringement of those Works.

62.     As another example, Richard McCormack and his company, Studio McCormack, vicariously infringed KGSI copyrights.  They had the right and the ability to supervise and control the selection of artwork to be purchased and placed at The Ritz Prime Seafood.  They selected an infringing copy of Mr. Gangbar's work.  And they financially benefitted from the sale.

63.     At least the Barry and McCormack Counterclaim Defendants' acts of direct, vicarious, and contributory infringement were intentional, willful, and malicious, and performed with knowledge that the works they or others were copying, selling, publicly displaying, or creating derivative works of were copyrighted works whose copyright they did not own and for which they lacked authorization to act as they acted, all in reckless disregard of KGSI's rights.

64.     The natural, probable, proximate, and foreseeable result of counterclaim defendants' wrongful conduct was to damage KGSI, and to secure profits for themselves.

65.     KGSI is entitled to disgorge these profits, and to recover its actual damages, all in an amount to be determined at trial.  KGSI is also entitled to a permanent injunction prohibiting continuing or future infringement of his rights, and/or ordering the destruction of infringing works.

## SECOND COUNTERCLAIM

### (Civil RICO — Against KBFAA and Kevin Barry Only)

66.     KGSI incorporates the prior paragraphs of this counterclaim as though fully set forth here.

67.     On information and belief, Kevin Barry Fine Art Associates operates in close association with affiliated entities owned or controlled by Kevin Barry (the KBFAA Entities).  The KBFAA Entities include, on information and belief, Kevin Barry Fine Art Associates of Nevada, Inc. and Kevin Barry Fine Art – San Francisco.

68.     Each KBFAA Entity is an "enterprise" engaged in "interstate commerce," and affecting interstate commerce, as those terms are defined and used

15

in 18 U.S.C. sections 1961(4) and 1962(c).  For example, infringing artwork has been marketed and sold by these entities to hotels and restaurants across the U.S.

69.     Alternatively, there is a broader enterprise (the Broader Enterprise) that consists of an association-in-fact of members who have functioned for years as a continuing unit for the common purpose of achieving the activities described in this counterclaim, including obtaining commercial advantage and private financial gain via willful copyright infringement.  The Broader Enterprise includes at least Kevin Barry, KBFAA, and other entities and individuals working with them.

70.     The Broader Enterprise is an "enterprise" engaged in "interstate commerce," and its activities affect interstate commerce, as those terms are defined and used in 18 U.S.C. sections 1961(4) and 1962(c).  For example, infringing artwork has been marketed and sold by the Broader Enterprise to hotels and restaurants across the U.S.

71.     Through the conduct described above, including willful copyright infringement of KGSI's works for purposes of commercial advantage and private financial gain, and reproduction and distribution during a 180-day period of multiple copyrighted works with a total retail value of over $1,000, individual and entity counterclaim defendants who are employed by or associated with one or more of the KBFAA Entities conspired to, and did, conduct or participate in the conduct of the affairs of the KBFAA Entities with which they are associated, or by whom they are employed, through a pattern of racketeering activity, all in violation of 18 U.S.C. sections 1962(c) and (d).

72.     In addition or in the alternative, through the conduct described above, including willful copyright infringement of KGSI's works for purposes of commercial advantage and private financial gain, and reproduction and distribution during a 180-day period of multiple copyrighted works with a total retail value of over $1,000, individual or entity counterclaim defendants who are employed by or associated with the Broader Enterprise conspired to, and did, conduct or participate

16

1    in the conduct of the affairs of the Broader Enterprise through a pattern of

2    racketeering activity, all in violation of 18 U.S.C. sections 1962(c) and (d).

3           73.    KGSI has suffered injury directly and foreseeably by reason of the

4    counterclaimants' violations of 18 U.S.C. § 1962, in an amount to be determined at

5    trial.  KGSI is entitled to compensation for these damages, and for treble damages

6    and costs of suit, including reasonable attorneys' fees, all under 18 U.S.C. § 1964(c).

7

8                                **PRAYER FOR RELIEF**

9           KGSI prays for judgment against the counterclaim defendants, and each of

10   them, jointly and severally, as follows:

11          a.   for copyright damages, including KGSI's actual damages and the

12               counterclaim defendants' profits;

13          b.   for treble damages against Kevin Barry and KBFAA under 18 U.S.C.

14               § 1964(c)

15          c.   for KGSI's costs and attorneys' fees against Kevin Barry and

16               KBFAA, including under 18 U.S.C. § 1964(c);

17          d.   for pre- and post-judgment interest on all awards for which they are

18               available;

19          e.   for permanent injunctive relief prohibiting all counterclaim

20               defendants, their officers, agents, successors, and assigns, and all

21               persons acting in concert with them, from further acts of direct or

22               indirect copyright infringement;

23          f.   for an order against Kevin Barry and KBFAA under 18 U.S.C.

24               § 1964(a) requiring Kevin Barry, and any other counterclaim

25               defendant found to have conducted or participated in the conduct

26               of an enterprise's affairs through a pattern of racketeering activity,

27               to divest him- or herself of any interest, direct or indirect, in such

28               enterprise; and ordering that any such person further be prohibited

                                        17

1       from engaging in art brokerage or dealership, permanently or for a

2       period of years; and ordering the dissolution or reorganization of

3       any such enterprise, making due provision for the rights of innocent

4       persons;

5     g.  for an order requiring the destruction of the infringing works;

6     h.  for punitive damages against Kevin Barry and KBFAA; and

7     i.  for such other relief as the Court deems just and proper.

8

9                **DEMAND FOR JURY TRIAL**

10     KGSI demands a jury trial on all issues qualifying for one.

11

12 RESPECTFULLY SUBMITTED,

13

14 DATED:  January 24, 2020         THE BUSINESS LITIGATION GROUP, P.C.

15

16                By:       */s/Marc N. Bernstein*

17                     Marc N. Bernstein

18                Attorneys for Defendant & Counterclaimant

19                KEN GANGBAR STUDIO INC.

20

21

22

23

24

25

26

27

28

Exh. A

Swish









Exh. B

Star







Exh. C









Exh. D

Fin Wave





Exh. E



Exh. F





Exh. G

## The Westin Nanea Ocean Villas, Ka'anapali

**PHOTO GALLERY**     **GUEST GALLERY**



Hotel

Rooms

Location

Services & Amenities

**Dining**



BOOK NOW

DINING PHOTO 5 OF 7 | RESTAURANT



Exh. H

Brennie Brackett Originals and KBFAA Version of *Falling Into Place*:

 

Brennie Brackett Originals and KBFAA Version of *Great Expectations*:

 

Exh. I

Woodward Payne Originals and KBFAA Versions of Aerial



Spring Aerial I



Homewood Suites rendition



Spring Aerial II



Exh. J

## Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*[signature]*

Acting United States Register of Copyrights and Director

**Registration Number**

## VA 2-072-663

**Effective Date of Registration:**
October 24, 2017

---

## Title

**Title of Work:** Swish

## Completion/Publication

**Year of Completion:** 2012
**Date of 1st Publication:** August 01, 2012
**Nation of 1st Publication:** Canada

## Author

- **Author:** Kenneth Louis Gangbar
  **Author Created:** sculpture
  **Work made for hire:** No
  **Citizen of:** Canada
  **Domiciled in:** Canada
  **Year Born:** 1966

## Copyright Claimant

**Copyright Claimant:** Ken Gangbar Studio, Inc.
142 Cawthra Avenue #201, Toronto, ON, M6N 3C2, Canada
**Transfer statement:** By written agreement

## Rights and Permissions

**Organization Name:** Ken Gangbar Studio Inc.
**Email:** ken@kengangbar.com
**Telephone:** 4165324284
**Alt. Telephone:** 4167041284
**Address:** 142 Cawthra Avenue #201
Toronto, ON M6N 3C2 Canada

## Certification

**Name:** Lizbeth Hasse

**Date**:   October 24, 2017

## Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Karyn Temple Claggett*

Acting United States Register of Copyrights and Director

**Registration Number**

## VA 2-072-662

**Effective Date of Registration:**
October 24, 2017

---

## Title

**Title of Work:** Star

## Completion/Publication

**Year of Completion:** 2012
**Date of 1st Publication:** May 01, 2012
**Nation of 1ˢᵗ Publication:** Canada

## Author

- **Author:** Kenneth Louis Gangbar
  **Author Created:** sculpture
  **Work made for hire:** No
  **Citizen of:** Canada
  **Domiciled in:** Canada
  **Year Born:** 1966

## Copyright Claimant

**Copyright Claimant:** Ken Gangbar Studio, Inc.
142 Cawthra Avenue #201, Toronto, ON, M6N 3C2, Canada
**Transfer statement:** By written agreement

## Rights and Permissions

**Organization Name:** Ken Gangbar Studio, Inc.
**Email:** ken@kengangbar.com
**Telephone:** 4165324284
**Alt. Telephone:** 4167041284
**Address:** 142 Cawthra Avenue #201
Toronto, ON M6N 3C2 Canada

## Certification

**Name:** Lizbeth Hasse

**Date**:   October 24, 2017

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Kaym Tugh Clayett*

Acting United States Register of Copyrights and Director

**Registration Number**

## VA 2-090-607

**Effective Date of Registration:**
December 13, 2017

## Title _____

**Title of Work:** Palomar

## Completion/Publication _____

**Year of Completion:** 2008
**Date of 1st Publication:** November 15, 2008
**Nation of 1st Publication:** Canada

## Author _____

- **Author:** Kenneth Louis Gangbar
**Author Created:** sculpture
**Work made for hire:** No
**Citizen of:** Canada
**Domiciled in:** Canada
**Year Born:** 1966

## Copyright Claimant _____

**Copyright Claimant:** Ken Gangbar Studio, Inc.
142 Cawthra Avenue #201, Toronto, ON, M6N 3C2, Canada
**Transfer statement:** By written agreement

## Rights and Permissions _____

**Organization Name:** Ken Gangbar Studio, Inc.
**Email:** ken@kengangbar.com
**Telephone:** 4165324284
**Alt. Telephone:** 4167041284
**Address:** 142 Cawthra Avenue #201
Toronto, ON M6N 3C2 Canada

## Certification _____

Page 1 of 2

**Name:**  Lizbeth Hasse
**Date:**   December 13, 2017

## Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Kayn Teyle Clayett*

Acting United States Register of Copyrights and Director

**Registration Number**

# VA 2-072-661

**Effective Date of Registration:**
October 24, 2017

---

## Title
_____

Title of Work: Fin Wave

## Completion/Publication
_____

Year of Completion: 2007
Date of 1st Publication: February 01, 2007
Nation of 1ˢᵗ Publication: Canada

## Author
_____

- Author: Kenneth Louis Gangbar
  Author Created: sculpture
  Work made for hire: No
  Citizen of: Canada
  Domiciled in: Canada
  Year Born: 1966

## Copyright Claimant
_____

Copyright Claimant: Ken Gangbar Studio, Inc.
142 Cawthra Avenue #201, Toronto, ON, M6N 3C2, Canada
Transfer statement: By written agreement

## Rights and Permissions
_____

Organization Name: Ken Gangbar Studio, Inc.
Email: ken@kengangbar.com
Telephone: 4165324284
Alt. Telephone: 4167041284
Address: 142 Cawthra Avenue #201
Toronto, ON M6N 3C2 Canada

## Certification
_____

Name: Lizbeth Hasse

Date:   October 24, 2017