UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN BARRY FINE ART ASSOCIATES,<br><br>Plaintiff,<br><br>v.<br><br>KEN GANGBAR STUDIO, INC.,<br><br>Defendant. | Case No. 18-cv-03358-HSG<br><br>**ORDER GRANTING MARRIOTT'S AND DESIGN FORCE'S MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 260, 267 |

On June 8, 2018, Plaintiff Kevin Barry Fine Art Associates ("KBFAA") brought this suit against Defendant Ken Gangbar Studio Inc. ("KGSI") for a declaratory judgment of non-infringement. *See* Dkt. No. 1 ("Compl.").[1] On August 7, 2018, KGSI submitted an answer and counterclaim against not only KBFAA but also its owner Kevin A. Barry, John Johnson, Richard McCormack, and Richard McCormack Design d/b/a Studio McCormack, asserting copyright infringement, as well as conspiracy to commit and substantive violations of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. *See* Dkt. No. 18. KGSI filed first amended counterclaims on January 24, 2020, listing an additional eleven counterclaim defendants. Dkt. Nos. 130, 133. On May 5, 2020, KGSI then filed a motion for leave to file second amended counterclaims, to include four additional counterclaim defendants (KBFAA of Nevada, Inc., Allison Barry, Marriott International Inc. ("Marriott"), and Design Force Corporation ("Design Force")), and identify additional artwork that was allegedly infringed. Dkt. No. 218. The Court granted the motion and KGSI filed its second amended counterclaims.

---

[1] Plaintiff also sought "costs of suit . . . including attorneys' fees," as well as "such other and further relief as the Court may deem just and proper." Compl. at 5–6.

*See* Dkt. Nos. 240 ("SACC"), 244.

Now pending before the Court are Marriott's and Design Force's motions to dismiss for lack of personal jurisdiction and improper venue, for which briefing is complete. *See* Dkt. No. 260 ("MMot."), 267 ("DMot."), 272 ("MOpp."), 275 ("DOpp."), 276 ("MReply"), and 279 ("DReply"). For the reasons detailed below, the Court **GRANTS** both Marriott's and Design Force's motions to dismiss for lack of personal jurisdiction.

## I. BACKGROUND

### A. KGSI's Allegations

KGSI alleges that "Kevin Barry, Allison Barry, their companies, and others have run their art brokerage though a pattern of criminal copyright infringement," by "target[ing] desired artworks, mak[ing] counterfeit copies, and sell[ing] them, often *en masse*, to hotel chains, restaurants, resorts, and others." SACC at 2. "Among the many artworks thus targeted have been the organic and emotionally-resonant wall sculptures of international commercial artist Ken Gangbar," and KGSI "owns the copyrights to these works." *Id.* Specific to Marriott and Design Force, the SACC makes the following allegations:

> Commissioning Counterclaim defendants (1) Host Hotels and CHC Bayview, (2) Grill Concepts, (3) Design Force, (4) Marriott International, (5) Irvine, (6) Remington, (7) Union Bank, and (8) VSE infringed one or more of the Copyrighted Works by doing at least the following: selecting, commissioning, purchasing, and installing for public display the infringing artworks found, respectively, at (1) the Bayview Marriott in Newport Beach, California; (2) the Ritz Prime Seafood restaurant in Newport Beach, California; (3) the Franklin Marriott in Franklin, Tennessee; (4) the JW Marriott at the Mall of America near Minneapolis, Minnesota; (5) the Villas at Playa Vista – Sausalito apartments in Playa Vista, California; (6) the Crowne Plaza Annapolis hotel in Annapolis, Maryland; (7) a Union Bank branch in Tempe, Arizona; (8) the Westin Nanea Ocean Villas Resort on Maui in Hawaii, and, in the case of the artist's rendering of Swish described above, on a webpage marketing the resort; and (9) the Westin Chattanooga hotel in Chattanooga, Tennessee.
>
> The infringing artwork placed and publicly displayed at the JW Marriott at the Mall of America near Minneapolis was selected for placement there by Design Force, which was hired, and paid $200,000 or more, to perform interior design services, including selection of hotel artwork, and further including, in particular, Design Force's selection of the infringing work purchased by the hotel and displayed, through today, in the hotel's public reception area. Design Force was directly assisted and abetted by Marriott International in its selection

2

> of the infringing artwork for placement at the hotel. A senior interior design manager at Marriott International specifically recommended that Design Force use KBFAA to purchase an artwork substantially similar to KGSI works for display at the hotel[.]
>
> As yet another example, Design Force and Marriott International vicariously infringed KGSI's copyrights. Each had the right and the ability to supervise and control the selection of artwork to be purchased and placed in at least the JW Marriott at the Mall of America, if not other venues. They selected an infringing copy of Mr. Gangbar's work for placement there. And each financially benefitted from its selection rights and duties. Design Force was paid hundreds of thousands of dollars for selecting artworks for the hotel, including the infringing work. Marriott International was paid by the hotel's owners to manage the hotel, including, on information and belief, assisting with the selection and approval of artwork placed in it, and including ensuring that artwork selected for the hotel met JW Marriott's brand standards. In performing these paid services, a senior interior design manager at Marriott International specifically guided Design Force to KBFAA and to a disk artwork substantially similar to KGSIs'.

*Id.* at ¶¶ 45, 46, 70. KGSI also alleges that "[t]he Court has personal jurisdiction over each counterclaim defendant because each of them either resides in California, committed the acts described here in California, or committed the acts described here purposefully in concert with counterclaim defendants who live here and who have here committed the acts complained of in these counterclaims." *Id.* at ¶ 2.

### B. Evidence in Support of Motions to Dismiss

#### i. Marriott

Michael L. Martinez, Senior Vice President and Associate General Counsel for Dispute Resolution at Marriott International, Inc., submitted a declaration in support of Marriott's motion. *See* Dkt. No. 260-1. Martinez explained that "Marriott is a Delaware corporation with its headquarters located in Bethesda, Maryland." *Id.* at ¶ 3. Martinez noted that "Marriott operates, franchises or licenses approximately seven thousand four hundred twenty properties worldwide in its portfolio of brands," where "[a]pproximately five hundred of the properties . . . are located in California." *Id.* at ¶¶ 5–6. Specifically, Martinez explained that it owns only ten properties, and none of those are located in California. *Id.* Additionally, while "thirty percent of Marriott's worldwide portfolio of properties are managed by Marriott," "[t]he remaining seventy percent . . . are franchised or licensed by Marriott but owned and managed by other persons or entities." *Id.* at

3

¶ 5.

### ii. Design Force

Bruce G. Davine, Chairman of the Board of Directors of Design Force, submitted a declaration in support of Design Force's motion. *See* Dkt. No. 267-1. Davine explained that "Design Force is a Colorado corporation with its headquarters and principal place of business and agent all located in Denver, Colorado." *Id.* at ¶ 2. The interior design company "has been engaged to design approximately three hundred fifty to five hundred projects," including "approximately thirty five to fifty projects for which the property was located in California." *Id.* at ¶¶ 3–4. As relevant to this case, Davine explained that Design Force was hired by a Minnesota-based contractor to provide interior design services for the JW Marriott MN. *Id.* at ¶ 5. After Marriott International, Inc. rejected Design Force's initial art source proposals, Davine noted that Marriot's design team suggested KBFAA based on their recent work on a "Marriott property in Tennessee." *Id.* at ¶ 6.

## II. LEGAL STANDARD

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Although the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (internal quotation marks omitted), the court must resolve conflicts between the facts contained in the parties' affidavits in plaintiff's favor. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When the court does not conduct an evidentiary hearing, the plaintiff need only make a prima facie showing of facts supporting personal jurisdiction to avoid dismissal. *See Myers v. Bennett Law Offices*, 238 F.3d 1068, 1071 (9th Cir. 2001).

Due process limits a court's power to "render a valid personal judgment against a nonresident defendant." *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). Where a state authorizes "jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States," as does California, *see* Cal. Civ. Proc. Code § 410.10, federal

4

1  courts must determine whether the exercise of jurisdiction over a defendant "comports with the
2  limits imposed by federal due process." *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014); *see*
3  *also Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) ("California's
4  long-arm statute . . . is coextensive with federal due process requirements, so the jurisdictional
5  analyses under state law and federal due process are the same."). To comport with due process, a
6  court may "exercise personal jurisdiction over an out-of-state defendant if the defendant has
7  'certain minimum contacts with [the State] such that the maintenance of the suit does not offend
8  traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A.*
9  *v. Brown*, 564 U.S. 915, 924 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316
10 (1945)) (internal quotation marks omitted); *see also Walden v. Fiore*, 571 U.S. 277, 286 (2014)
11 ("Due process requires that a defendant be haled into court in a forum State based on his own
12 affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by
13 interacting with other persons affiliated with the State.") (internal quotations omitted).
14     A plaintiff may invoke either general or specific personal jurisdiction. *Ranza v. Nike, Inc.*,
15 793 F.3d 1059, 1068 (9th Cir. 2015). "[G]eneral jurisdiction requires affiliations so continuous
16 and systematic as to render the foreign corporation essentially at home in the forum State, *i.e.*,
17 comparable to a domestic enterprise in that State." *Daimler*, 571 U.S. at 133 n.11 (internal
18 quotations, citations, and alterations omitted). To establish specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

24 *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Schwarzenegger*, 374 F.3d at 802).
25 The plaintiff bears the burden of satisfying the first two prongs of the test. *Schwarzenegger*, 374
26 F.3d at 802.
27 **III.    MARRIOTT'S MOTION TO DISMISS**
28     In considering a challenge to both personal jurisdiction and venue, a court generally

5

decides the issue of personal jurisdiction first. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) ("The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum."). Marriott argues KGSI fails to establish sufficient contacts such that the exercise of general or specific jurisdiction is appropriate. MMot. at 6–17. The Court analyzes each issue in turn.

### A. General Jurisdiction

It is not clear whether KGSI argues that the Court has general jurisdiction over Marriott. Nonetheless, the Court finds that it does not. Martinez explains that Marriott is incorporated in Delaware and headquartered in Maryland. *See* Dkt. No. 260-1 at ¶ 3. Of the 7,420 properties in its portfolio of brands, Marriott owns only ten, none of which are located in California. *Id.* at ¶¶ 5–6. Additionally, although Martinez notes that five hundred portfolio properties are located in California, he also says that only "thirty percent of Marriott's worldwide portfolio of properties are managed by Marriott" and "[t]he remaining seventy percent . . . are franchised or licensed by Marriott but owned and managed by other persons or entities." *Id.* at ¶ 5. Based on this information, the Court cannot say that Marriott's affiliations are so "continuous and systematic" as to render it "at home" in California. *See Daimler*, 571 U.S. at 139. Nor does Tsui-Ming Chen's declaration noting that Marriott is or has been a party in eighty actions within the Northern District of California change this outcome. *See* Dkt. No. 272-1.[2] There is no information provided about the role that Marriott has had in any of the litigation, the approximate dates of those cases, or whether the cases concern incidents that specifically occurred within California. The Court does not have general jurisdiction over Marriott.

### B. Specific Jurisdiction

A plaintiff can satisfy the minimum contacts prong by showing either that Marriott purposefully availed itself of the privilege of conducting activities in California or purposefully directed its activities towards California. *See Schwarzenegger*, 374 F.3d at 802. "A purposeful

---

[2] Ms. Chen is a paralegal at The Business Litigation Group, attorneys for KGSI.

availment analysis is most often used in suits sounding in contract," while "[a] purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Id.* A copyright infringement action sounds in tort. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). Accordingly, the Court will use the purposeful direction analysis. To establish purposeful direction, KGSI must show that Marriott "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.*

KSGI argues that specific jurisdiction exists because Marriott directed its activities at California by referring interior designers to KBFAA to procure allegedly infringing art for Marriott's various properties. MOpp. at 3–6. Additionally, KGSI argues that the SACC includes allegations that Marriott took the same actions at other Marriott-branded hotels, including the Bayview Marriott in Newport Beach, California. *Id.* at 2. The Court does not find either of these arguments persuasive.

KGSI attempts to show purposeful direction by alleging that Marriott targeted California by recommending KBFAA to the interior designer selected to decorate the JW Marriott at the Mall of America near Minneapolis. *See* SACC at ¶¶ 45, 46, 70. Significantly, the Ninth Circuit has given recent guidance on how to analyze purposeful direction, and specifically the express aiming prong, in a copyright infringement action. *See Axiom*, 874 F.3d at 1069–71. In *Axiom*, the Ninth Circuit recognized that it had previously held "a defendant's 'alleged willful infringement of [a plaintiff's] copyright, and its knowledge of both the existence of the copyright and the forum of the copyright holder,' established 'individualized targeting'" sufficient to satisfy the express aiming prong. *Id.* (quoting *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 678–79 (9th Cir. 2012)). However, the *Axiom* court found that after *Walden v. Fiore*, 571 U.S. 277, 289 (2014), the "individualized targeting" test was no longer sufficient. *Id.* Instead, a court "must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of [another party's] connections to a forum." *Id.* (quoting *Walden*, 571 U.S. at 289). In *Walden*, the Supreme Court rejected plaintiffs' argument that its "contacts with the defendant and forum [drove] the jurisdictional analysis." *Id.* Instead, the *Walden* defendant's "actions in Georgia did

7

not create sufficient contacts with Nevada [(the forum state at issue)] simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections." *Id.*

*Walden* and *Axiom* are dispositive here. Even assuming that KGSI properly alleged that Marriott knew the works infringed KGSI's copyright, its allegations that Marriott contracted with KBFAA cannot alone establish purposeful direction. "Such reasoning improperly attributes a [co-defendant's] forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis." *Id.*; *see also Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (finding it "plainly unconstitutional" "to attribute [an insurer's] contacts to [defendant] by considering the 'defending parties' together and aggregating their forum contacts in determining whether it had jurisdiction."). KGSI points only to KBFAA's California contacts, but it makes little sense to say that Marriott's actions were expressly aimed at California, given that the alleged infringing artwork was selected for and later displayed at the JW Marriott hotel in Minnesota.

Confusingly, KGSI argues that its allegations are broader than the Minnesota hotel and that its allegations against Marriott include "at least five [] hotels under Marriott-owned brands," including the Bayview Marriott in Newport Beach, California. MOpp. at 1. However, the SACC does not include these allegations. Instead, paragraph 45 lists eight commissioning counterclaim defendants, and nine "respective[]" venues where the allegedly infringing artwork is displayed. *See* SACC at ¶ 45. The Bayview Marriott in Newport Beach, California is linked directly to Host Hotels and CHC Bayview, not Marriott International, Inc. *Id.* Additionally, in light of the complex management and ownership structure explained by Mr. Martinez, KGSI cannot simply rely on the Marriott name. *Cf. Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) ("It is well established that, as a general rule, where a parent and a subsidiary are separate and distinct corporate entities, the presence of one . . . in a forum state may not be attributed to the other[.]"). This is especially so given that KGSI failed to directly allege Marriott's alleged ownership or management of the property.

Over the two-year history of this case, KGSI has amended its counterclaims twice in order to include additional parties, facts, and infringing artwork. Further, KGSI does not dispute any of the jurisdictional facts proffered by Marriott or request any jurisdictional discovery. Because the

SACC only points to Marriott's property in Minnesota as displaying the alleged infringing art, and specifically identifies another corporation as the responsible party for the Bayview Marriott in Newport Beach, California, KGSI cannot in good faith amend the SACC to allege that Marriott was responsible for alleged infringement at the Bayview Hotel. *See Chappel v. Laboratory Corp. of America*, 232 F.3d 719, 725–26 (9th Cir. 2000) ("A district court acts within its discretion to deny leave to amend when amendment would be futile, when it would cause undue prejudice to the defendant, or when it is sought in bad faith."); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001) (affirming district court's dismissal of claims contradicted by documents attached to plaintiff's complaint). And because KBFAA's California contacts cannot provide the basis for personal jurisdiction over Marriott, the Court **GRANTS** Marriott's motion to dismiss **WITHOUT LEAVE TO AMEND**.

## IV. DESIGN FORCE'S MOTION TO DISMISS

KGSI similarly asserts that specific jurisdiction exists over Design Force because Design Force purposefully availed itself of the privilege of conducting activities in California by working with KBFAA. DOpp. at 2–5.[3] Additionally, by commissioning KBFAA to create and sell artwork that was then installed and displayed in Minnesota, KGSI argues that Design Force directed its activities at California. *Id.* As noted above, a purposeful direction analysis is appropriate for a copyright infringement action. *See Axiom*, 874 F.3d at 1069.

KGSI fails to point to sufficient Design Force contacts in California. KGSI's allegations against Design Force are limited to actions taken in Minnesota, where Design Force was hired to provide interior design services for a Marriott hotel. *See* SACC at ¶¶ 45, 46, 70. Again, KGSI attempts to make up for Design Force's lack of direct California contacts by shifting the focus entirely to KBFAA's contacts with the state. However, as explained above, this approach has been patently rejected by the Supreme Court. *See Walden*, 571 U.S. at 289.

Additionally, KGSI's attempt to distinguish *Walden* is unpersuasive. KGSI argues that the case concluded that "something about the tortious conduct must connect to the forum beyond just

---

[3] KGSI appropriately does not argue that general jurisdiction exists over Design Force.

9

the incidental effect on a plaintiff who resides there," and that here, commissioning KBFAA provides that connection with California. KGSI misunderstands the case. The Supreme Court specifically explained that the purposeful direction analysis must focus on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285. KGSI's argument directly conflicts with that clear direction.

As with Marriott, KGSI does not dispute any of the jurisdictional facts proffered by Design Force or request any jurisdictional discovery. Additionally, KGSI's allegations make clear that Design Force's only connection to this case is through its work on the JW Marriott in Minnesota. Because the "pleading could not possibly be cured by the allegation of other facts," given that Design Force's work on that hotel is insufficient to show California contacts, the Court **GRANTS** Design Force's motion to dismiss **WITHOUT LEAVE TO AMEND**. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### V. CONCLUSION

For the reasons noted above, the Court **GRANTS** Marriott's and Design Force's motions to dismiss for lack of personal jurisdiction **WITHOUT LEAVE TO AMEND**. This dismissal is without prejudice to KGSI's ability to pursue its claims in any other district where personal jurisdiction lies. The Court **DIRECTS** the clerk to terminate both parties from this action.

**IT IS SO ORDERED.**

Dated: 9/14/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge